IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **SABATINO BIANCO, M.D.** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:12-cv-147-JRG |
| | § | |
| **GLOBUS MEDICAL, INC.,** | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

## I.      INTRODUCTION

Pending before the Court is Defendant Globus Medical, Inc.'s ("Globus") motion to transfer.  (Dkt. No. 24.)  Globus contends that the Eastern District of Pennsylvania ("EDPA") is a more convenient forum than the Eastern District of Texas ("EDTX") and seeks to transfer venue to that District pursuant to 28 U.S.C. § 1404(a).  The Court **DENIES** the Defendants' motion to transfer venue because the balance of the "private" and "public" factors demonstrates that the transferee venue is not "clearly more convenient" than the venue chosen by Plaintiff Sabatino Bianco, MD ("Bianco" or "Plaintiff").  *See In re Nintendo Co.*, 589 F.3d 1194, 1197-98 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F. 3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Bianco is a neurosurgeon specializing in minimally-invasive brain and spine surgeries. He is the former Chairman of Neurosurgery at Trinity Mother Frances Healthcare System in

Tyler, Texas and currently resides in the Arlington, Texas area, where he owns a surgical practice.  Globus Medical, Inc. ("Globus") is a large privately held medical device company with its principal place of business in Audubon, Pennsylvania.  (Dkt. No. 13, at 1.)

This lawsuit arises out of a relationship between Bianco and Globus spanning a period of time from approximately 2006 to 2010.  The parties arranged for Bianco to share ideas and designs for medical devices with Globus, which Globus would then evaluate for possible commercial implementation.  (Dkt. No. 13, at 2.)  According to Bianco, this is a common practice in the medical device industry and it is customary for physicians and medical device companies to later enter into a formal compensation arrangement if the idea is ultimately implemented commercially.  (Dkt. No. 13, at 2.)

Bianco claims to have conceived of an idea and a product design in 2007 for an expandable intervertebral fusion device for use in minimally invasive spinal surgeries.  (Dkt. No. 13, at 2.)  He memorialized his idea and product design in a written document that contained drawings of his invention (the "Invention Disclosure").  He provided the same to Globus in mid-2007.  *Id.*  Bianco alleges – and Globus denies – that this disclosure was provided pursuant to a non-disclosure agreement.  A representative of Globus took the Invention Disclosure and allegedly told Bianco that if Globus decided to use the idea, it would compensate Bianco with a royalty arrangement similar to those which are customary in the industry.  (Dkt. No. 13, at 3.)  However, in late 2009 or early 2010, a representative of Globus informed Bianco that the company was not interested in developing or commercializing an expandable intervertebral fusion device and returned the Invention Disclosure to Bianco.  *Id.*

During this same time period, Globus was actively developing an expandable intervertebral fusion device known as the Caliber.  According to Bianco, the Caliber incorporates

2

the same functions and features invented by Bianco and disclosed to Globus in the Invention Disclosure. Globus filed United States Patent Application No. 12/579,833 ("the '833 application") on October 15, 2009, which relates to the technology underlying the Caliber product. Bianco contends that the '833 application contains the functions and features set forth in the Invention Disclosure, yet fails to name Bianco as an inventor to the patent application. (Dkt. No. 13, at 3.) On November 22, 2011, the '833 application issued into U.S. Patent No. 8,062,375 ("the '375 patent") entitled "EXPANDABLE FUSION DEVICE AND METHOD OF INSTALLATION THEREOF." *Id.* The '375 patent was assigned and is now held by Globus.

Based upon the similarities between Bianco's Invention Disclosure and the Caliber product, Globus' possession of Bianco's Invention Disclosure, and Globus' representations regarding the company's interest in the design, Bianco filed this lawsuit on March 20, 2012. Bianco claims that Globus used the confidential information contained in the Invention Disclosure and incorporated it into the design of the Caliber product. Bianco alleges six separate causes of action, including misappropriation of trade secrets, breach of contract, correction of patent inventorship, unfair competition, fraud and Texas theft liability. On May 11, 2012, Globus filed this motion to transfer venue to EDPA under 28 U.S.C. § 1404(a). This Memorandum Opinion and Order addresses the merits of the motion to transfer and its related briefing.

## III. LEGAL STANDARDS

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). But a motion to transfer venue should only be granted upon a showing that the

transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Nintendo*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The initial question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several "private" and "public" interest factors, none of which are dispositive alone. *Id.* The "private" interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

IV.    **ANALYSIS**

A.    **Proper Venue**

Since Plaintiff does not dispute that this case could have been brought in EDPA, the initial threshold has been met and analysis of the public and private interests cited above must now be considered and weighed by the Court.

B.    **Private Interest Factors**

i.    *Relative Ease of Access to Sources of Proof*

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321.  Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is particularly important to venue transfer analyses in patent infringement cases.  *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

The parties appear to agree that the majority of Globus' evidence will be located at or near its headquarters in Audubon, Pennsylvania.  It would be more convenient to access such evidence in EDPA.  As for Bianco, it is likely that most of the evidence in his possession or control will be located in either Tyler, Texas (where Bianco resided when the facts underlying this case arose) or in Arlington, Texas (where Bianco currently resides).  While it is likely that Globus, as an accused infringer, will possess a great volume of documents than Bianco, it cannot be disputed that the parties' relationship was at all times centered at Trinity Mother Frances Hospital in Tyler, Texas, and as such, it is almost certain that important third-party sources of

5

proof will be located at or near this particular hospital.  Trinity Mother Frances Hospital is located within EDTX.  Although some evidence may be located in Arlington, Texas (which is in the Northern District of Texas), all of the evidence located in Texas is much more conveniently accessible in EDTX as opposed to EDPA.  *See In re Amazon, Inc.*, No. 2012-M115, 2012 WL 1514442, at *2 (Fed. Cir. May 1, 2012) (finding decision to deny transfer proper where the Court had relied on documentary evidence located in Dallas, Texas, Southlake, Texas, and in Oklahoma, which are all outside, but close to, the Eastern District of Texas).  On balance, and given that the genesis of the parties' relationship is centered around Tyler, Texas, where critical third-party evidence is located, the Court finds that this factor weighs against transfer.

### ii.    Availability of Compulsory Process

The next "private" interest factor is the availability of compulsory process to secure the attendance of non-party witnesses.  A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not.  *Volkswagen II*, 545 F.3d at 316.  Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse.  *Id.*

Globus' motion to transfer does not address this factor in any way.  Bianco, on the other hand, identifies a number of potential non-party witnesses residing within EDTX.  These witnesses include some of Bianco's professional colleagues in Tyler, Texas, the notary public who authenticated the drawings in the Invention Disclosure, the Divisional Director of Surgical Services at Trinity Mother Frances Hospital and several others.  (Dkt. No. 34, at 5.) Accordingly, this factor weighs strongly against transfer.

### iii.     Cost of Attendance for Willing Witnesses

Next, the court must weigh the cost for witnesses to travel and attend trial in EDPA versus the EDTX.  "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342.  The Court in *Volkswagen I* explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.  Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

371 F.3d at 205.  Although the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis."  *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

In this case, the evidence with respect to this factor is heavily in favor of EDTX where the clear majority of third-party witnesses reside.  This factor weighs strongly against transfer.

### iv.     Other Practical Problems

Neither party has pointed out other practical problems that would weigh in this transfer analysis.  Therefore, this factor is neutral.

### iv.     Forum Selection Clause

Globus identifies three non-disclosure agreements entered into between Bianco and Globus during the course of their business relationship, each containing a forum selection clause. (Dkt. No. 24, at 2.)  A forum selection clause is not dispositive to a transfer motion, but is instead

"a significant factor that figures centrally in the district court's [section 1404(a)] calculus." *StewartOrg., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  In September 2007 and March 2008, Bianco signed unilateral non-disclosure agreements that protected the confidential information of Globus.  *Id*.  In June 2009, Bianco and Globus executed a mutual non-disclosure agreement.  *Id*. Each of the NDA's executed by and between Bianco and Globus state that all disputes between the parties arising under the contracts "shall be brought and heard either in Pennsylvania commonwealth courts or Federal District courts located within 50 miles of Philadelphia, Pennsylvania." *Id*.

Notably, none of the contracts identified by Globus were in force, or even in existence, when Bianco disclosed his idea for an expandable intervertebral fusion device to Globus in June 2007.  In fact, Globus admits that no such agreement was in place when it received Bianco's Invention Disclosure.  Though later-executed agreements by and between Bianco and Globus include forum selection clauses, it cannot be overlooked that neither party has identified an agreement that governs the June 2007 disclosure that gave rise to this case.  Although the presence of a forum selection clause would normally weigh strongly in favor of transfer, the fact that neither party has identified an agreement that governed the parties relationship in June 2007 greatly reduces the significance of any forum selection clauses contained in subsequent agreements between Bianco and Globus.  At most, this factor only slightly favors transfer.

> **D.   Public Interest Factors**
>
> > *i.      Court Congestion*

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved.  *Genentech*, 566 F.3d at 1347.  This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the

speed of the transferee district court should not alone outweigh all of the other factors." *Id.* Globus argues that the most recent Federal Judicial Caseload Statistics indicate that the median time to trial in civil cases is nearly 8 months shorter in EDPA than in EDTX.  (Dkt. No. 24, at 9.) Bianco responds that recent appointments to former judicial vacancies in EDTX and this Court's track record of setting cases for trial in well under two years from the time the Complaint is filed nullifies the Federal Judicial Caseload Statistics.  On balance, the Court finds that this factor is neutral.

*ii.*     *Local Interest*

The Court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004).  Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.  *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

Globus argues that the location of its corporate headquarters in EDPA demonstrates that EDPA has a stronger local interest in this case than EDTX.  Further, Globus contends that EDTX has no meaningful interest in the underlying dispute because Bianco no longer resides in EDTX.  (Dkt. No. 24.)  The Court disagrees.  Bianco was a resident of EDTX when the activities giving rise to this case occurred and a large portion of Globus' conduct giving rise to this case occurred in this District.  For example, Bianco worked and resided in Texas when he submitted his Invention Disclosure to Globus and when he entered into the principal agreements with Globus. This District has a strong local interest in safeguarding the intellectual property and trade secret rights of its residents.  This factor weighs against transfer.

iii.     *Familiarity with the Governing Law*

One of the "public" interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203.  Bianco has alleged six counts against Globus in this case, including misappropriation of trade secrets, breach of contract, correction of patent inventorship, unfair competition, fraud and theft.  All but one of these counts are based on Texas state law.  While this Court is confident in any United States District Judge's ability to fairly and correctly apply Texas law, this Court is more familiar with the Texas state law claims than the courts of EDPA.  *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) (noting that a district court in Louisiana would be better equipped to apply Louisiana law than a New York district court).  This factor weighs against transfer.

iv.     *Avoidance of Conflict of Laws*

No conflict of laws issues are expected in this case, so this factor does not apply.

## V.     CONCLUSION

Having considered all of the factors relevant to determining whether to transfer a case under 28 U.S.C. § 1404(a), the Court finds that the Eastern District of Pennsylvania is not clearly a clearly more convenient forum than the Eastern District of Texas.  Accordingly, Globus' Motion to Transfer Venue is **DENIED**.

**So ORDERED and SIGNED this 14th day of November, 2012.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE