# EXHIBIT 5

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
 2                    MARSHALL DIVISION

 3  HITACHI CONSUMER ELECTRONICS  *    Civil Docket No.
                                  *    2:10-CV-260
 4  VS.                           *    Marshall, Texas
                                  *
 5                                *    April 12, 2013
    TOP VICTORY ELECTRONICS       *    11:30 A.M.

 6
                    TRANSCRIPT OF JURY TRIAL
 7      BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP
                 UNITED STATES DISTRICT JUDGE

 8

 9  APPEARANCES:

10  FOR THE PLAINTIFF:         MR. OTIS CARROLL
                               MR. PAT KELLEY
11                             Ireland Carroll & Kelley
                               6101 South Broadway
12                             Suite 500
                               Tyler, TX    75703
13
                               MR. MARTIN BLACK
14                             MR. JEFFREY EDWARDS
                               MR. VINCENT GALLO
15                             MS. SHARON GAGLIARDI
                               Dechert
16                             2929 Arch Street
                               Cira Centre
17                             Philadelphia, PA   19104

18                             MR. JEFFREY PLIES
                               Dechert
19                             300 West 6th Street
                               Suite 2010
20                             Austin, TX   78701

21  APPEARANCES CONTINUED ON NEXT PAGE:

22  COURT REPORTERS:       MS. SHELLY HOLMES, CSR
                           MS. SUSAN SIMMONS, CSR
23                         Official Court Reporters
                           100 East Houston, Suite 125
24                         Marshall, TX   75670
                           903/935-3868
25  (Proceedings recorded by mechanical stenography,
    transcript produced on CAT system.)
```

1              THE COURT:  Be seated, please.

2              All right.  Mr. Shadden, would you bring

3 in the jury, please?

4              COURT SECURITY OFFICER:  All rise for the

5 jury.

6              (Jury in.)

7              THE COURT:  Be seated, ladies and

8 gentlemen.

9              Ladies and Gentlemen of the Jury, you

10 have now heard the evidence in this case.  In a few

11 minutes, I will instruct you on the law that you must

12 apply.

13              First, let me go over some of the

14 uncontested facts.  These facts are not disputed between

15 the parties, and you should consider these facts as part

16 of the evidence in this case.

17              1.  Plaintiff Hitachi Consumer

18 Electronics Company, Limited, is a corporation organized

19 under the laws of Japan with its principal place of

20 business at 2-1 Otemachi 2-chome Chiyoda-ku, Tokyo,

21 Japan.  Hitachi Consumer Electronics Company, Limited,

22 is a wholly owned subsidiary of Hitachi, Limited (Tokyo,

23 Japan).

24              2.  Defendant Top Victory Electronics

25 (Taiwan) Company, Limited, is a corporation organized

1  under the laws of Taiwan with its principal place of

2  business at 10F, No. 230, Liancheng Road, Zhonge City,

3  Taipei County, Taiwan.

4          3.   Defendant TPV International (USA),

5  Inc., is a corporation organized under the laws of

6  California with its principal place of business at 3737

7  Executive Center Drive, Suite 261, Austin, Texas, 78731,

8  and with a registered agent at 350 North St. Paul

9  Street, Suite 2900, Dallas, Texas, 75201.

10          4.   Defendant Envision Peripherals, Inc.,

11  is a corporation organized under the laws of California

12  with its principal place of business at 47490 Seabridge

13  Drive, Fremont, California, 94538, and with a registered

14  agent at 350 North St. Paul Street, Suite 2900, Dallas,

15  Texas, 75201.

16          5.   Defendant Top Victory Electronics

17  (Fujian) Company, Limited, is a corporation organized

18  under the laws of the People's Republic of China with

19  its principal place of business at Shangzheng Yuanhong

20  Road, Fuquing City, Fujian Province, China.

21          6.   Defendant TPV Electronics (Fujian)

22  Company, Limited, is a corporation organized under the

23  laws of the People's Republic of China with its

24  principal place of business at Shangzheng, Yuanhong

25  Road, Fuquing City, Fujian Province, China.

1               7.   Defendant TPV Technology, Limited, is

2  a corporation organized under the laws of Bermuda with

3  its principal place of business at Suite 1023, Ocean

4  Centre, Harbour City, Kowloon, Hong Kong.

5               8.   Plaintiffs are referred to

6  collectively in these instructions and the jury verdict

7  form as Hitachi.

8               9.   Defendants are referred to

9  collectively in these instructions and the jury form --

10  the jury verdict form as TPV.

11               10. -- and I note some of you -- I'll

12  stop for a minute.  I note some of you are making notes.

13  Each of you will have a written copy of these

14  instructions to take with you to the jury room, so you

15  don't need to make notes.  You can just concentrate and

16  listen at this time.

17               All right.  10.  Hitachi Consumer

18  Electronics Company, Limited, is an assignee and owner

19  of all right, title, and interest in and to U.S. Patent

20  No. 5,502,497.

21               11.  U.S. Patent No. 5,502,497 was issued

22  on March 26th, 1996.

23               12.  The asserted claims of United States

24  Patent No. 5,502,497 have a priority date of August the

25  28th, 1991, pursuant to 35 United States Code Section

1  119, and an effective United States filing date of

2  August 28th, 1992, pursuant to 35 United States Code

3  Section 120.

4          13.  Hitachi Consumer Electronics

5  Company, Limited, is the assignee and owner of all

6  right, title, and interest in and to United States

7  Patent No. 7,286,310.

8          14.  United States Patent No. 7,286,310

9  issued on October 23rd, 2007.

10          15.  Hitachi Consumer Electronics

11  Company, Limited, is the assignee and owner of all

12  right, title, and interest in and to United States

13  Patent 8,009,375.

14          16.  United States Patent No. 8,009,375

15  issued on August the 30th, 2011.

16          17.  The asserted claims of United States

17  Patent Nos. 7,286,310 and 8,009,375 each have a priority

18  date of July 20th, 1990, pursuant to 35 United States

19  Code Section 119, and each have an effective United

20  States filing date of July the 8th, 1991, pursuant to 35

21  United States Code Section 120.

22          18.  Hitachi Consumer Electronics,

23  Company, Limited is the assignee and owner of all right,

24  title, and interest in and to United States patent

25  No. 6,549,243.

1          19.   United States Patent No. 6,549,243

2  issued on April the 15th, 2003.

3          20.   The asserted claims of United States

4  Patent No. 6,549,243 have a priority date of August 21,

5  1997, pursuant to 35 United States Code Section 119 and

6  an effective United States filing date of August 18,

7  1998.

8          21.   TPV received a letter from Hitachi

9  and identified United States Patent Nos. 5,502,497,

10  6,549,243, and 7,286,310 on April 28th, 2009.

11          22.   Hitachi filed suit against TPV

12  alleging infringement of U.S. Patent Nos. 5,502,497,

13  6,549,243, and 7,286,310 on July 22nd, 2010.

14          23.   TPV received notice of U.S. Patent

15  No. 8,009,375, pursuant to 35 United States Code

16  Section 287(a) on May the 3rd, 2012.

17          24.   The TPV televisions accused of

18  infringement by Hitachi were either imported into the

19  United States by TPV or sold to customers who are

20  believed by TPV to have imported them into the United

21  States.

22          I will now instruct you on the law that

23  you must apply.  It is your duty to follow the law as I

24  give it to you.  However, you, the jury, are the sole

25  judges of the facts.  Accordingly, do not consider any

1  statement that I have made during the trial or make in

2  these instructions as an indication that I have any

3  opinion about the facts of this case.

4          After I give you these instructions, the

5  attorneys will make their closing arguments.  Statements

6  and arguments of the attorneys are not evidence and are

7  not instructions on the law.  They are intended only to

8  assist you in understanding the evidence and the

9  parties' contentions.

10          A verdict form has been prepared for you.

11  You will take this form to the jury room, and when you

12  have reached a unanimous agreement as to your verdict,

13  you will have your foreperson fill in the blanks in that

14  verdict form, date it, and sign it.

15          Each answer -- excuse me -- answer each

16  question in the verdict form from the facts as you find

17  them to be.  Do not decide who you think should win and

18  then answer the questions to reach that result.  Your

19  answers and your verdict must be unanimous.

20          In determining whether any fact has been

21  proved in this case, you may, unless otherwise

22  instructed, consider the testimony of all witnesses,

23  regardless of who may have called them, and all exhibits

24  received into evidence, regardless of who may have

25  produced them.  You may also consider any stipulations

1    received into evidence.

2              By the Court allowing testimony or other

3    evidence to be introduced over the objection of an

4    attorney, the Court did not indicate any opinion as to

5    the weight or effect of such evidence.  As stated

6    before, you are the sole judges of the credibility of

7    all the witnesses and of the weight and effect, if any,

8    to be given to all of the evidence.

9              When the Court sustained an objection to

10   a question addressed to a witness, you must disregard

11   the question entirely, and you may draw no inference

12   from its wording or speculate about what the witness

13   would have said, if he or she had been permitted to

14   answer.

15             At times during the trial, it was

16   necessary for the Court to talk to the lawyers here at

17   the bench out of your hearing or by calling a recess and

18   talking to them while you were out of the courtroom all

19   together.

20             We met because often during a trial

21   something comes up that does not involve the jury.  You

22   should not speculate on what was said during such

23   discussions out of your presence.

24             When a party has the burden of proof on

25   any claim or defense by a preponderance of the evidence,

1  it means the evidence must persuade you that the claim

2  or defense is more probable than not.

3  You should base your decision on all of

4  the evidence, regardless of which party presented it.

5  When a party has the burden of proving

6  any claim or defense by clear and convincing evidence,

7  it means the evidence has persuaded you that the claim

8  or defense is highly probable.  Such evidence requires a

9  higher standard of proof than proof by a preponderance

10  of the evidence.

11  Again, you should base your decision on

12  all of the evidence, regardless of which party presented

13  it.

14  Evidence may be direct or circumstantial.

15  Direct evidence is direct proof of a

16  fact, such as testimony by a witness about what that

17  witness personally saw or heard or did.  Circumstantial

18  evidence is proof of one or more facts from which you

19  can find another fact.  You should consider both kinds

20  of evidence.  The law makes no distinction between the

21  weight to be given to either direct or circumstantial

22  evidence.  It is for you to decide how much weight to

23  give to any evidence.

24  By way of example, if you wake up in the

25  morning and see the sidewalk is wet, you may find from

1   that fact that it rained during the night.  However --

2   however, other evidence, such as a turned-on garden

3   hose, may provide a different explanation for the

4   presence of the water on the sidewalk.

5               Therefore, you -- before you decide that

6   a fact has been proved by circumstantial evidence, you

7   must consider all of the evidence in the light of

8   reason, experience, and common sense.

9               Certain exhibits shown to you during the

10  trial were illustrations.  We call these types of

11  exhibits demonstrative exhibits or demonstratives.

12              Demonstratives are a party's description,

13  picture, or model to describe something involved in this

14  trial.  If your recollection of evidence differs from

15  the demonstratives, you should rely on your

16  recollection.

17              Dem -- demonstratives are sometimes

18  called jury aids.  Demonstratives themselves are not

19  evidence, but a witness' testimony concerning a

20  demonstrative exhibit is evidence.

21              In deciding the facts in this case, you

22  may have to decide which testimony to believe and which

23  testimony not to believe.  You may -- you may believe

24  everything a witness says or part of it or none of it.

25              Proof of a fact does not necessarily

1  depend on the number of witnesses who testify about it.

2          In considering the testimony of any

3  witness, you may take into account:

4          (1) the opportunity and ability of the

5  witness to see or hear or know the things testified to;

6          (2) the witness' memory;

7          (3) the witness' manner while testifying;

8          (4) the witness' interest in the outcome

9  of the case or any bias or prejudice;

10          (5) whether other evidence contradicted

11  the witness' testimony;

12          (6) the reasonableness of the witness'

13  testimony in light of all of the evidence; and

14          (7) any other factors that bear on

15  believability.

16          The weight of the evidence as to a fact

17  does not necessarily depend on the number of witnesses

18  who testify about it.

19          Certain testimony was presented to you

20  through a deposition.  As I mentioned during my

21  preliminary instructions, a deposition is the sworn,

22  recorded answers to questions asked of a witness in

23  advance of the trial.  Under some circumstances, if a

24  witness cannot be present to testify from the witness

25  stand, that witness' testimony -- testimony may be

1  presented under oath in the form of a deposition.

2              Sometime before trial, attorneys

3  representing the parties in this case questioned this

4  witness under oath.  A court reporter and videographer

5  were present and recorded the testimony.

6              The deposition testimony is entitled to

7  the same consideration and weighed and otherwise

8  considered by you insofar as possible in the same way as

9  if the witness had been present and had testified from

10 the witness stand in court.

11             For -- for deposition testimony that was

12 read rather than presented by video, do not place any

13 significance on the behavior or tone of voice of the

14 person who read the questions and answers.

15             When knowledge of a technical subject

16 matter may be helpful to the jury, a person who has

17 special training or experience in that technical

18 field -- he is called an expert witness -- he or she is

19 called an expert witness -- is permitted to state his or

20 her opinion on those technical matters.  However, you

21 are not required to accept that opinion.  As with any

22 other witness, it is up to you to decide whether or not

23 to rely upon it.

24             Hitachi contends that TPV makes, uses,

25 offers to sell, sells, or imports products that infringe

1  Claims 4 and 5 of the '243 patent, Claim 7 of the '310

2  patent, and Claims 26 and 30 of the '375 patent and

3  Claims 15 and 16 of the '497 patent.

4             TPV denies that it -- that it infringes

5  the asserted claims.  TPV also contends that all of the

6  asserted claims of the '310 patent and the '375 patent

7  are invalid because they are either anticipated by or

8  rendered obvious by one or more prior art references.

9             Invalidity is a defense to patent

10  infringement.  Therefore, even though the Patent and

11  Trademark Office has allowed the asserted claims, you,

12  the jury, must decide whether those claims are invalid.

13             Your job is to decide whether the

14  asserted claims have been infringed and whether any of

15  the asserted claims are invalid.  If you decide that any

16  claim of the patent has been infringed and is not

17  invalid, you will then need to decide any damages to be

18  awarded to Hitachi as compensation for the infringement.

19             You will also need to decide whether the

20  infringement was willful.  If you decide that any

21  infringement was willful, that decision should not

22  affect any damage award that you make.

23             I will take willfulness into account

24  later.

25             I will now instruct you on the specific

1  rules you must follow to determine whether Hitachi has

2  proven that TPV has infringed one or more of the patent

3  claims involved in this case.

4              You must decide whether TPV has made,

5  used, sold, or offered for sale within the United States

6  or imported into the United States a product covered by

7  the asserted claims.  You must compare each claim to

8  TPV's products to determine whether every requirement of

9  the claim is included in or performed by the accused

10  product.

11              To prove literal infringement of a claim,

12  Hitachi must prove that it is more probable than not

13  that TPV's product includes or performs every

14  requirement or step in Hitachi's patent claims.  If a

15  product omits any requirement or step recited in an

16  asserted patent claim, that product does not infringe

17  that claim.

18              An accused product that sometimes but not

19  always operates in -- in an infringing way, nonetheless

20  infringes.

21              For literal infringement, Hitachi is not

22  required to prove that TPV intended to infringe or knew

23  of the patent.

24              I have defined certain words and phrases

25  in the patent claims.  For any words in the claims for

1 which I have not provided you with a definition, you

2 should apply their plain and ordinary meaning as they

3 would be understood by a person of ordinary skill in the

4 art.

5          My interpretation of the language should

6 not be taken as an indication that I have a view

7 regarding the issues of infringement and validity.  The

8 decisions regarding infringement and validity are yours

9 to make.

10          During your deliberations you must apply

11 these meanings:

12          For the '243 patent:

13          (1) Video signal formats shall mean the

14 number of scan lines and whether the scan lines are

15 progressive or interlaced.

16          (2) Selecting one video processor section

17 of said video processor sections to perform video

18 processing of said video signal shall mean selecting one

19 or more video processor sections of said video processor

20 sections to perform video processing of said video

21 signal.

22          For the '497 patent:

23          Broadcast system standard shall mean a

24 specified set of technical parameters describing how a

25 program is broadcast.

The beginning, or preamble, of some asserted claims uses the word comprising.  Comprising means including or containing but not limited to.

That is, if you decide that TPV's product includes all the requirements in that claim, the claim is infringed.  This is true even if the accused product includes components in addition to those requirements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed -- infringed by a table that includes a tabletop, legs, and glue even if the table also includes wheels on the table's legs.

So far, my instructions on infringement have applied to what are known as independent claims.

The parties also -- excuse me.

The patents also contain dependent claims.  Each dependent claim refers to an independent claim.  A dependent claim includes each of the requirements of the independent claim to which it refers and one or more additional requirements.

In order to find infringement of a dependent claim, you must first determine whether the independent claim has been infringed.

If you decide that the independent claim has not been infringed, then the dependent claim cannot

1 have been infringed.

2            If you decide that the independent claim

3 has been infringed, you must then separately determine

4 whether each additional requirement of the dependent

5 claim has also been included in the accused product.  If

6 each additional requirement has been included, then the

7 dependent claim has been infringed.

8            Hitachi must prove by a preponderance of

9 the evidence that a patent claim has been infringed.

10            Some patent claim requirements may

11 describe a, quote, means, unquote, for performing a

12 function rather than describing the structure that

13 performs the function.

14            For example, let me say that a patent

15 describes a table in which the legs are glued to the

16 tabletop.

17            One way an inventor may claim the table

18 is to require the tabletop, four legs, and glue between

19 the legs and the tabletop.

20            Another way to claim the table is to

21 require the tabletop and legs, but instead of stating

22 glue, the inventor states a means for securing the legs

23 to the tabletop.

24            This second type of claim requirement is

25 called a means-plus-function requirement.  It describes

1  a means for performing the function of securing the legs

2  to the tabletop rather than requiring the glue.

3          When a claim requirement is in

4  means-plus-function form, it covers the structures

5  described in the patent specification for performing the

6  function stated in the claim and also any structure

7  equivalent to the described structures.

8          In my example, the claim covers a table

9  using glue to secure the legs to the tabletop, as

10 described in the patent, and any equivalent structure to

11 glue that performs the function of securing the legs to

12 the tabletop.

13         Claims 15 and 16 of the '497 patent

14 include means-plus-function requirements.  In

15 instructing you about the meaning of a

16 means-plus-function claim requirement, I will tell you

17 first that the function that is performed, and second,

18 the structure disclosed in the patent specification that

19 corresponds to that function.

20         To establish direct infringement of a

21 claim that includes a means-plus-function requirement,

22 Hitachi must prove two things:

23             (1) The relevant structure in the accused

24 device performs the identical function I identified;

25             And (2) the accused device employs a

1 structure identical or equivalent to the structure

2 described in the patent.

3          Where the structure in the accused device

4 and the structure disclosed in the patent specification

5 are not identical, Hitachi has the burden of proving by

6 a preponderance of the evidence that the relevant

7 structure in the accused device, as I have defined it

8 for you, is equivalent to the disclosed structure in the

9 patent.

10          Two structures are equivalent if a person

11 of ordinary skill in the art would consider the

12 differences between them to be insubstantial for

13 performing the required function.

14          One way to determine this is to look at

15 whether or not the accused structure performs the

16 identical function in substantially the same way to

17 achieve substantially the same result.

18          Another way is to consider whether people

19 of ordinary skill in the art believed that the structure

20 of the accused product and the structure in the patent

21 were interchangeable at the time the patent was issued

22 by the PTO.

23          To be a structural equivalent for a means

24 requirement, an accused structure must have existed at

25 the time the asserted claim issued.

1           Claim 13 of the '497 patent from which

2   Claims 15 and 16 depend includes the phrase, quote,

3   reception means for receiving a broadcast program

4   picture and control information which are broadcast in

5   accordance with a predetermined format, said control

6   information specifying a broadcast system standard,

7   close quote.

8           This function -- the function, rather,

9   that is performed is, quote, receiving a broadcast

10  program picture and control information, said control

11  information specifying a broadcast system standard,

12  close quote.

13          The corresponding structure in the patent

14  specification is, quote, a reception module, close

15  quote.

16          Claim 13 of the '497 patent from which

17  Claims 15 and 16 depend also includes the phrase, quote,

18  broadcast content processing means for controlling and

19  displaying said broadcast program picture in accordance

20  with said broadcast system standard specified by said

21  control information received by said reception means,

22  close quote.

23          The function that is performed is, quote,

24  controlling and displaying said broadcast program

25  picture in accordance with said broadcast -- broadcast

1  system standard specified by said control information

2  received by -- by said reception means, close quote.

3  The corresponding instruction in the patent

4  specification is, quote, a reception controller, close

5  quote.

6            Claim 15 of the '497 patent includes the

7  phrase, quote, wherein said reception means receives a

8  plurality of broadcast program pictures multiplexed in a

9  time division manner, close quote.

10            The function that is performed is, quote,

11  receives a plurality of broadcast program pictures

12  multi -- multiplexed in a time-division manner, close

13  quote.

14            The corresponding structure in the patent

15  specification is, quote, a reception module, close

16  quote.

17            Claim 15 of the '497 patent includes the

18  phrase, quote, control means for specifying said

19  time-division multiplexing system in accordance with

20  said multiplex information item included in said control

21  information received by said reception means, close

22  quote.

23            The function that is performed is, quote,

24  specifying said time-division multiplexing system in

25  accordance with said multiplex information item included

in said control information received by said reception

means, close quote.

The corresponding structure in the patent

specification is, quote, a reception controller, close

quote.

Claim 15 of the '497 patent includes the

phrase, quote, a separation means for selecting a

subject broadcast program picture to be displayed and

separating said subject broadcast picture -- program

picture in accordance with said time-division

multiplexing system specified by said control means,

close quote.

The function that is performed is, quote,

selecting a subject broadcast program picture to be

displayed and separating said subject broadcast program

picture in accordance with said time-division

multiplexing system specified by said control means,

close quote.

The corresponding structure in the patent

specification is, quote, a signal separator, close

quote.

Claim 15 of the '497 patent includes the

phrase, quote, display means for displaying a subject

broadcast program picture separated by said separation

means, close quote.

1          The function that is performed is, quote,

2  displaying a subject broadcast program picture separated

3  by said separation means, close quote.

4          The corresponding structure in the patent

5  specification is, quote, a display unit, close quote.

6          Claim 16 of the '497 patent includes the

7  phrase, quote, control means operates to display said

8  contents of said plurality of broadcast program pictures

9  indicated by said content information items on said

10  display means on a basis of a received said control

11  information, operates to accept selection of a subject

12  broadcast program picture to be displayed, and operates

13  to display a selected subject broadcast program picture

14  or said display means, close quote.

15          The function that is performed is, quote,

16  operates to display said contents of said plurality of

17  broadcast program pictures indicated by said content

18  information items on said display means on a basis of a

19  received said control information, operates to accept

20  selection of a subject broadcast program picture to be

21  displayed and operates to display a selected said

22  subject broadcast program picture on said display means,

23  close quote.

24          The corresponding structure in the -- in

25  the patent specification is, quote, a reception

1   controller, close quote.

2        Hitachi alleges that TPV is liable for

3   infringement by actively inducing their customers to

4   directly infringe at least one patent.  As with direct

5   infringement, you must determine whether there has been

6   active inducement on a claim-by-claim basis.

7        TPV is liable for active inducement of a

8   claim only if Hitachi proves by a preponderance of the

9   evidence that:

10       (1) the acts are actually carried out by

11  at least one of TPV's customers and directly infringe

12  the claim;

13       And (2) TPV took action during the time

14  the patent was in force intending to cause the

15  infringing acts by TPV's customers;

16       And (3) TPV was aware of the patent and

17  knew that the acts, if taken, would constitute

18  infringement of the patent or TPV believed there was a

19  high probability that the acts, if taken, would

20  constitute infringement of the patent but deliberately

21  avoided confirming that belief.

22       In order to establish active inducement

23  of infringement, it is not sufficient that TPV's

24  customers themselves directly infringe the patent, nor

25  is it sufficient that TPV was aware of the acts by TPV's

1 customers that alleged constitute the direct

2 infringement.  Rather, you must find that TPV

3 specifically intended at least one of their customers to

4 infringe at least one patent or that TPV believed there

5 was a high probability that at least one of TPV's

6 customers would infringe at least one patent, but

7 remained willfully blind to the infringing nature of

8 TPV's customers' acts in order to find inducement of

9 infringement.

10             If you find by a preponderance of the

11 evidence that TPV infringed the '497, the '243, or the

12 '310 patent, then you must determine if this

13 infringement was willful.

14             The issue of willful infringement relates

15 to the amount of damages Hitachi is entitled to recover

16 in this lawsuit.  If you decide that TPV willfully

17 infringed the '497, the '243, or the '310 patent, then

18 it is my job -- it is my job to decide whether or not to

19 award increased damages to Hitachi.  You should not take

20 this factor into account in assessing the damages, if

21 any, to be awarded to Hitachi.

22             To prove willful infringement, Hitachi

23 must persuade you by clear and convincing evidence that

24 before the filing date of the complaint, TPV acted

25 recklessly.

You must determine whether Hitachi proved by clear and convincing evidence that the risk of infringement was known or so obvious that it should have been known to TPV.  In deciding whether TPV had this state of mind, you should consider all facts surrounding the allege -- the alleged infringement, including but not limited to the following:

(1) whether or not TPV acted in a manner consistent with the standards of commerce for its industry;

(2) whether or not TPV intentionally copied a product of Hitachi covered by one or more claims of the '497, '243, or '310 patent;

(3) whether or not TPV made a good-faith effort to avoid infringing the '497, '243, or '310 patent, for example, whether TPV attempted to design around the '497, '243, or '310 patent;

(4) whether or not TPV tried to cover up their infringement; and

(5) whether or not there is a reasonable basis to believe that TPV did not infringe or had a reasonable defense to infringement.

Patent invalidity is a defense to patent infringement.  Even though the PTO Examiner has allowed the claims of a patent, you have the ultimate

1  responsibility for deciding whether the claims of the

2  patent are valid.

3          I will now instruct you on the invalidity

4  issues you should consider.  As you consider these

5  issues, remember that TPV bears the burden of proving by

6  clear and convincing evidence that the claims are

7  invalid.

8          TPV contends that Claim 7 of the '310

9  patent is invalid because the inventions claimed are not

10  new.  For a claim to be invalid because it is not new,

11  all of its requirements must have been described in a

12  single previous publication or patent that predates the

13  claimed invention.

14          In patent law, such previous publication

15  or patent is called a prior art reference.  If a patent

16  claim is not new, we say it is anticipated by a prior

17  art reference.  TPV must prove by clear and convincing

18  evidence that the claim was anticipated.

19          To anticipate a claim, each and every

20  element of the claim must be present in a single item of

21  prior art and arranged or combined in the same way as

22  recited in the claim.  You may not combine two or more

23  items of prior art to find anticipation.

24          Whether or not the Patent and Trademark

25  Office may not have evaluated certain materials which

1 Defendant now claims constitute prior art before the PTO

2 granted the patents-in-suit is an issue you should

3 consider.

4        However, in considering this, you must

5 consider whether any such evidence is materially new and

6 was publicly known at the time.  And if so, consider

7 when such determining whether the -- whether an

8 invalidity defense has been proven by clear and

9 convincing evidence.

10        Prior art differing from the prior art

11 considered by the PTO may, but does not always, carry

12 more weight than the prior art considered by the PTO.

13        The disclosure in the prior art reference

14 does not have to be in the same words as the claim, but

15 all of the requirements of the claim must be that single

16 reference, either stated or necessarily implied, so that

17 someone of ordinary skill looking at that one reference

18 would be able to make and use at least one embodiment of

19 the claimed invention.

20        Anticipation also occurs when the claimed

21 invention inherently, in other words, necessarily

22 results from practice of what is disclosed in the

23 written reference, even if the inherent disclosure was

24 unrecognized or unappreciated by one of ordinary skill

25 in the field of the invention.

1            Here is a list of the ways that TPV can

2   show that a patent claim was not new:

3            If the claimed invention was already

4   publicly known by others in the United States before

5   July the 20th, 1990 for the '310 patent;

6            If the claimed invention was already

7   patented or described in a printed publication anywhere

8   in the world before July the 20th, 1990 for the '310

9   patent.  To qualify as a prior art reference, a printed

10  publication must be at least reasonably accessible to

11  those entered in the field, even if it's difficult to

12  find;

13           If the claimed invention was already

14  described in an issued United States patent that was

15  based on a patent application before -- filed before

16  July the 20th, 1990 for the '310 patent;

17           If a patent claim is not new as explained

18  above, you must -- you must find that the claim is

19  invalid.

20           TPV may prove that the asserted claims

21  are invalid by showing by clear and convincing evidence

22  that each such claim failed to meet one of several

23  statutory provisions in the patent laws.  These

24  provisions are called statutory bars.

25           For a patent claim to be invalid because

of a statutory bar, all of its requirements must have
been present in one prior art reference dated more than
one year before the effective filing date of the patent
application.

TPV can show that the patent application
was not timely filed (1) if the claimed invention was
already patented or described in a printed publication
anywhere in the world before July the 8th, 1990 for the
'310 patent.  To qualify as a prior art reference, a
printed publication must be at least reasonably
accessible to those interested in the field, even if it
is difficult to find.

For a claim to be invalid because of a
statutory bar, all of the claimed requirements must have
been either (1) disclosed in a single prior art
reference; or (2) implicitly disclosed in a single prior
art reference as viewed by one of ordinary skill in the
field of the invention.  The disclosure in a reference
does not have to be in the same words as the claim, but
all the requirements of the claim must be described in
enough detail or necessarily implied by or inherent in
the reference to enable someone of ordinary skill in the
field of the invention looking at the reference to make
and use at least one embodiment of the claimed
invention.

1              A prior art reference also invalidates a

2 patent claim when the claimed invention necessarily

3 results from practice of the subject of the prior art

4 reference, even if the result was unrecognized and

5 unappreciated by one of ordinary skill in the field of

6 the invention.

7              If you find a patent claim failed to meet

8 a statutory bar, you must find the patent claim invalid.

9              In this case, TPV contends that Claims 26

10 and 30 of the '375 patent are invalid as obvious.  A

11 patent claim is invalid if the claimed invention would

12 have been obvious to a person of ordinary skill in the

13 field of the invention at the time the application was

14 filed.

15              This means that even if all of the

16 requirements of the claim cannot be found in a single

17 prior art reference that would anticipate the claim or

18 constitute a statutory bar to that claim, a person of

19 ordinary skill in the field of the invention who knew

20 about all of the prior art would have come up with the

21 claimed invention.

22              But a patent claim composed of several

23 requirements is not proved obvious merely by

24 demonstrating that each of its requirements was

25 independently known in the prior art.

1          Although common sense directs one to look

2   with care at a patent application that claims as

3   innovation the combination of known requirements

4   according to their established functions to produce a

5   predictable result, it can be important to identify a

6   reason that would have prompted a person of ordinary

7   skill in the relevant field to combine the requirements

8   in a way the claimed new invention does.

9          This is so because inventions in most, if

10  not all instances, rely upon building blocks long since

11  uncovered and claimed discoveries almost of necessity

12  will be combinations of what in some sense is already

13  known.

14          Accordingly, you may evaluate whether

15  there was some teachings, suggestion, or motivation to

16  arrive at the claimed invention before the time of the

17  claimed invention, although proof of this is not a

18  requirement to prove obviousness.

19          Teachings, suggestions, and motivations

20  may be found in written references, including the prior

21  art itself.  However, teachings, suggestions, and

22  motivations may also be found within the knowledge of a

23  person of ordinary skill in the art, including

24  inferences and creative steps that a person of ordinary

25  skill in the art would employ.

1            Additionally, teachings, suggestions, and

2 motivations may be found in the nature of the problem

3 solved by the claimed invention, or any need or problem

4 known in the field of the invention at the time of and

5 addressed by the invention.

6            TPV must provide more than generic

7 assertions to explain why a person of ordinary skill in

8 the art would have combined specific elements from

9 specific references in the way the claimed invention

10 does.

11            Therefore, in evaluating whether a claim

12 would have been obvious, you should consider whether TPV

13 has identified a reason that would have prompted a

14 person of ordinary skill in the field of the invention

15 to combine the requirements or concepts from the prior

16 art in the same way as in the claimed invention.

17            There is no single way to define the line

18 between true inventiveness on one hand, which is

19 patentable, and the application of common sense and

20 ordinary skill to solve a problem on the other hand,

21 which is not patentable.  However, you should take this

22 into account such -- you should take into account such

23 factors as:

24            (1) whether market forces or other design

25 incentives may be what produced a change rather than

1 true inventiveness;

2            (2) whether the claimed invention applies

3 a known technique that had been used to improve a

4 similar device or method in a similar way;

5            (3) whether the prior art teaches or

6 suggests the desirability of combining elements claimed

7 in the invention;

8            (4) whether the claimed invention would

9 have been obvious to try, meaning that the claimed

10 innovation was one of a relatively small number of

11 possible approaches to the problem with a reasonable

12 expectation of success by those skilled in the art.

13            But you must be careful not to determine

14 obviousness using hindsight.  Many true inventions can

15 seem obvious after the fact.  You should put yourself in

16 the position of a person of ordinary skill in the field

17 of the invention at the time the claimed invention was

18 made, and you should not consider what is known today or

19 what is learned from the teaching of the patent.

20            The ultimate conclusion of whether a

21 claim is obvious should be based on your determination

22 of several factor -- several factual issues.

23            (1) you must decide the level of ordinary

24 skill in the field of the invention that someone would

25 have had at the time the claimed invention was made;

1          (2) You must decide the scope and content

2    of the prior art.  In determining the scope and content

3    of the prior art, you must decide whether a reference is

4    pertinent or analogous to the claimed invention.

5          Pertinent or analogous prior art includes

6    prior art in the same field of endeavor as the claimed

7    invention regardless of the problems addressed by the

8    reference and prior art from different fields reasonably

9    pertinent to the particular problem with which the

10   claimed invention is concerned.

11         Remember that prior art is not limited to

12   patents and published materials but includes the general

13   knowledge that would have been available to one of

14   ordinary skill in the field of the invention.

15         (3) You must decide what difference, if

16   any, existed between the claimed invention and the prior

17   art.

18         Finally, you should consider any of the

19   following factors that you find have been shown by the

20   evidence.

21         Factors tending to show non-obviousness

22   include:

23         (1) commercial success of the product due

24   to the merits of the claimed invention;

25         (2) a long-felt but unsolved need for the

1  solution provided by the claimed invention;

2              (3) acceptance by others of the claimed

3  invention as shown by praise from others in the field of

4  the invention or from the licensing of the claimed

5  invention;

6              And (4) other evidence tending to show

7  non-obviousness.

8              Factors tending to show obviousness

9  include:

10              (1) independent invention of the claimed

11  invention by others before or at about the same time as

12  the named inventor thought of it;

13              And (2) other evidence tending to show

14  obviousness.

15              You may consider the presence of

16  commercial success a long-felt but unresolved need,

17  acceptance by others, or other evidence tending to show

18  non-obviousness as an indication that the claimed

19  invention would not have been obvious at the time the

20  claimed invention was made.

21              And you may consider the presence of

22  independent invention and other evidence tending to show

23  obviousness as an indication that the claimed invention

24  would have been obvious at such time.

25              Although you should consider any evidence

1 of these factors, the relevance and importance of any of

2 them to your decision on whether the claimed invention

3 would have been obvious is up to you.

4           TPV must prove by clear and convincing

5 evidence that a claimed invention was obvious.  If you

6 find that a claimed invention was obvious, as explained

7 above, you must find that claim invalid.

8           I will now instruct you on damages.  If

9 you find that TPV has infringed one or more valid claims

10 of Hitachi's asserted patents, you must determine the

11 amount of money damages to award to Hitachi.

12           By instructing you on damages, I do not

13 suggest that one or the other party should prevail.

14 These instructions are provided to guide you on the

15 calculation of damages in the event you find

16 infringement of a valid patent claim and thus must --

17 must address the damages issue.

18           The amount of damages must be adequate to

19 compensate Hitachi for the infringement, but it may not

20 be less than a reasonable royalty.

21           At the same time, your damages

22 determination must not include additional sums to punish

23 TPV or to set an example.

24           You may award compensatory damages only

25 for the loss that Hitachi proves by a preponderance of

the evidence was caused by TPV's infringement.

There are different types of damages that a patent holder may be entitled to recover.  In this case, Hitachi seeks a reasonable royalty.

A reasonable royalty is defined as the money amount Hitachi and TPV would have agreed upon as a fee for the use of the invention at the time prior to when the infringement began.

Whether the parties dispute a matter concerning damages, it is Hitachi's burden to prove by a preponderance of the evidence that Hitachi's version is correct.

Hitachi must prove the amount of damages with reasonable certainty but need not prove the amount of the damages with mathematical precision.

However, Hitachi is not entitled damages that are remote or speculative.  The amount of damages Hitachi can recover is limited to those acts of infringement by TPV that occurred after Hitachi gave TPV notice that they were allegedly infringing the asserted patents.

Different notice dates may be applicable for different patents.  Actual notice means that Hitachi communicated to TPV a specific charge of infringement of the asserted patents by their televisions.

1            In addition, absent earlier notice,

2   service of a complaint in a lawsuit alleging patent

3   infringement normally provides notice.  This notice is

4   effective as of the date given.

5            Hitachi has the burden of establishing by

6   the preponderance of the evidence that TPV received

7   notice of infringement on a particular date.

8            In this case, the parties agree that:

9            TPV received notice of the '375 patent on

10  May the 3rd, 2012, when Hitachi filed a complaint with

11  additional claims against TPV alleging infringement of

12  the '375 patent.

13           The parties dispute when TPV received

14  notice of the '497, '243, and '310 patents.

15           In this case, TPV received a letter from

16  Hitachi that identified the '497, '243, and '310 patents

17  on April the 28th, 2009.

18           Hitachi filed a complaint against TPV on

19  July the 22nd, 2010, alleging infringement of the '497,

20  '243, and '310 patents.

21           Your job is to calculate the damages from

22  the date TPV -- TPV received actual notice.  You should

23  not award damages for any infringement by TPV occurring

24  before they first received notice of any patents that

25  you find to be valid and infringed.

1            A royalty is a payment made to a patent

2 holder in exchange for the rights to make, use, or sell

3 the claimed invention.

4            A reasonable royalty is the payment that

5 would have resulted from a negotiation between a patent

6 holder and the infringer taking place just before the

7 time when the infringing sales first began.

8            In considering the nature of this

9 negotiation, the focus is on what the expectations of

10 the patent holder and infringer would have been had they

11 entered into an agreement at that -- at that time and

12 acted reasonably in their negotiations.

13            However, you must assume that both

14 parties believed the patents were valid and infringed.

15            In addition, you must assume that the

16 patent holder and infringer were willing to enter into

17 an agreement.  Your role is to determine what that

18 agreement would have been.

19            The test for damages is what royalty

20 would have resulted from the hypothetical negotiation

21 and not simply what either party would have preferred.

22            Evidence of things that happened after

23 the infringement first began can be considered in

24 evaluating the reasonable royalty but only to the extent

25 that the evidence aids in assessing what royalty would

1  have resulted from a hypothetical negotiation.

2          Although evidence of the actual profits

3  of an alleged -- an alleged infringer made may be used

4  to determine the anticipated profits at the time of the

5  hypothetical negotiation, the reasonable royalty may not

6  be limited or increased based on the actual profits or

7  lack of profits the alleged infringer may have made.

8          In determining the royalty that would

9  have resulted from the hypothetical negotiation, you may

10 consider real-world facts, including the following, to

11 the extent they are helpful to you:

12          (1) The royalties received by Hitachi for

13 licensing of the patents-in-suit proving or tending to

14 prove an established royalty.

15          (2) The rates paid by licensees for the

16 use of other patents comparable to the patents-in-suit.

17          (3) The nature and scope of the license,

18 as exclusive or non-exclusive, or as restricted or

19 non-restricted, in terms of territory or with respect to

20 whom the manufactured product may be sold.

21          (4) The licensor's established policy and

22 marketing program to maintain his or her patent monopoly

23 by not licensing others to use the invention or by

24 granting licenses under special conditions designed to

25 preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory, in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

1             (12)  The portion of the profit or of the

2  selling price that may be customary in the particular

3  business or a comparable business to allow for the use

4  of the invention or analogous inventions.

5             (13)  The portion of the realizable

6  profits that should be credited to the invention as

7  distinguished from non-patented elements, the

8  manufacturing process, business risks, and

9  significant -- or significant features or improvements

10  added by the infringer.

11             (14)  The opinion and testimony of

12  qualified experts.

13             (15)  The amount that a licensor (such as

14  Hitachi) and a licensee (such as TPV) would have agreed

15  upon (at the time the infringement began) if they had

16  been reasonably and voluntarily trying to reach an

17  agreement; that is, the amount which a prudent

18  license -- licensee who desired, as a business

19  proposition, to obtain a license to manufacture and sell

20  a particular article embodying the patented invention

21  would have been willing to pay as a royalty and yet be

22  able to make a reasonable profit and which amount would

23  have been acceptable by a prudent patentee who was

24  willing to grant a license.

25             No one factor is dispositive, and you can

1   and should consider the evidence that has been presented

2   to you in this case on each of these factors.

3              You may also consider any other factors

4   which, in your mind, would have increased or decreased

5   the royalty the infringer would have been willing to pay

6   and the patent holder would have been willing to accept,

7   acting as normally prudent business people.

8              The final factor establishes the

9   framework which you should use in determining a

10  reasonable royalty; that is, the payment that would have

11  resulted from a negotiation between the patent holder

12  and the infringer taking place at a time prior to when

13  the infringement began.

14             We will now hear the closing arguments

15  from the attorneys in this case.  The Plaintiff may

16  proceed with its opening closing arguments.

17             MR. BLACK:  Thank you, Your Honor.

18             On behalf of Hitachi, I want to thank

19  you, Members of the Jury, for spending a week with us

20  and hearing our case.  This is the closing argument,

21  which is our opportunity to sum up the evidence and to

22  show you that we made good on the promise that

23  Mr. Carroll made when he stood up on Monday and said we

24  would prove that we would win the race to credibility.

25             I'll spend the next few minutes