# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| SABATINO BIANCO, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:12-CV-147-WCB |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| GLOBUS MEDICAL, INC., | § | |
| | § | |
| Defendant. | § | |

---

## FIRST AMENDED JOINT PROPOSED
## JURY INSTRUCTIONS AND VERDICT FORM

---

Pursuant to the Court's scheduling order, Plaintiff Sabatino Bianco, M.D. and Defendant

**[GLOBUS: Counter-Plaintiff]** Globus Medical, Inc. submit the following proposed preliminary

instructions to be given to the jury before opening statements, and the following proposed jury

questions and instructions to be submitted in the Court's jury charge.  The parties reserve the

right to object to the submission to the jury of any question or instruction and the right to offer

additional or modified questions or instructions before the submission of the Court's charge to

the jury.

Dated: December 18, 2013

Don Edwin Stokes
Texas Bar No. 19268000
The Stokes Firm
109 East Houston Street
Marshall, TX  75670
Phone: 903.938.5252
Facsimile:  903.938.8616
Email: don@stokesfirm.com

Respectfully submitted,

By:  */s/ Charles Everingham IV*
Charles Everingham IV  *(Lead Attorney)*
Texas Bar No. 00787447
AKIN GUMP STRAUSS HAUER & FELD LLP
911 West Loop 281, Suite 412
Longview, TX 75604
Telephone: 903.297.7404
Facsimile: 903.297.7402
Email: ceveringham@akingump.com

Steven M. Zager
Texas State Bar No. 22241500
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: 212.872.1000
Facsimile:  212.872.1002
Email: SZAGER@AKINGUMP.COM

Michael Simons
Texas Bar No. 24008042
AKIN GUMP STRAUSS HAUER & FELD LLP
300 West 6th Street, Suite 1900
Austin, TX 78701
Telephone: 512.499.6253
Facsimile:  512.499.6290
Email: msimons@akingump.com

David M. Stein
Texas Bar No. 00797494
AKIN GUMP STRAUSS HAUER & FELD, LLP
633 West Fifth Street, Suite 5000
Los Angeles, California 90071-2081
Telephone: 213.254.1240
Facsimile: 213.254.1201
Email: dstein@akingump.com

Ifti Ahmed
Texas Bar No. 24064795
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX  77002
Telephone: 713.220.5800
Facsimile:  713.236.0822

Email: iahmed@akingump.com

**ATTORNEYS FOR PLAINTIFF
SABATINO BIANCO, M.D.**

By: _/s/ Thomas W. Sankey_
Thomas W. Sankey, P.C. (Lead Attorney)
Texas Bar No. 17635670
twsankey@duanemorris.com
R. Brandon Bundren
Texas Bar No. 24050353
rbbundren@duanemorris.com
Corey M. Weideman
Texas Bar No. 24056505
cmweideman@duanemorris.com
Diana M. Sangalli
Texas Bar No. 24033926
dmsangalli@duanemorris.com
Duane Morris LLP
1330 Post Oak Blvd. Suite 800
Houston, Texas 77056-3166
Telephone: 713.402.3900
Facsimile: 713.402.3901

Matthew A. Taylor (pro hac vice)
mataylor@duanemorris.com
Lawrence H. Pockers (pro hac vice)
lhpockers@duanemorris.com
Jeffrey S. Pollack
jspollack@duanemorris.com
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: 215.979.1000
Facsimile: 215.979.1020

**ATTORNEYS FOR
DEFENDANT/COUNTER-PLAINTIFF
GLOBUS MEDICAL, INC.**

# TABLE OF CONTENTS

PAGE(S)

I.    PRELIMINARY INSTRUCTIONS .................................................................1

    1.1.   GENERAL INSTRUCTIONS ...........................................................1
    1.2.   PARTIES' CONTENTIONS .............................................................2
    1.3.   OVERVIEW OF APPLICABLE LAW.............................................6
        1.3.1.  MISAPPROPRIATION OF TRADE SECRETS .....................6

        1.3.2.  MISAPPROPRIATION OF CONFIDENTIAL INFORMATION .............8

        1.3.3.  BREACH OF CONTRACT...........................................................   9

        1.3.4.  CORRECTION OF INVENTORSHIP...................................10

        1.3.5.  UNFAIR COMPETITION .............................................................   11

        1.3.6.  FRAUD            .......................................................................12

        1.3.7.  UNJUST ENRICHMENT .............................................................   13

        1.3.8.  DISGORGEMENT OF PROFITS ...............................................14

        1.3.9.  COMPENSATORY DAMAGES ...............................................15

        1.3.10. EXEMPLARY DAMAGES...........................................................   16

    1.4.   EVALUATION OF EVIDENCE AND CREDIBILITY OF WITNESSES ...........17
    1.5.   USE OF NOTES TAKEN BY JURORS .........................................17
    1.6.   OPENING STATEMENTS................................................................18
    1.7.   BURDEN OF PROOF ......................................................................18
    1.8.   EXPERT WITNESSES .....................................................................19
    1.9.   DEPOSITION EVIDENCE ..............................................................19
    1.10.  EVIDENCE.......................................................................................20
    1.11.  CORPORATE PARTY INVOLVED................................................20

II.   OUTLINE OF TRIAL .................................................................................21

III.  GENERAL INSTRUCTIONS FOR CHARGE.....................................................22

    INSTRUCTION NO. 1 – MISAPPROPRIATION OF TRADE SECRET......................27

    INSTRUCTION NO. 2 – BREACH OF CONTRACT .....................................30

    INSTRUCTION NO. 3 – CORRECTION OF INVENTORSHIP  ..................................32

    INSTRUCTION NO. 4 – UNFAIR COMPETITION ......................................35

    INSTRUCTION NO. 5 - FRAUD ......................................................................36

i

INSTRUCTION NO. 6 – UNJUST ENRICHMENT .......................................................37

INSTRUCTION NO. 7 – MISAPPROPRIATION OF CONFIDENTIAL
     INFORMATION ...................................................................................39

INSTRUCTION NO. 8 – DISGORGEMENT OF PROFITS ..........................................41

INSTRUCTION NO. 9 – GENERAL DAMAGES INSTRUCTION ...............................42

INSTRUCTION NO. 10 – AMOUNT OF DAMAGES ....................................................44

INSTRUCTION NO. 11 - PREDICATE FOR EXEMPLARY DAMAGES....................50

PLAINTIFF SABATINO BIANCO, M.D.'S PROPOSED VERDICT FORM ...........................54

GLOBUS MEDICAL, INC.'S PROPOSED SPECIAL VERDICT FORM.................................66

204224508 v4

# I.      PRELIMINARY INSTRUCTIONS

## 1.1.      GENERAL INSTRUCTIONS[1]

MEMBERS OF THE JURY:

You have now been sworn as the jurors in this case.  And as the jury, you are the judges of the facts, and as such, you will decide and determine all of the facts in this case.  As the Judge, I will give you instructions on the law, decide any questions of law that arise during the trial, and handle matters regarding evidence and procedure.  And I'm also responsible for the management of the flow of the trial and the maintenance of the decorum of the Court.

At the end of the evidence, I'll give you detailed instructions about the law to apply in deciding this case, and I'll give you a list of questions that you are then to answer.  This list of questions is called the verdict form.  Your answers to the questions will need to be unanimous, and those answers will constitute the verdict in this case.

---

[1] Adopted from *Hitachi Consumer Electronics Co. v. Top Victory Electronics (Taiwan) Co. Ltd.*, Preliminary Jury Instructions, Civil Action No. 2:10-cv-260-JRG (E.D. Tex.), attached hereto as Exhibit 1.  *See* Declaration of David Lawrence, attached hereto as Exhibit 9, at ¶ 4.

## 1.2.    PARTIES' CONTENTIONS

Before we begin, I will summarize each side's contentions and the general legal principles that apply in this case.  At the end of the trial, I will give you detailed instructions regarding the law that you must follow in deciding the issues that are presented to you.

### Dr. Bianco's Contentions

[Dr. Bianco is a neurosurgeon specializing in minimally invasive brain and spine surgeries in Tyler Texas and later in Arlington, Texas.  Defendant, Globus Medical, Inc. is manufacturer of spinal implant used in spinal surgeries.  Throughout the trial, the lawyers, the parties, and I will often refer to Globus Medical, Inc. simply as Globus.

Dr. Bianco brought this case against Globus for (1) misappropriation of trade secrets, (2) breach of contract, (3) correction of inventorship, (4) unfair competition, (5) fraud, (6) unjust enrichment, (7) misappropriation of confidential information, and (8) disgorgement of profits.  I will explain what each of these claims mean and what Dr. Bianco must prove to establish each claim below.

Dr. Bianco contends he conceived of an idea and a product design for an expandable intervertebral fusion device for use in minimally invasive spinal surgeries, and that he disclosed this idea and design to Globus under an agreement that Globus would not use or disclose Dr. Bianco's idea and design without Dr. Bianco's permission.  Dr. Bianco contends that, after telling him that it was not interested in using his idea and design, Globus developed expandable intervertebral fusion products, including Globus's Caliber and RISE families of products, that incorporate Dr. Bianco's idea and design.  Dr. Bianco contends that, by doing so, Globus has breached the parties' agreement, misappropriated his trade secrets and confidential information, competed unfairly by misappropriating the value of the time, skill, and labor Dr. Bianco spent in developing his idea and product design, committed fraud, and has been unjustly enriched at Dr. Bianco's expense.  Dr. Bianco seeks to recover damages from Globus under these legal theories.

Dr. Bianco also contends that Globus filed several United States patent applications, including U.S. Patent Application Numbers 12/579,833 (the "'833 Application"), 13/451,230 (the "'230 Application"), and 12/875,706 (the "'706 Application) (collectively, the "Patent Applications") that include the functions and features of Dr. Bianco's idea and design, and that Globus did so without naming Dr. Bianco as an inventor on the Patent Applications. Dr. Bianco contends that Globus violated the patent laws by failing to identify Dr. Bianco as an inventor in the Patent Applications.  Dr. Bianco contends that three United States patents have issued from the patent applications Globus filed, including U.S. Patent Numbers 8,062,375 (the "'375 Patent"), 8,518,120 (the "'120 Patent"), and 8,491,659 (the "'659 Patent") (collectively, the "Patents"), none of which lists Dr. Bianco as an inventor. Dr. Bianco seeks correction of inventorship of the Patent Applications and the Patents.]

### Globus' Contentions

[Founded in 2003 and headquartered in Audubon, Pennsylvania, Globus is a leading spinal implant manufacturer driving significant technological advancements across a complete suite of spinal products.  Globus is driven to utilize superior engineering and technology to achieve pain free, active lives for all patients with spinal disorders.  Globus has designed, developed and commercialized over 110 medical devices.

Globus was founded by its Chairman and Chief Executive Officer, Mr. David Paul, in Mr. Paul's basement.  Mr. Paul is an accomplished mechanical engineer with extensive experience in medical devices.  Mr. Paul is a named inventor on over 45 patents and 74 pending patent applications.

Globus saw a need to develop an expandable interbody implant device in the 1990s and at the turn of the century.  Prior to June 2007, there were multiple spinal implants on the market which included expandable technology, including Spinewave's StaXx product and Globus' Xpand product.  Completely unrelated to Dr. Bianco, in the summer of 2007, Globus began to form a minimally invasive surgery team of engineers and outside doctors to evaluate the potential industry change from full open surgeries to minimally invasive surgeries.  Dr. Bianco was not part of this elite team.

In or around August 2007, Mr. Bill Rhoda, one of Globus' founders, tasked a Globus engineer, to design an expandable interbody implant.  Globus considered multiple methods of expansion, including ramps, wedges, and a scissor jack mechanism in the design.  In early 2008, Globus began staffing surgeon design teams to assist with Globus' efforts to develop the expandable interbody implant.  In exchange, each surgeon design team doctor executed a royalty agreement for, on average, a 0.5% royalty once Globus commercialized and sold the product.  With most of the doctors signed up, in January 2009, Globus tasked Mr. Chad Glerum and Mr. Sean Suh to spearhead Globus' engineering efforts to design what would eventually be known as Caliber®.  Concurrently, Globus appointed Mr. Mark Weiman as lead engineer on the endoscopic version of the expandable interbody implant project, which would later become known as RISE®.  During the better part of the next two years, Globus, led by Mr. Glerum and Mr. Weiman, designed, tested, experimented, participated in labs, met with the surgeon design team doctors leading up to finalizing commercially viable products in February 2011 (Caliber®) and October 2013 (RISE®) respectively.

As for Dr. Bianco, he relocated to Tyler in the spring of 2007.  In or around the first week of June 2007, Mr. Gregg Harris, Globus' then Area Director for sales in the Texas market, and Mr. Steve Anthony, a Globus sales representative, introduced themselves to Dr. Bianco in hopes of securing future business from Dr. Bianco.

As is customary with Globus customers, Globus flew Dr. Bianco to Globus' headquarters for a "VIP" visit.  Prior to the VIP visit, Dr. Bianco signed a unilateral confidentiality agreement protecting only Globus from Dr. Bianco improperly using or disclosing anything Dr. Bianco learned on the VIP visit at Globus' headquarters.

Mr. Harris and Mr. Anthony accompanied Dr. Bianco on the VIP visit, the purpose of which included further introducing Dr. Bianco to Globus, its executive team, and to

demonstrate various cutting edge products on the market and in the development process. During his first VIP visit to Globus' headquarters, Dr. Bianco expressed interest in having Globus build a custom instrument replicating a Medtronic instrument, specifically, Medtronic's Scissor-jack instrument.  Dr. Bianco had previously been shown a Medtronic Scissor-jack instrument by a then Medtronic's sales representative prior to his VIP visit to Globus and Dr. Bianco wanted Globus to make him a custom instrument similar to that instrument.

Within days of his VIP visit, Globus received the three drawings, one being the slightly modified Medtronic Scissor-jack instrument.  Globus received the sketches on or about June 28, 2007.  The sketches were notarized by Dr. Bianco because Dr. Bianco said that Medtronic had previously stolen an idea from him for the design of an instrument several years earlier.  Globus' internal team reviewed the sketches and determined Dr. Bianco in fact requested Globus make him a modified Medtronic Scissor-jack instrument for Dr. Bianco's use during surgery.

Globus always understood Dr. Bianco's request as a request for a custom instrument and at no time did Globus believe Dr. Bianco submitted an idea for a new implant.  Even when Globus acknowledged receipt of Dr. Bianco's sketches to him via e-mail, Globus confirmed it had received his sketches for "three new instruments."  Dr. Bianco never objected or said a word about this description in any emails or any phone calls.

As Globus understood Dr. Bianco's sketch to be a request for a custom instrument, Mr. Andy Lee, head of Globus' custom instrument department, reviewed the sketch.  Mr. Lee immediately concluded Dr. Bianco's instrument depicted in the sketch would not work with a scissor jack expansion mechanism because it would not be strong enough and could break during surgery and thus be dangerous to patients.  Accordingly, Mr. Lee sketched out a concept, his own concept, using a ramp expansion mechanism.

Ultimately, Globus built a prototype of Mr. Lee's concept but the customs department determined it would not work and would be unsafe to patients.  Shortly after Globus made this determination, it placed Mr. Lee's prototype in a bin on a shelf in the customs department.  Mr. Lee's prototype remained in the same bin on the same shelf until spring 2013, after the lawsuit was filed.

No one on Globus' Caliber® or RISE® design teams saw, reviewed, or used the sketches that Dr. Bianco provided in June 2007 to Globus.  Rather, Globus independently developed its Caliber®, Caliber®-L, and RISE® products based on Mr. Paul's initial concept and Mr. Glerum, Mr. Suh, and Mr. Weiman's tireless effort.

Over the next four (4) years, the internal Caliber® and RISE® teams, as well as the design doctor teams, independently developed the Caliber® and RISE® line of products. The design and development teams did not know of or use any ideas of Dr. Bianco.  The contemporaneous lab notebooks of the lead engineers evidence the design, development, research, experimentation, change and ultimate product resulting from this team.  The contemporaneous lab notebooks do not mention Dr. Bianco nor his ideas.

4

Globus' most basic defense is that Dr. Bianco's sketches do not contain any trade secrets.   Dr. Bianco's sketches incorporated functions and features already publically disclosed dating back to at least 1998, well before Dr. Bianco's June 2007 sketch.   Even assuming Dr. Bianco's sketch is a trade secret, his sketch demonstrated a scissor jack expansion mechanism.   In contrast, it is undisputed Caliber®, Caliber®-L, and RISE® expand by using a different, ramp expansion mechanism.   Accordingly, Globus never used Dr. Bianco's sketch in designing the Caliber® or RISE® line of products.

Over the 4 ½ year relationship, Globus made over 200 custom instruments for Dr. Bianco who has never claimed any intellectual property in any of these instruments.  The forms used to submit these custom instrument requests varied.   Dr. Bianco also participated on other Globus design teams for which he agreed to a royalty agreement.  In those agreements, the parties always agreed to ½% (.05%) of "net sales".

Dr. Bianco became upset with Globus over the last year of the relationship because he was not treated as a VIP of the VIP's.   This included, but is not limited to, not being on the Caliber® design team.   Additionally, Dr. Bianco admittedly never said a single word to anyone at Globus about his alleged invention except to Gregg Harris even though numerous opportunities presented themselves.   This is clearly inconsistent with Dr. Bianco's claims in this lawsuit.

Over a year after Dr. Bianco filed this lawsuit against Globus, in May 2013, Dr. Bianco gave an hour long presentation to Biomet, another spinal implant company.   During this presentation, Dr. Bianco admitted to a room full of Biomet executives that Globus did not use Dr. Bianco's ideas in developing Globus' Caliber® or RISE® products. Accordingly, Biomet confirms Globus' version of the events.

Dr. Bianco is not an inventor of any of the claims in the '375, '120, or '659 Patents.

Finally, Dr. Bianco's claimed damages do not apportion for the ideas Dr. Bianco alleges are in Caliber® or RISE®commercial line of products that were not his.]

[DR. BIANCO:[2]

### 1.3.   OVERVIEW OF APPLICABLE LAW

In deciding the issues I just discussed, you will be asked to consider specific legal standards.  I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

### 1.3.1.   Misappropriation of Trade Secrets[3]

Dr. Bianco contends that Globus misappropriated his trade secrets.  To succeed on this claim, Dr. Bianco must prove the following things by a preponderance of the evidence:

1.      A trade secret exists;

2.      Globus acquired Dr. Bianco's trade secret through a breach of a confidential relationship with Dr. Bianco or discovered Dr. Bianco's trade secret[s] by improper means;

3.      Globus used Dr. Bianco's trade secret without authorization from Dr. Bianco; and

4.      Globus' use of the trade secret caused damage to Dr. Bianco.

A trade secret is any formula, pattern, device or compilation of information used in one's business which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it.

There is no precise definition or formula for determining whether any of the items claimed by Dr. Bianco actually constituted a trade secret.  Instead, you must make that determination in light of all the surrounding circumstances.  The following factors may be relevant to determining the existence of a trade secret, although these are not the only factors that may be relevant and you are to weigh them in the context of the surrounding circumstances

(1)      the extent to which the information is known by people other than Dr. Bianco;

---

[2] [GLOBUS: The instructions on the law reflected in Section 1.3 should not be given to the jury until after the close of evidence.  Globus' comments to the specific instructions below can be found in the instructions section herein.  To the extent the instructions on the law in Section 1.3 are provided, Globus incorporates by reference its comments to the specific instructions found below.]

[3] Modeled from *Versata Software, Inc. v. Internet Brands, Inc*., Final Instructions, Civil Action No. 2:08-cv-313-WCB (E.D. Tex.), attached hereto as Exhibit 2 (*see* Ex. 9, Declaration of David Lawrence, at ¶ 5); *Amway Corp. v. BHIP Global, Inc*., Jury Instructions, Civil Action No. 4:10-cv-549-ALM (E.D. Tex.), attached hereto as Exhibit 3 (*see* Ex. 9, Declaration of David Lawrence, at ¶ 6); *IBP, Inc. v. Klumpe*, 101 S.W. 3d 461, 476 (Tex. App.—Amarillo 2001, pet. denied) (elements of claim for trade secret misappropriation); *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (definition of trade secret); *Computer Assocs. Int'l v. Altai*, 918 S.W.2d 453, 455 (Tex. 1994) (definition of trade secret); *Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867, 877 (5th Cir. 2013) ("However, the standard for finding 'use' is not whether Accenture's templates contained Wellogix's trade secrets, but whether Accenture 'rel[ied] on the trade secret[s] to assist or accelerate research or development' of its templates.") (internal citations omitted).

(2)    the extent to which it is known by employees and others involved in the business;

(3)    the extent of measures taken by Dr. Bianco to safeguard the secrecy of the information;

(4)    the value of the information to Dr. Bianco and his competitors;

(5)    the amount of effort or money expended in developing the information; and

(6)    the ease or difficulty with which the information could be properly acquired or duplicated by others.

"Improper means" are those that fall below the generally accepted standards of commercial morality and reasonable conduct.

"Use" of a trade secret means any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant.  Marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret, all constitute "use."

If you find by a preponderance of the evidence that Globus misappropriated Dr. Bianco's trade secret, you will be asked to determine how much of Globus's profits, if any, resulted from that misappropriation.  Dr. Bianco is not entitled to all of Globus's income from its acts of trade secret misappropriation, but only the net profits resulting from the acts.

### 1.3.2.   Misappropriation of Confidential Information[4]

Dr. Bianco also contends that Globus misappropriated his confidential information.  To succeed on this claim, Dr. Bianco must prove the following things by a preponderance of the evidence:

1.      Dr. Bianco possessed confidential information; and

2.      Globus discovered such confidential information by improper means or in breach of a confidential obligation it had to Dr. Bianco; and

3.      Globus commercially used, or disclosed, such confidential information without Dr. Bianco's permission; and

4.      Globus's use of such confidential information caused injury to Dr. Bianco.

In order for information to be considered "confidential information" it must be secret or substantially secret.

---

[4] Modeled from *Canattx Energy Ventures v. GE Capital Corp.*, Instructions to the Jury, Interrogatory No. 9, Civil Action No. H-99-4425-KMH (S.D. Tex.), attached hereto as Exhibit 4 (*see* Ex. 9, Declaration of David Lawrence, at ¶ 7); *Stewart & Stevenson Servs., Inc. v. Serve-Tech, Inc*., 879 S.W. 2d 89, 95, 99 (Tex. App. Houston [14th Dist.] 1994, writ denied) (elements of cause of action, and requirement that confidential information must be secret or substantially secret); *Hyde Corp. v. Huffines,* 314 S.W. 2d 763, 777 (Tex. 1958) (requirement that confidential information must be secret or substantially secret).

204224508 v4

### 1.3.3.   Breach of Contract[5]

Dr. Bianco also contends that Globus breached an agreement under which Globus agreed that if Dr. Bianco shared with Globus his ideas and designs, Globus would not use those ideas and designs for its own purposes or disclose them to the public without receiving permission from Dr. Bianco.   To succeed on this claim, Dr. Bianco must prove the following things by a preponderance of the evidence:

1.   Dr. Bianco and Globus entered into a valid, enforceable contract; and

2.   Dr. Bianco performed, tendered performance of, or was excused from performing his contractual obligations; and

3.   Globus breached the contract; and

4.   Globus's breach caused Dr. Bianco damages.

---

[5] Modeled from *Versata Software, Inc. v. Internet Brands, Inc*., Final Instructions, Civil Action No. 2:08-cv-313-WCB (E.D. Tex.), attached hereto as Exhibit 2; *Resurgence Financial, LLC v. Taylor*, 295 S.W.3d 429, 433 (Tex. App.-Dallas 2009) (listing the four elements); *Garcia v. State Farm Lloyds*, 287 S.W.3d 809 (Tex. App.-Corpus Christi 2009) (same); *East Tex. Med. Ctr. Cancer Inst. v. Anderson*, 991 S.W.2d 55, 62 (Tex. App-Tyler 1998) (same); *Bank of Texas v. VR Elec., Inc*., 276 S.W.3d 671, 677 (Tex. App.-Houston 2008) (same); *Navasota Resources, L.P. v. First Source Texas, Inc.,* 249 S.W.3d 526, 540 (Tex. App.Waco 2008) (same); *Killeen v. Lighthouse Elec. Contractors, L.P.*, 248 S.W.3d 343, 349 (Tex. App.-San Antonio 2007) (same).

9

### 1.3.4.   Correction of Inventorship[6]

Dr. Bianco also contends that Globus failed to include him as a named inventor in U.S. Patent applications, including the '833 Application, the '230 Application, and the '706 Application, from which three patents have issued, the '375 Patent, the '120 Patent, and the '659 Patent.  Dr. Bianco seeks to have these three patents corrected to list Dr. Bianco as an inventor.

To obtain correction of inventorship, Dr. Bianco must prove by clear and convincing evidence that he was omitted as an inventor through error.

To be an inventor, one must make a significant contribution to the conception of at least one or more of the claims of the patent.  Whether the contribution is significant is measured against the scope of the full invention.  Merely helping with experimentation, by carrying out the inventor's instructions, does not make someone an inventor.  What is required is some significant contribution to the idea claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. A contribution to one claim is enough.  Persons may be joint or co-inventors even though they do not physically work together, but they must have some way to have communicated with each other during or at approximately the time of their inventive effort.  The amount of collaboration between inventors is not demanding and requires only an element of joint behavior.   For example, collaborations can consist of one inventor seeing the report of another and building upon it, or one inventor merely hearing an inventive suggestion at a meeting.  Even where one inventor is wholly unaware that his or her materials are being used by another inventor, the element of joint behavior can be satisfied.[7]

To satisfy this standard, the claimed inventor must provide evidence corroborating his testimony concerning conception of the invention.   Corroborating evidence may take many forms, including contemporaneous documentary or physical evidence, oral testimony of others, and circumstantial evidence.

---

[6] Modeled from 35 U.S.C. § 256 (correction of named inventor); Federal Circuit Bar Association Model Patent Jury Instructions B.4.3d (inventorship); *Shum v. Intel Corp.*, 630 F.Supp.2d 1063, 1081-82 (N.D. Cal. 2009) (entering judgment on jury verdict that, among other things, found plaintiff was a co-inventor of issued patent); *Eli Lilly Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004).

[7] *Theranos, Inc. v. Fuisz Pharma LLC*, 2013 WL 5304134, * 2 (N.D. Cal. Sept. 20, 2013).

### 1.3.5.   Unfair Competition[8]

Dr. Bianco also contends that Globus competed unfairly by misappropriating the value of the time, skill, and labor Dr. Bianco spent in developing the idea and product design that he disclosed to Globus.   Unfair competition is the appropriation and use by a Defendant in competition with Plaintiff of a monetary, financial, or property interest created by Plaintiff through the expenditure of time, labor, skill, and money.

To succeed on this claim, Dr. Bianco must prove by a preponderance of the evidence that:

1.     Dr. Bianco created information through the expenditure of time, labor, skill, and money;

2.     Globus used that information in competition with Dr. Bianco, thereby obtaining a special competitive advantage because Globus was burdened with little or none of the expense Dr. Bianco incurred in developing the idea and product design; and

3.     Dr. Bianco was commercially damaged as a result.

---

[8] Modeled from *U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex.App.—Waco 1993, writ denied).

### 1.3.6.  Fraud[9]

Dr. Bianco also contends that Globus committed fraud against him.

To succeed on this claim, Dr. Bianco must prove the following things by a preponderance of the evidence:

1.      Globus made a material misrepresentation to Dr. Bianco, and

2.      Globus made the misrepresentation with the knowledge of its falsity or made the misrepresentation recklessly without any knowledge of the truth and as a positive assertion, and

3.      Globus made the misrepresentation with the intention that it should be acted on by Dr. Bianco, and

4.      Dr. Bianco relied on the misrepresentation and thereby suffered injury.

"Misrepresentation" means a false statement of fact or a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

---

[9] Modeled from Texas Pattern Jury Charges—Business, Consumer, Insurance & Employment (2010), PJC 105.1 (question on common-law fraud—intentional misrepresentation); PJC 105.2 (instruction on common-law fraud—intentional misrepresentation); PJC 105.3A (definitions of misrepresentation—intentional misrepresentation—factual misrepresentation); PJC 105.3B (definitions of misrepresentation—intentional misrepresentation—promise of future action).

### 1.3.7.  Unjust Enrichment[10]

Dr. Bianco also asserts a claim for unjust enrichment.  To succeed on his claim for unjust enrichment, Dr. Bianco must prove by a preponderance of the evidence that Globus wrongfully secured a benefit from Dr. Bianco to which Globus was not entitled.

---

[10] Modeled from *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."); *Citizens National Bank v. Allen Rae Investments, Inc.*, 142 S.W.3d 459, 490 (Tex.App.-Fort Worth 2004, no pet.) (jury question for unjust enrichment: "Did [LAR] obtain the 300 shares of stock in [ARI] by fraud, duress or the taking of undue advantage?"); *Kings Park Apartments, Ltd. v. National Union Fire Ins. Co.*, 101 S.W.3d 525, 536 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (discussing submission of liability and damages questions to the jury on unjust enrichment claim); *Community Mut. Ins. Co. v. Owen*, 804 S.W.2d 602, 606 (Tex.App.-Houston [1st Dist.] 1991, writ denied)(to be entitled to recover for unjust enrichment plaintiff must show that defendant wrongfully secured a benefit or passively received a benefit which would be unconscionable for defendant to retain).

### 1.3.8.   Disgorgement of Profits[11]

Dr. Bianco also asserts a claim for disgorgement of profits.  To succeed on this claim, Dr. Bianco must prove by a preponderance of the evidence that Globus acquired a gain or benefit by use or misappropriation of Dr. Bianco's trade secret or confidential information or unjust enrichment.

The measure of recovery under a disgorgement calculation is the dollar value of the benefits, profits, or advantages gained by Globus as a result of its use or misappropriation of Dr. Bianco's trade secret or confidential information or unjust enrichment.  Dr. Bianco may recover the value of any gain received by Globus as a result of its use or misappropriation of Dr. Bianco's trade secret or confidential information or unjust enrichment, including but not limited to the profit made on sales by Globus with the benefit of Dr. Bianco's trade secret or confidential information.

Dr. Bianco must only establish the amount of Globus's gross revenues made possible by its wrongful acts against Dr. Bianco.  Globus then bears the burden of showing what, if any, portion of its gross revenues is not attributable to its wrongful acts against Dr. Bianco and what permitted expenses should be deducted to determine Globus's profits.

---

[11] Modeled from Texas Pattern Jury Charges, Business, Consumer, Insurance & Employment, 110.16 (2006); *Injection Research Specialists Inc. v. Polaris Indus., L.P.*, 48 U.S.P.Q.2d 1719 (Fed. Cir. 1998); Restatement (Third) of Unfair Competition § 45 cmt. f (1995); *Mabrey v. Sandstream, Inc.*, 124 S.W. 3d 302, 317 (Tex. App.—Fort Worth 2003, no pet.); *Elcor Chem. Corp. v. Agri-Sul, Inc.*, 494 S.W.2d 204, 213-14 (Tex. Civ. App—Dallas 1973, writ ref'd n.r.e.).

### 1.3.9.   Compensatory Damages[12]

If you find that Globus is liable to Dr. Bianco, then you must determine an amount that is fair compensation for all of Dr. Bianco's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Dr. Bianco whole—that is, to compensate Dr. Bianco for the damage that he has suffered. Compensatory damages are not limited to expenses that Dr. Bianco may have incurred because of the occurrence.

The damages that you award must be fair compensation for all Dr. Bianco's damages, no more and no less. Compensatory damages are not allowed as punishment and cannot be imposed or increased to penalize a defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which Dr. Bianco has actually suffered.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Dr. Bianco prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

If Dr. Bianco wins, I will instruct you to calculate compensatory damages under two different methods.

Under the first method, Dr. Bianco is entitled to compensatory damages for any damages sustained by Dr. Bianco, including the recovery of Globus profits, because of Globus's conduct. In assessing profits, Dr. Bianco shall be required to prove Globus's sales only. Globus must prove all elements of costs or deductions claimed.

Under the second method, Dr. Bianco is entitled to recover the amount Dr. Bianco would have received from Globus if he had been paid a reasonable royalty for the use of its his trade secrets and/or confidential information. I will instruct you later on the meaning of a reasonable royalty.

---

[12] Modeled from *Amway Corp. v. BHIP Global, Inc*., Jury Instructions, Civil Action No. 4:10-cv-549-ALM (E.D. Tex.), attached hereto as Exhibit 3; *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 538-39 (5th Cir. 1978) ("if the defendant enjoyed actual profits, a type of restitutionary remedy can be afforded the plaintiff—either recovering the full total of defendant's profits or some apportioned amount designed to correspond to the actual contribution the plaintiff's trade secret made to the defendant's commercial success.").

## 1.3.10. Exemplary Damages[13]

Dr. Bianco also seeks exemplary damages.  "Exemplary damages" means any damages awarded as a penalty or by way of punishment.  Exemplary damages are neither economic nor noneconomic damages.  Exemplary damages include punitive damages.  Exemplary damages may only be awarded in certain situations.

To award exemplary damages against Globus, you must find that Dr. Bianco proved by clear and convincing evidence that the harm to Dr. Bianco resulted from fraud, malice or gross negligence on the part of Globus.  Exemplary damages are not available for breach of contract.

Proof of fraud requires proof that the offending party made a material misrepresentation, that the misrepresentation was made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, that the misrepresentation was made with the intention that it should be acted on by the other party, and that the other party relied on the misrepresentation and thereby suffered injury.

Proof of malice requires proof that the offending party acted with the purpose of causing substantial injury to the other party.

Proof of gross negligence requires proof of an act or omission by the offending party that involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and of which the offending party was aware but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Malice means a specific intent to cause substantial injury or harm.

In determining the amount of exemplary damages, if any, you may consider any evidence relating to the following:

1.      The nature of the wrong;

2.      The character of the conduct involved;

3.      The degree of culpability of the wrongdoer;

4.      The situation and sensibilities of the parties concerned;

5.      The extent to which such conduct offends a public sense of justice and propriety; and

6.      The net worth of the Defendant.

---

[13] Modeled from *Versata Software, Inc. v. Internet Brands, Inc*., Final Instructions, Civil Action No. 2:08-cv-313-WCB (E.D. Tex.), attached hereto as Exhibit 2; *Amway Corp. v. BHIP Global, Inc.*, Jury Instructions, Civil Action No. 4:10-cv-549-ALM (E.D. Tex.), attached hereto as Exhibit 3.

## 1.4.    EVALUATION OF EVIDENCE AND CREDIBILITY OF WITNESSES[14]

Now, you're going to be hearing a number of witnesses in this case, and I want you to keep an open mind while you're listening to the evidence and not decide any facts until you've heard all of the evidence.

While the witnesses are testifying, remember that you will be the ones who have to decide the degree of credibility and believability of each of the witnesses.  So while the witnesses are testifying, you should be asking yourself:  Does the witness impress you as being truthful?

Does he or she have a reason not to tell the truth?

Does he or she have any personal interest in the outcome of the case?

Does the witness seem to have a good memory?

Did he or she have an opportunity and ability to observe accurately the things they testified about?

Did the witness appear to understand the questions clearly and answer them directly, and, of course, does the witness' testimony differ from that of other witnesses; and if it does, how does it differ?

These are the kinds of things you should be thinking about while you're listening to each witness.

The court reporter in front of me is taking down everything that is said, but that transcript will not be ready for your use at the time you deliberate. It's prepared in the event there's an appeal to an appellate court that has to review this case. So you'll each have to rely on your memories.

## 1.5.    USE OF NOTES TAKEN BY JURORS[15]

It's up to each of you to decide whether or not you want to take notes and how detailed you want those notes to be.

But, remember, those notes are for your own personal use.  You have to rely on your own memory of the evidence, which is why you should pay close attention to the testimony of each witness.  You should not abandon your own recollection because someone else's notes indicates something differently.  The notes are to refresh your recollection, and that's the only reason for which you should be keeping them.

---

[14] Adopted from *Hitachi Consumer Electronics Co. v. Top Victory Electronics (Taiwan) Co. Ltd.*, Preliminary Jury Instructions, Civil Action No. 2:10-cv-260-JRG (E.D. Tex.), attached hereto as Exhibit 1.

[15] Adopted from *Hitachi Consumer Electronics Co. v. Top Victory Electronics (Taiwan) Co. Ltd.*, Preliminary Jury Instructions, Civil Action No. 2:10-cv-260-JRG (E.D. Tex.), attached hereto as Exhibit 1; Fifth Circuit Pattern Jury Instructions—Civil (2006), Instruction 2.21.

Also during the trial, there will be times when we take a recess.  During the time we take a recess in the morning, in the afternoon, it's perfectly fine for you to leave your notepads in your chair there in the jury box.

When I excuse you for lunch break, it's probably best that you take them with you to the jury room, leave them on the table there when you go to lunch.  But at all times, those notepads should be with you in the jury box or in the jury room; nowhere else.

### 1.6.   OPENING STATEMENTS

Each side will make an opening statement in just a moment.  You'll need to understand that each side's opening statement is not evidence.  What the lawyers tell you is not evidence.  It's simply their explanation of what they hope and expect the evidence will show.  The evidence in this case is the sworn testimony of the witnesses, together with the exhibits that are admitted into evidence for your consideration.  That is the evidence in the case.

### 1.7.   BURDEN OF PROOF[16]

There are two standards of proof that you'll be asked to apply to the evidence, depending on the issue that you're deciding.  As the jury, you may apply the burden of proof known as preponderance of the evidence, as well as the different burden of proof known as clear and convincing evidence.

And as I did during the jury selection process, I need to instruct you again that when a party has the burden of proof on any claim by a preponderance of the evidence, this means that you, the jury, must be persuaded by the credible or believable evidence that the claim or defense is more probably true than not true.

Sometimes this is talked about as being the greater weight and degree of credible testimony.  As an illustration, you see the statute of the Lady of Justice in the courtroom.  The scales that she holds in her left hand are balanced and equal.

During the trial, as you hear the evidence, consider that evidence being placed on those scales.  When you retire to deliberate, you will decide whether those scales have tipped one way or the other way, depending on the evidence that you deem to be believable.  If, in deciding each issue and each question, those scales carrying all of the evidence that you've heard during the trial tip one way or the other way, even ever so slightly, then the direction in which they tip is a preponderance of the evidence and tells you how you should answer that question.

On the other hand, when the party has a burden of proof of proving a claim or defense by clear and convincing evidence, it means that you, the jury, must have an abiding conviction that the truth of the parties' contentions are highly probable.  That's a higher standard of proof than a preponderance of the evidence.

---

[16] Adopted from *Hitachi Consumer Electronics Co. v. Top Victory Electronics (Taiwan) Co. Ltd.*, Preliminary Jury Instructions, Civil Action No. 2:10-cv-260-JRG (E.D. Tex.), attached hereto as Exhibit 1; Fifth Circuit Pattern Jury Instructions—Civil (2006), Instruction 3.1 (modified)

Again, the same illustration.  If you imagine the scales of justice, when the evidence is applied and you ask which way and determine which way those scales have tipped, they must have tipped more heavily in favor of the party who has the burden of proof by clear and convincing evidence.  They can't just be tipped ever so slightly.

Now, none of this is to be confused with the burden of proof called beyond a reasonable doubt, which is the burden of proof that's applied in a criminal case.  That burden does not apply in this case at all or in any civil case.  And you should not confuse clear and convincing evidence with beyond a reasonable doubt.  It's not as high as beyond a reasonable doubt, but it is higher than a preponderance of the evidence.

## 1.8.    EXPERT WITNESSES[17]

Now, I want to talk to you briefly about expert witnesses.  When knowledge of a technical subject matter may be helpful to you as the jury, a person who has special training and experience in that particular technical field -- we refer to them as an expert witness -- is permitted to testify to you about his or her opinions on technical matters.

However, you are not required to accept those opinions at all.  It's up to you to decide whether you believe that an expert witness, or any witness for that matter, is correct or incorrect or whether or not you want to believe what they say.

I anticipate that there will be expert witnesses testifying in support of each side in this case, but it will be up to you to listen to their qualifications, and when they give you an opinion and explain the basis for that opinion, you will have to evaluate what they say and whether you believe it and to what degree you want to give it any weight or no weight at all.  Again, that is up to you.

## 1.9.    DEPOSITION EVIDENCE[18]

During the trial, I also anticipate that there's going to be testimony that's going to be presented through what we call depositions.  In trials, it's tough to get every witness physically here at the same time, so the lawyers from each side, prior to the trial, take the depositions of a witness.

In a deposition, they have a court reporter present.  The witness is sworn in and is under oath just as if he or she were personally in court.  And then the parties ask them questions, and everything is recorded and transcribed.

Portions of those video-recordings or those questions may be played to you as a part of the trial so that you can see the witness and hear the testimony.  That deposition testimony is

---

[17] Adopted from *Hitachi Consumer Electronics Co. v. Top Victory Electronics (Taiwan) Co. Ltd.*, Preliminary Jury Instructions, Civil Action No. 2:10-cv-260-JRG (E.D. Tex.), attached hereto as Exhibit 1; Fifth Circuit Pattern Jury Instructions—Civil (2006), Instruction 2.19.

[18] Adopted from *Hitachi Consumer Electronics Co. v. Top Victory Electronics (Taiwan) Co. Ltd.*, Preliminary Jury Instructions, Civil Action No. 2:10-cv-260-JRG (E.D. Tex.), attached hereto as Exhibit 1; Fifth Circuit Pattern Jury Instructions—Civil (2006), Instruction 2.23.

entitled to the same consideration, and insofar as possible, is to be judged as to credibility, weighed and otherwise considered by the jury in the same way as if the witness had been physically present and had given the testimony from the witness stand in this Court.

## 1.10.   EVIDENCE[19]

During the trial of the case, it is possible that the lawyers will make certain objections from time to time, and I will make rulings on those objections.  It's the duty of the attorney for each side to object when the other side offers testimony or evidence which they believe is not proper.

Upon my overruling an objection and thus allowing the testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate an opinion as to the weight or effect of such evidence.  As stated before, you, the jury, are the sole judges of the credibility of all the witnesses and the weight and effect of all of the evidence.

If the parties show you an exhibit that's already been ruled on by me as admissible, then they'll ask you questions as they wish and put it into context. I just want to let you know that both sides have been very diligent in streamlining this issue so we don't have to go through some of the same repetitive questions over and over again.

If I sustain an objection to a question addressed to a witness or to an item offered as an exhibit, then you must disregard the question or the exhibit entirely.  As to the question, you may draw no inference from the wording of it or speculate as to what the witness would have said, if permitted to answer the question.

If I overrule an objection and allow the testimony, you should consider the question and the answer as if no objection had been made at all.

Now, the law of the United States permits a judge to comment to the jury on the evidence, but some comments on the evidence are only an expression as to the judge's opinion as to the facts.  And the jury may disregard such comments in their entirety, because I remind you once again, you, the jury, are the sole judges of the facts in this case, the credibility of the witnesses, and how much weight you want to give to their testimony, if any at all.

## 1.11.   CORPORATE PARTY INVOLVED[20]

Do not let bias, prejudice, or sympathy play any part in your deliberations.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

---

[19] Adopted from *Hitachi Consumer Electronics Co. v. Top Victory Electronics (Taiwan) Co. Ltd.*, Preliminary Jury Instructions, Civil Action No. 2:10-cv-260-JRG (E.D. Tex.), attached hereto as Exhibit 1.
[20] Fifth Circuit Pattern Jury Instructions—Civil, § 2.13 (West Group 2006).

## II.    OUTLINE OF TRIAL[21]

We're going to get started with opening statements in just a few minutes, so I want to give you a brief roadmap of how the trial is going to be structured.

After the opening statements, Dr. Bianco will present his evidence in support of his claims that Globus misappropriated his trade secrets, misappropriated his confidential information, breached an agreement, failed to include Dr. Bianco as an inventor on the patent applications it submitted resulting in the patents at issue in this case, committed unfair competition, committed fraud, and has been unjustly enriched.  Dr. Bianco must prove each of these claims, except his claim that he was not listed as an inventor, by a preponderance of the evidence.  Dr. Bianco must prove his claim that he was not listed as an inventor by clear and convincing evidence.

**[DR. BIANCO: Globus will then present its evidence on its defenses.]**

**[GLOBUS: Globus will then present its evidence on its allegations that Globus developed the Caliber® and RISE® line of products completely independent of Dr. Bianco's drawings and that Dr. Bianco is not an inventor on the '375 Patent, the '120 Patent, or the '659 Patent.]**

Dr. Bianco may then put on additional evidence responding to Globus's evidence, and to offer any additional evidence in support of his claims.  This is referred to as "rebuttal" evidence.  Dr. Bianco's "rebuttal" evidence may respond to any evidence offered by Globus.  After all the evidence has been presented, I will give you final instructions in this case. The lawyers will then present their closing arguments, and then you will retire to the jury room to deliberate and reach your verdict.

Keep an open mind during the trial.  Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.[22]

Also to repeat my earlier instruction, Ladies and Gentlemen, you are not to discuss this case at all among yourselves during the trial.  Only when you retire to deliberate, after all of the evidence is in, you may discuss the case among yourselves.

I also want to remind you that the attorneys here today have been instructed by me not to talk with you.  So as we take breaks or you see them in and around the courthouse, don't perceive any of their actions as unfriendly or rude or hold it against them.

At this time, the Court will call for announcements from the parties.

---

[21] Adopted from *Hitachi Consumer Electronics Co. v. Top Victory Electronics (Taiwan) Co. Ltd.*, Preliminary Jury Instructions, Civil Action No. 2:10-cv-260-JRG (E.D. Tex.), attached hereto as Exhibit 1; Federal Circuit's 2010 Model Patent Jury Instructions, Preliminary Instruction A.5. (modified).

[22] Fifth Circuit Pattern Jury Instructions—Civil, § 1.1 (West Group 2006)

III.    **GENERAL INSTRUCTIONS FOR CHARGE**[23]

MEMBERS OF THE JURY:

Ladies and Gentlemen of the Jury:  You have now heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  However, you the jury, are the sole judges of the facts.  Accordingly, do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I give you these instructions, the attorneys will make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist you in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it and sign it.  Answer each question in the verdict form from the facts as you find them.  Do not decide who you think should win and then answer the questions to reach that result.  Your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received into evidence, regardless of who may have produced them.  You may also consider any stipulations received into evidence.

By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.  As stated before, you are the sole judges of the credibility of all the witnesses and the weight and effect, if any, to be given to all of the evidence.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We met because often during a trial something comes up that does not involve the jury.  You should not speculate on what was said during such discussions out of your presence.

---

[23]  Adopted from *Hitachi Consumer Electronics Co. v. Top Victory Electronics (Taiwan) Co. Ltd.*, Jury Instructions, Civil Action No. 2:10-cv-260-JRG (E.D. Tex.), attached hereto as Exhibit 5 (*see* Ex. 9, Declaration of David Lawrence, at ¶ 8); *Ambato Media LLC v. Clarion Co. Ltd*, Final Jury Instructions, Case No. 2:09-cv-242-JRG (E.D. Tex.), attached hereto as Exhibit 6 (*see* Ex. 9, Declaration of David Lawrence, at ¶ 9); *DDR Holdings, LLC v. Digital River, Inc.*, Final Jury Instructions, Civil Action No. 2:06-cv-42-JRG (E.D. Tex.), attached as Exhibit 7 (*see* Ex. 9, Declaration of David Lawrence, at ¶ 10); Fifth Circuit Pattern Jury Instruction—Civil (2006), Instruction 3.1 (General Instructions for Charge) (modified)

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means the evidence must persuade you that the claim or defense is more probable than not.

You should base your decision on all of the evidence, regardless of which party presented it.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the evidence has persuaded you that the claim or defense is highly probable. Such evidence requires a higher standard of proof than proof by a preponderance of the evidence.

Again, you should base your decision on all of the evidence, regardless of which party presented it.

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

Certain exhibits shown to you during the trial were illustrations.  We call these types of exhibits "demonstrative exhibits" or "demonstratives."  Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial.  If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits are sometimes called "jury aides."  Demonstrative exhibits themselves are not evidence, but a witness's testimony concerning a demonstrative exhibit is evidence.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case and any bias or prejudice;

(5)     whether other evidence contradicted the witness's testimony;

(6)     the reasonableness of the witness's testimony in light of all the evidence; and

(7)     any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

Certain testimony was presented to you through a deposition.  As I mentioned during my Preliminary Instructions, a deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter and videographer were present and recorded the testimony.  The deposition testimony is entitled to the same consideration and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.  For deposition testimony that was read, rather than presented by video, do not place any significance on the behavior or tone of voice of any person who read the questions or answers.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

First, let me go over some uncontested facts.  These facts are not disputed between the parties and you can consider these facts as part of the evidence in this case.

[UNCONTESTED FACTS FROM

JOINT PRETRIAL ORDER TO BE INSERTED]

[**DR. BIANCO:** [24]

As I did at the start of the case, I will now give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to prevail on each of its contentions.

Dr. Bianco is a neurosurgeon specializing in minimally invasive brain and spine surgeries in Arlington, Texas. Defendant, Globus Medical, Inc. is manufacturer of spinal implants and other products used in spinal surgeries.

Dr. Bianco brought this case against Globus for (1) misappropriation of trade secrets, (2) misappropriation of confidential information; (3) breach of contract, (4) correction of inventorship, (5) unfair competition, (6) fraud, (7) unjust enrichment, and (8) disgorgement of profits. I will explain what each of these claims mean and what Dr. Bianco must prove to establish each claim below.

Dr. Bianco contends he conceived of an idea and a product design for an expandable intervertebral fusion device for use in minimally invasive spinal surgeries, and that he disclosed this idea and design to Globus under an agreement that Globus would not use or disclose Dr. Bianco's idea and design without Dr. Bianco's permission. Dr. Bianco contends that, Globus secretly developed a prototype of his design and began developing an expandable interbody spacer. After keeping his drawings for almost two years and telling him that his drawings were being evaluated by Globus's New Idea committee, Globus returned his drawings telling him that Globus was not interested in developing an expandable intervertebral spacer. At the same time that it was telling Dr. Bianco it was not interested Globus was busy developing an expandable intervertebral fusion product and it applied for a patent a short time later and eventually launched its Caliber and RISE families of products, that incorporate Dr. Bianco's idea and design. Dr. Bianco contends that, by doing so, Globus has breached the parties' agreement, misappropriated his trade secrets and confidential information, competed unfairly by misappropriating the value of the time, skill, and labor Dr. Bianco spent in developing his idea and product design, committed fraud, and has been unjustly enriched at Dr. Bianco's expense. Dr. Bianco seeks to recover damages from Globus under these legal theories.

Dr. Bianco also contends that Globus filed several United States patent applications, including U.S. Patent Application Numbers 12/579,833 (the "'833 Application"), 13/451,230 (the "'230 Application"), and 12/875,706 (the "'706 Application") (collectively, the "Patent Applications") that include the functions and features of Dr. Bianco's idea and design, but without naming Dr. Bianco as an inventor on the patent applications. Dr. Bianco contends that Globus violated the patent laws by failing to identify Dr. Bianco as an inventor in its

---

[24] [**GLOBUS:** The parties' contentions were provided to the jury at the beginning of the case. Now that evidence has been received and has closed, the parties contentions are of zero effect and should not appear in the instructions again. Accordingly, Globus objects to including the contentions for this reason and believes they should be removed. To the extent the contentions are read to the jury again, Globus incorporates by reference its contentions as outlined above.]

patent applications.  Dr. Bianco contends that three United States patents have issued from the patent applications Globus filed, including U.S. Patent Numbers 8,062,375 (the "'375 Patent"), 8,518,120 (the "'120 Patent") and 8,491,659 (the "'659 Patent"), none of which lists Dr. Bianco as an inventor.  Dr. Bianco seeks correction of these patents, and any other patents that may issue from the patent applications Globus has filed, to list him as an inventor of the patents.

Globus denies all of Dr. Bianco's claims.  Globus denies that it misappropriated any of Dr. Bianco's trade secret or confidential information, and contends that the information at issue is not a trade secret and that Globus did not agree to keep it confidential or refrain from using it.  Globus admits that it did not list Dr. Bianco as an inventor in its patent applications because Globus does not believe Dr. Bianco is an inventor of the subject matter of the patent applications.

I will now instruct you on the specific rules you must follow to determine whether Dr. Bianco has proven his claims in this case.]

26

## INSTRUCTION NO. 1 – MISAPPROPRIATION OF TRADE SECRET[25]

Dr. Bianco contends that Globus misappropriated his trade secret.

**[GLOBUS: Globus denies that Dr. Bianco has any trade secrets or that Globus misappropriated any trade secrets.**][26]

To succeed on this claim, Dr. Bianco must prove the following things by a preponderance of the evidence:

1.    A trade secret exists;

2.    Globus acquired Dr. Bianco's trade secret through a breach of a confidential relationship with Dr. Bianco or discovered Dr. Bianco's trade secret[s] by improper means;

3.    Globus used Dr. Bianco's trade secret without authorization from Dr. Bianco; and

4.    Globus' use of the trade secret caused damage to Dr. Bianco.

A trade secret is any formula, pattern, device or compilation of information used in one's business which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it.

**[GLOBUS: Maters of general knowledge in an industry are not trade secrets.[27]  The key part of the definition of a trade secret is secrecy.[28]  The word secret implies that the information is not generally known or readily available by independent investigation.[29]]**

**[BIANCO:  A trade secret need not be novel or unique and it may consist of a combination of simple and otherwise known components.  The fact that a trade secret can**

---

[25] Modeled from *Versata Software, Inc. v. Internet Brands, Inc*., Final Instructions, Civil Action No. 2:08-cv-313-WCB (E.D. Tex.), attached hereto as Exhibit 2; *Amway Corp. v. BHIP Global, Inc*., Jury Instructions, Civil Action No. 4:10-cv-549-ALM (E.D. Tex.), attached hereto as Exhibit 3; *IBP, Inc. v. Klumpe*, 101 S.W. 3d 461, 476 (Tex. App.—Amarillo 2001, pet. denied) (elements of claim for trade secret misappropriation); *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (definition of trade secret); *Computer Assocs. Int'l v. Altai*, 918 S.W.2d 453, 455 (Tex. 1994) (definition of trade secret); *Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867, 877 (5th Cir. 2013) ("However, the standard for finding 'use' is not whether Accenture's templates contained Wellogix's trade secrets, but whether Accenture 'rel[ied] on the trade secret[s] to assist or accelerate research or development' of its templates.") (internal citations omitted).

[26] *Versata Software, Inc. v. Internet Brands, Inc.*, Final Instructions, Civil Action No. 2: 08-cv-313-WCB (E.D. Tex.)

[27] *Versata Software, Inc. v. Internet Brands, Inc.*, Final Instructions, Civil Action No. 2: 08-cv-313-WCB (E.D. Tex.)

[28] *Luccous v. J.C. Kinley Co.*, 376 S.W.2d 336, 338 (Tex. 1964).

[29] *Richardson & Assoc., Inc. v. Andrews*, 718 S.W.2d 833, 837 (Tex. App.—Houston [14th Dist.] 1986, no writ).

**be discovered by experimentation and other lawful means does not deprive its owner of protection from those acquiring it by unfair means.[30]**]

There is no precise definition or formula for determining whether any of the items claimed by Dr. Bianco actually constituted a trade secret.  Instead, you must make that determination in light of all the surrounding circumstances.  The following factors may be relevant to determining the existence of a trade secret, although these are not the only factors that may be relevant and you are to weigh them in the context of the surrounding circumstances

(1)     the extent to which the information is known outside of Dr. Bianco;

(2)     the extent to which it is known by employees and others involved in the business;

(3)     the extent of measures taken by Dr. Bianco to safeguard the secrecy of the information;

(4)     the value of the information to Dr. Bianco and his competitors;

(5)     the amount of effort or money expended in developing the information; and

(6)     the ease or difficulty with which the information could be properly acquired or duplicated by others.

**[GLOBUS: Globus has alleged that Dr. Bianco cannot claim ownership of any claimed trade secrets because the information was in fact developed by Globus or others and that the alleged information that Dr. Bianco claims constitutes a trade secret in fact does not rise to the level of that which may be protected as a trade secret because the information is publically available.][31]**

"Improper means" are those that fall below the generally accepted standards of commercial morality and reasonable conduct.

"Use" of a trade secret means any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant.  Marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret, all constitute "use."

---

[30] *Bancservices Group, Inc. v. Strunk & Associates, L.P.*, 2005 WL 2674985, * 2 (Tex. App.—Houston [14th Dist.] Oct. 20, 2005, pet. denied) (citing jury instruction regarding misappropriation of trade secret).

[31] **[DR. BIANCO: Dr. Bianco objects to this proposed instruction because it constitutes legal argument and is inappropriate to include party contention in the instructions concerning the elements of legal claims.]**

**[BIANCO:  The standard for finding "use" does not require that Globus's products contain Dr. Bianco's trade secret.  "Use" may exist if Globus relied on Dr. Bianco's trade secret to assist or accelerate its research or development of its products.[32]]**

You must decide whether the information at issue in this case is a trade secret, and if it is, whether Globus has misappropriated it.

---

[32] *Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867, 877 (5th Cir. 2013) ("However, the standard for finding 'use' is not whether Accenture's templates contained Wellogix's trade secrets, but whether Accenture 'rel[ied] on the trade secret[s] to assist or accelerate research or development' of its templates.")(internal citations omitted).

## INSTRUCTION NO. 2 – BREACH OF CONTRACT[33]

[**DR. BIANCO:  Next, Dr. Bianco contends that Globus breached a confidentiality agreement under which Globus agreed that if Dr. Bianco shared with Globus his ideas and designs for medical devices, Globus would not use those ideas and designs for its own purposes or disclose them to the public without receiving permission from Dr. Bianco.  To succeed on this claim, Dr. Bianco must prove the following things by a preponderance of the evidence:**]

[**GLOBUS: To succeed on Dr. Bianco's claim for breach of a confidentiality agreement, Dr. Bianco must prove the following things by a preponderance of the evidence:**]

1.   Dr. Bianco and Globus entered into a valid, enforceable contract; and

2.   Dr. Bianco performed, tendered performance of, or was excused from performing his contractual obligations; and

3.   Globus breached the contract; and

4.   Globus's breach caused Dr. Bianco damages.

[**GLOBUS: To be enforceable, a contract must be reasonably definite and certain.[34] Failure to agree on or include an essential term renders a contract unenforceable.[35]**]

[**DR. BIANCO:  To form a contract, the parties must have the same understanding of the subject matter of the agreement and all of its essential terms.  To determine if the parties intended to form a contract, you should examine their language and conduct, the objectives they sought to accomplish, and the surrounding circumstances.  A contract is a legally enforceable promise or set of promises.  In order for a promise or set of promises to be legally enforceable, there must be an offer, an acceptance, consideration, and mutual assent.  These four requirements, although not expressly stated, may be found in the surrounding circumstances, including the parties' words and actions, what they wanted to**

---

[33] Modeled from *Versata Software, Inc. v. Internet Brands, Inc.*, Final Instructions, Civil Action No. 2:08-cv-313-WCB (E.D. Tex.), attached hereto as Exhibit 2; *Resurgence Financial, LLC v. Taylor*, 295 S.W.3d 429, 433 (Tex. App.-Dallas 2009) (listing the four elements); *Garcia v. State Farm Lloyds*, 287 S.W.3d 809 (Tex. App.-Corpus Christi 2009) (same); *East Tex. Med. Ctr. Cancer Inst. v. Anderson*, 991 S.W.2d 55, 62 (Tex. App-Tyler 1998) (same); *Bank of Texas v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.-Houston 2008) (same); *Navasota Resources, L.P. v. First Source Texas, Inc.*, 249 S.W.3d 526, 540 (Tex. App.Waco 2008) (same); *Killeen v. Lighthouse Elec. Contractors, L.P.*, 248 S.W.3d 343, 349 (Tex. App.-San Antonio 2007) (same).

[34] Texas Pattern Jury Charges: Business, Consumer, Insurance, Employment (2012), 101.1 (cmt); *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

[35] *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

**accomplish, the way they dealt with each other, and how others in the same circumstances customarily deal or would deal.**[36]]

You must decide whether Dr. Bianco and Globus entered into an agreement under which, if Dr. Bianco shared with Globus his ideas and designs for medical devices, Globus would not use those ideas and designs for its own purposes or disclose them to the public without receiving permission from Dr. Bianco.  If you find the parties did enter into such an agreement, you must decide whether Globus complied with the agreement.

_____

[36] *Smith v. EMC Corp.*, Court's Charge to the Jury, Civil Action No. 3:02-CV-0862-M (N.D. Tex.), attached hereto as Exhibit 8.  *See* Ex. 9, Declaration of David Lawrence, at ¶ 11.

31

## INSTRUCTION NO. 3 – CORRECTION OF INVENTORSHIP[37][38]

[**DR. BIANCO: Dr. Bianco also contends that Globus failed to include him as a named inventor in the patent applications and materials submitted in connection with the patent applications from which the '375 Patent, the '120 Patent and the '659 Patent issued. Dr. Bianco seeks to have the issued patents corrected to list Dr. Bianco as an inventor.**

**To obtain correction of inventorship, Dr. Bianco must prove by clear and convincing evidence that he was omitted as an inventor through error.**

**To be an inventor, one must make a significant contribution to the conception of at least one or more of the claims of the patent. Whether the contribution is significant is measured against the scope of the full invention. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed.**

**Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. A contribution to one claim is enough. Persons may be joint or co-inventors even though they do not physically work together, but they must have some way to have communicated with each other during or at approximately the time of their inventive effort. The amount of collaboration between inventors is not demanding and requires only an element of joint behavior. For example, collaborations can consist of one inventor seeing the report of another and building upon it, or one inventor merely hearing an inventive suggestion at a meeting. Even where one inventor is wholly unaware that his or her materials are being used by another inventor, the element of joint behavior can be satisfied.[39]**

**You must decide if Dr. Bianco should have been named as an inventor of the above-referenced patents.]**

[**GLOBUS: Dr. Bianco also contends that Globus failed to include him as a named inventor in the patent applications and materials submitted in connection with the patent applications from which the '375 Patent, the '120 Patent, and the '659 Patent issued. Dr. Bianco seeks to have the patent corrected to list Dr. Bianco.[40]**

---

[37] Modeled from 35 U.S.C. § 256 (correction of named inventor); Federal Circuit Bar Association Model Patent Jury Instructions B.4.3d (inventorship); *Shum v. Intel Corp.*, 630 F.Supp.2d 1063, 1081-82 (N.D. Cal. 2009) (entering judgment on jury verdict that, among other things, found plaintiff was a co-inventor of issued patent); *Eli Lilly Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004).

[38] [**GLOBUS: Globus contends this instruction and related interrogatory should be decided by the Court and not the jury. However, without waiving this argument, and to the extent the Court submits an instruction and interrogatory to the jury, Globus submits this proposed instruction.**]

[39] *Theranos, Inc. v. Fuisz Pharma LLC*, 2013 WL 5304134, * 2 (N.D. Cal. Sept. 20, 2013).

[40] [**Dr. Bianco objects to this proposed instruction because it constitutes legal argument and is inappropriate to include party contention in the instructions concerning the elements of legal claims.**]

Globus contends that Dr. Bianco is not an inventor of the '375 Patent, the '120 Patent, or the '659 Patent and that no error was committed by failing to include him as a named inventor.  The issuance of a patent creates a presumption that the inventors named on the patent are the true and only inventors.[41]  To obtain correction of inventorship, Dr. Bianco must prove by clear and convincing evidence that he is an actual inventor of the '375 Patent, the '120 Patent, and/or the '659 Patent.[42][43]

To be an inventor, one must contribute to the conception of the invention.[44] Conception is defined as the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention.[45] A conception is not complete if the subsequent course of experimentation, especially experimental failures, reveals uncertainty that so undermines the specificity of the inventor's idea that it is not yet a definite and permanent reflection of the complete invention as it will be used in practice.[46] An idea is definite in an inventor's mind when the inventor has a specific, settled idea, a particular solution to the problem at hand, and not just a general goal or research plan he hopes to pursue.[47]

An alleged inventor must show by clear and convincing evidence that he made a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and that he did more than merely explain to the real inventors well-known concepts and/or the current state of the art.[48]  Inventorship is determined on a claim-by-claim basis.[49]  The alleged inventor's contribution must be to the conception of the claim at issue, not something outside of the claim (*e.g.*, unclaimed aspects of the specification).[50] The contribution also must have been something more than what is in the prior art and more than an exercise of normal skill in the art.[51]

---

[41]  *Gemstar-TV Guide International, Inc. v. U.S. Int'l Trade Comm'n*, 383 F.3d 1352, 1381 (Fed. Cir. 2004) ("Because a patent is presumed valid under 35 U.S.C. § 282, there follows a presumption that the named inventors on a patent are the true and only inventors.")

[42]  *Hess v. Advanced Cardiovascular Systems, Inc*., 106 F.3d 976, 980 (Fed. Cir. 1997).

[43]  **[Dr. Bianco objects to this proposed instruction because it constitutes legal argument and is inappropriate to include party contention in the instructions concerning the elements of legal claims.]**

[44]  *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).

[45]  *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) (quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986)).

[46]  *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1229 (Fed. Cir. 1994).

[47]  *Burroughs Wellcome Co. v. Barr Lab., Inc*., 40 F.3d 1223, 1228 (Fed. Cir. 1994).

[48]  *Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001)

[49]  *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002).

[50]  *Eli Lilly& Co. v. Aradigm Corp*., 376 F.3d 1352, 1362-63 (Fed. Cir. 2004); *Ethicon, Inc. v. U.S. Surgical Corp*., 135 F.3d 1456,1461-63 (Fed. Cir. 1998).

[51]  *Eli Lilly & Co. v. Aradigm Corp*., 376 F.3d 1352, 1362 (Fed. Cir. 2004); *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997).

Claims for joint inventorship require that the co-inventors collaborate and work together to collectively have a definite and permanent idea of the complete invention.[52] One who merely suggests an idea of a result to be accomplished rather than the means of accomplishing it, is not a joint inventor.[53]

To satisfy this standard, the claimed inventor must provide evidence corroborating his testimony concerning conception of the invention.  Corroborating evidence may take many forms, including contemporaneous documentary or physical evidence, oral testimony of others, and circumstantial evidence.

You must decide if Dr. Bianco is an actual inventor of the '375 Patent, the '120 Patent, and the '659 Patent.]

---

[52] *Vanderbilt Univ. v. ICOS Corp,* 601 F.3d 1297, 1308 (Fed. Cir. 2010)

[53] *Hess v. Advanced Cardiovascular Systems, Inc.,* 106 F.3d 976, 980-81 (Fed. Cir. 1997) (finding plaintiff who offered suggestions to named inventors was not an inventor); *Garrett Corp. v. U.S.,* 422 F.2d 874, 881 (Ct. Cl. 1970).

## INSTRUCTION NO. 4 – UNFAIR COMPETITION[54]

**[DR. BIANCO: Next, Dr. Bianco contends that Globus competed unfairly by the value of the time, skill, and labor Dr. Bianco spent in developing the idea and product design that he disclosed to Globus.  Unfair competition is the appropriation and use by a Defendant in competition with Plaintiff of a monetary, financial, or property interest created by Plaintiff through the expenditure of time, labor, skill, and money.]**

**[GLOBUS: Next, Dr. Bianco contends that Globus competed with him unfairly by misappropriating the value, time, skill and labor Dr. Bianco spent in developing the idea and product design that he disclosed to Globus.]**

To succeed on this claim, Dr. Bianco must prove by a preponderance of the evidence that:

1.     Dr. Bianco created information through extensive time, labor, skill, and money;

2.     Globus used that information in competition with Dr. Bianco, thereby obtaining a special competitive advantage because Globus was burdened with little or none of the expense Dr. Bianco incurred in developing the idea and product design; and

3.     Dr. Bianco was commercially damaged as a result.

You must decide whether Globus has competed unfairly with Dr. Bianco.

---

[54] Modeled from *U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex.App.—Waco 1993, writ denied).

## INSTRUCTION NO. 5 - FRAUD[55]

Dr. Bianco also contends that Globus committed fraud against him.  To succeed on this claim, Dr. Bianco must prove the following things by a preponderance of the evidence:

1.    Globus made a material misrepresentation to Dr. Bianco, and

2.    Globus made the misrepresentation with the knowledge of its falsity or made the misrepresentation recklessly without any knowledge of the truth and as a positive assertion, and

3.    Globus made the misrepresentation with the intention that it should be acted on by Dr. Bianco, and

4.    Dr. Bianco relied on the misrepresentation and thereby suffered injury.

"Misrepresentation" means a false statement of fact or a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

You must decide whether Globus committed fraud against Dr. Bianco.

-----

[55] Modeled from Texas Pattern Jury Charges—Business, Consumer, Insurance & Employment (2010), PJC 105.1 (question on common-law fraud—intentional misrepresentation); PJC 105.2 (instruction on common-law fraud—intentional misrepresentation); PJC 105.3A (definitions of misrepresentation—intentional misrepresentation—factual misrepresentation); PJC 105.3B (definitions of misrepresentation—intentional misrepresentation—promise of future action).

36

**INSTRUCTION NO. 6 – UNJUST ENRICHMENT**[56] [57]

Dr. Bianco also asserts a claim for unjust enrichment.  To succeed on his claim for unjust enrichment, Dr. Bianco must prove by a preponderance of the evidence that:

**[DR. BIANCO: Globus wrongfully secured a benefit from Dr. Bianco to which Globus was not entitled.  You must decide whether Globus has wrongfully secured a benefit from Dr. Bianco to which Globus is not entitled.]**

**[GLOBUS: (1) Globus wrongfully secured a benefit from Dr. Bianco; and (2) the benefit was obtained by fraud, duress, or taking of undue advantage.**[58]

**Fraud occurs when:**

1.  **A party makes a material misrepresentation, and**

2.  **the misrepresentation is made with the knowledge of its falsity or recklessly without any knowledge of the truth and as a positive assertion, and**

3.  **the misrepresentation is made with the intention that it should be acted on by the other party, and**

4.  **the other party relies on the misrepresentation and thereby suffered injury.**

**"Misrepresentation" means a false statement of fact or a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.**  [59]

---

[56] Modeled from *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."); *Citizens National Bank v. Allen Rae Investments, Inc.*, 142 S.W.3d 459, 490 (Tex.App.-Fort Worth 2004, no pet.) (jury question for unjust enrichment: "Did [LAR] obtain the 300 shares of stock in [ARI] by fraud, duress or the taking of undue advantage?"); *Kings Park Apartments, Ltd. v. National Union Fire Ins. Co.*, 101 S.W.3d 525, 536 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (discussing submission of liability and damages questions to the jury on unjust enrichment claim); *Community Mut. Ins. Co. v. Owen*, 804 S.W.2d 602, 606 (Tex.App.-Houston [1st Dist.] 1991, writ denied)(to be entitled to recover for unjust enrichment plaintiff must show that defendant wrongfully secured a benefit or passively received a benefit which would be unconscionable for defendant to retain).

[57] **[GLOBUS: A remedy for unjust enrichment is unavailable, where a valid, express contract governing the subject matter of the dispute exists.  *See Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964). Accordingly, if the jury finds that a contract existed between the parties, this instruction and corresponding claim should not go to the jury. *See Burlington Northern Railroad Company v. South-Western Electric Power Company*, 925 S.W.2d 92, 97 ("A remedy such as unjust enrichment that is based on quasi-contract or a contract implied in law is unavailable when a valid, express contract governing the subject matter of the dispute exists.").  "Similarly, the doctrine of unjust enrichment does not apply when the contractual duty at issue has been performed."  *Id.*   So even if Dr. Bianco loses on its breach of contract claims, the unjust enrichment claim still fails because it simply does not apply to a situation where there exists an express agreement covering the subject matter at issue.]**

[58] *Baisden v. I'm Ready Prods., Inc.*, No. H-08-0451, 2008 U.S. Dist. LEXIS 39949, at *27 (S.D. Tex. May 16, 2008)

"Duress" is the mental, physical, or economic coercion of another, causing that party to act contrary to his free will and interest.[60]

"Undue advantage" means that there was such dominion and control exercised over the mind of the person executing the agreement, under the facts and circumstances then existing, as to overcome his free will. In effect, the will of the party exerting undue influence was substituted for that of the party entering the agreement, preventing him from exercising his own discretion and causing him to do what he would not have done but for such dominion and control.[61]

You must decide whether (1) Globus wrongfully secured a benefit from Dr. Bianco; and (2) the benefit was obtained by fraud, duress, or taking of undue advantage.]

---

[59] Texas Pattern Jury Charges: Business, Consumer, Insurance, Employment (2012), 105.2.

[60] Texas Pattern Jury Charges: Business, Consumer, Insurance, Employment (2012), 101.26.

[61] *See* Texas Pattern Jury Charges: Business, Consumer, Insurance, Employment (2012), 101.27 (undue influence).

**INSTRUCTION NO. 7 – MISAPPROPRIATION OF CONFIDENTIAL INFORMATION**[62] [63]

Dr. Bianco also contends that Globus misappropriated his confidential information.  To succeed on this claim, Dr. Bianco must prove the following things by a preponderance of the evidence:

1.  Dr. Bianco possessed confidential information; and

2.  Globus discovered such confidential information by improper means or in breach of a confidential obligation it had to Dr. Bianco; and

3.  Globus commercially used, or disclosed, such confidential information without Dr. Bianco's permission; and

4.  Globus's use of such confidential information caused injury to Dr. Bianco.

In order for information to be considered "confidential information" it must be secret or substantially secret.

**[GLOBUS: To determine whether the information is confidential, consider the following factors:**

**(1)    the extent to which the information is known outside of Dr. Bianco;**

**(2)    the extent to which it is known by employees and others involved in the business;**

**(3)    the extent of measures taken by Dr. Bianco to safeguard the secrecy of the information;**

**(4)    the value of the information to Dr. Bianco and his competitors;**

---

[62] Modeled from *Canattx Energy Ventures v. GE Capital Corp.*, Instructions to the Jury, Interrogatory No. 9, Civil Action No. H-99-4425-KMH (S.D. Tex.), attached hereto as Exhibit 4; *Stewart & Stevenson Servs., Inc. v. Serve-Tech, Inc.*, 879 S.W. 2d 89, 95, 99 (Tex. App. Houston [14th Dist.] 1994, writ denied) (elements of cause of action, and requirement that confidential information must be secret or substantially secret); *Hyde Corp. v. Huffines*, 314 S.W. 2d 763, 777 (Tex.1958) (requirement that confidential information must be secret or substantially secret).

[63] **[GLOBUS: Confidential information is entitled to protection only if rises to the level of a trade secret. *Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 97 (Tex. App.—Houston[14th Dist.] 1994, writ denied).  Accordingly, this instruction and related cause of action should not be submitted in the event the jury fails to find Dr. Bianco had a trade secret.  *Id*.  *See also Alliantgroup, L.P. v. Feingold*, 803 F.Supp.2d 610, 625, fn. 3 (S.D. Tex. 2011) (*citing SP Midtown, Ltd. v. Urban Storage, L.P.*, No. 14–07–00717–CV, 2008 WL 1991747, at \*5 n. 5 (Tex. App.-Houston [14 Dist.] 2008, pet. denied) (mem. op.) ("In its brief, Space Place argues the common law tort of misappropriation does not solely depend on the existence of a trade secret. Essentially, Space Place argues a claim of misappropriation of confidential information can survive even if the information does not constitute a trade secret. We disagree. There is no cause of action for misappropriation of confidential information that is not either secret, or at least substantially secret."));** *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 666 fn. 41 (S.D. Tex. 2010).]

> **(5)**      the amount of effort or money expended in developing the information; and
>
> **(6)**      the ease or difficulty with which the information could be properly acquired or duplicated by others.[64]

**Misappropriation does not require that a party use another's confidential information in exactly the form in which it received it; however, it must be substantially derived therefrom.[65]**]

You must decide if the information at issue in this case is confidential, and if so, whether Globus has misappropriated it.

---

[64] Modeled from *Canattx Energy Ventures v. GE Capital Corp.*, Instructions to the Jury, Interrogatory No. 9, Civil Action No. H-99-4425-KMH (S.D. Tex.), attached hereto as Exhibit 4.

[65] Modeled from *Canattx Energy Ventures v. GE Capital Corp.*, Instructions to the Jury, Interrogatory No. 9, Civil Action No. H-99-4425-KMH (S.D. Tex.), attached hereto as Exhibit 4.

## INSTRUCTION NO. 8 – DISGORGEMENT OF PROFITS[66] [67]

Dr. Bianco also asserts a claim for disgorgement of **[GLOBUS: net]** profits.  To succeed on this claim, Dr. Bianco must prove by a preponderance of the evidence that Globus acquired a gain or benefit by use or misappropriation of Dr. Bianco's trade secret or confidential information or unjust enrichment.

The measure of recovery under a disgorgement calculation is the dollar value of the benefits, **[GLOBUS: net]** profits, or advantages gained by Globus as a result of its use or misappropriation of Dr. Bianco's trade secret or confidential information or unjust enrichment. Dr. Bianco may recover the value of any gain received by Globus as a result of its use or misappropriation of Dr. Bianco's trade secret or confidential information or unjust enrichment, including but not limited to the **[GLOBUS: net]** profit made on sales by Globus with the benefit of Dr. Bianco's trade secret or confidential information.

Dr. Bianco must establish only the amount of Globus's gross revenues made possible by its wrongful acts against Dr. Bianco.  Globus then bears the burden of showing what, if any, portion of its gross revenues is not attributable to its wrongful acts and what permitted expenses should be deducted to determine Globus's **[GLOBUS: net]** profits.

You must decide whether Globus acquired a gain or benefit by using or misappropriating Dr. Bianco's trade secrets or confidential information, or through unjust enrichment, and if so, the dollar value of the benefits, **[GLOBUS: net]** profits or advantages Globus has gained.

---

[66] Modeled from Texas Pattern Jury Charges, Business, Consumer, Insurance & Employment, 110.16 (2006); *Injection Research Specialists Inc. v. Polaris Indus., L.P.*, 48 U.S.P.Q.2d 1719 (Fed. Cir. 1998); Restatement (Third) of Unfair Competition § 45 cmt. f (1995); *Mabrey v. Sandstream, Inc.*, 124 S.W. 3d 302, 317 (Tex. App.—Fort Worth 2003, no pet.); *Elcor Chem. Corp. v. Agri-Sul, Inc.*, 494 S.W.2d 204, 213-14 (Tex. Civ. App—Dallas 1973, writ ref'd n.r.e.).

[67] **[GLOBUS:  Disgorgement of profits is not a cause of action, merely an equitable remedy.** *Henry v. Masson*, **333 S.W.3d 825, 849 (Tex. App.—Houston [1st Dist.], 2010, no pet.).** *See ERI Consulting Eng'rs, Inc. v. Swinnea*, **318 S.W.3d 867, 873 (Tex. 2010) ("[C]ourts may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach of fiduciary duty.").  Accordingly, Globus objects to this instruction because profit disgorgement does not present a jury question because it is an equitable remedy.** *See* **Texas Pattern Jury Charges: Business, Consumer, Insurance, Employment, § 115.16, cmt. (2012). Proposed modifications to the instruction below should not be considered a waiver of Globus' objections to this instruction.].**

41

## INSTRUCTION NO. 9 – GENERAL DAMAGES INSTRUCTION

[**GLOBUS: You should not interpret the fact that I have given instructions about the measure of either party's damages as an indication in any way that I believe that either party should, or should not, win this case.[68] It is your first task to decide whether the party is liable.[69] I am instructing you on damages only so that you will have guidance in the event you decide that a party is liable and that the other party is entitled to recover money from the misconduct.[70] Keep in mind that to recover any type of damages, a party must produce evidence from which you may reasonably infer that the damages sued for have resulted from the conduct of the other party.[71] This requirement is met when a party establishes a direct causal link between the actionable misconduct of one party and the injury suffered by the other party.[72]**]

If you find that Globus is liable to Dr. Bianco under any of Dr. Bianco's claims, then you must determine an amount that is fair compensation for all of Dr. Bianco's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Dr. Bianco whole—that is, to compensate Dr. Bianco for the damage that he has suffered. Compensatory damages are not limited to expenses that Dr. Bianco may have incurred because of the occurrence.

The damages that you award must be fair compensation for all Dr. Bianco's damages, no more and no less. Compensatory damages are not allowed as punishment and cannot be imposed or increased to penalize a defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which Dr. Bianco has actually suffered.

[**GLOBUS: Additionally, you must not award damages more than once for the same injury.[73] For example, if Dr. Bianco prevails on two claims and establishes a dollar amount for its injuries, you must not award him additional damages on each claim.[74] A party is only entitled to be made whole once, and may not recover more than it has lost.[75]**][76]

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Dr.

---

[68] Fifth Circuit, Pattern Jury Instructions (Civil), Thomson West 2009, 15. Damages at 273.

[69] *Id.*

[70] *Id*.

[71] *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 181 (Tex. 1995).

[72] *Id.*

[73] *Fifth Circuit, Pattern Jury Instructions (Civil),* Thomson West, 2009, 15.14, Damages at 290.

[74] *Id.*

[75] *Id.*

[76] [**Dr. Bianco** objects to this instruction because it is not the jury's responsibility to determine what remedy will be elected or how the judgment will ultimately be formed. Damages will be awarded to Dr. Bianco in the Court's judgment after the jury returns its verdict and at the point the court will insure that damages are not duplicative.]

Bianco prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

43

**INSTRUCTION NO. 10 – AMOUNT OF DAMAGES**

**[DR. BIANCO:**

If Dr. Bianco wins, you will need to calculate compensatory damages under two different methods.

Under the first method, [77] Dr. Bianco is entitled to compensatory damages for Globus's profits and any damages sustained by Dr. Bianco, because of Globus's conduct. In assessing profits, Dr. Bianco shall be required to prove Globus's sales only.  Globus must prove all elements of costs or deductions claimed.

Under the second method, Dr. Bianco is entitled to recover the amount Dr. Bianco would have received from Globus if he had been paid a reasonable royalty for the use of his trade secrets and/or confidential information.

A royalty is a payment made to the owner of trade secrets and / or confidential information in exchange for rights to use the trade secrets and /or confidential information. A reasonable royalty is the payment that would have resulted from a negotiation between owner of trade secrets and / or confidential information the misappropriating party taking place just before the time when the sales incorporating the trade secret and /or confidential information first began.  In considering the nature of this negotiation, the focus is on what the expectations of the owner of trade secrets and / or confidential information and misappropriating party would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  In addition, you must assume that the owner of trade secrets and / or confidential information and misappropriating party were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In determining the royalty that would have resulted from the hypothetical negotiation, you may consider real world facts including the following to the extent they are helpful to you:

    (1)    The royalties received by Dr. Bianco for the licensing of the trade secrets and/or confidential information at issue in this case, proving or tending to prove an established royalty.

    (2)    The rates paid by licensees for the use of other trade secrets and /or confidential information comparable to the trade secrets and /or confidential information at issue in this case.

---

[77] Modeled from *Amway Corp. v. BHIP Global, Inc*., Jury Instructions, Civil Action No. 4:10-cv-549-ALM (E.D. Tex.), attached hereto as Exhibit 3; *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 538-39 (5th Cir. 1978) ("if the defendant enjoyed actual profits, a type of restitutionary remedy can be afforded the plaintiff—either recovering the full total of defendant's profits or some apportioned amount designed to correspond to the actual contribution the plaintiff's trade secret made to the defendant's commercial success.").

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her trade secrets and / or confidential information monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the trade secrets and /or confidential information in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his other items, and the extent of such derivative or convoyed sales.

(7)     The life cycle of the trade secrets and /or confidential information and the term of the license.

(8)     The established profitability of the product made using the trade secrets and / or confidential information, its commercial success, and its current popularity.

(9)     The utility and advantages of the trade secrets and /or confidential information over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the trade secrets and /or confidential information, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the misappropriating party has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from other elements, the manufacturing process, business risks, or significant features or improvements added by the misappropriating party.

(14)    The opinion and testimony of qualified experts.

45

(15)     The amount that a licensor (such as Dr. Bianco) and a licensee (such as Globus) would have agreed upon (at the time the misappropriation began) if they had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the trade secrets and /or confidential information—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent owner of trade secrets and /or confidential information who was willing to grant a license.

Other factors that you may consider include the following:[78]

(16)     The resulting and foreseeable changes in the competitive posture.

(17)     Prices paid by licensees in the past.

(18)     The total value of the secret to the plaintiff, including the plaintiff's development cost and the importance of the secret to the plaintiff's business.

(19)     The nature and extent of the use the defendant intended for the secret.

(20)     Whatever other unique factors in the particular case might have been affected by the parties' agreement, such as the ready availability of alternative process.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the misappropriating party would have been willing to pay and the owner of the trade secrets and /or confidential information would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the owner of the trade secrets and/or confidential information and the misappropriating party taking place at a time prior to when the misappropriation began.

[GLOBUS RE: DAMAGES FOR MISAPPROPRIATION OF TRADE SECRETS:

If you find that Globus misappropriated any of Dr. Bianco's trade secrets, please consider the amount of damages, if any, that Dr. Bianco has proven that it has sustained as a result of any trade secret misappropriation by a preponderance of the evidence.  It is critical that any damages awarded be directly related to the wrongful conduct alleged, that is there must be some causal nexus between Dr. Bianco's injury, if any, and the claimed

---

[78] *See Univ. Computing Co. v. Lykes–Youngstown Corp.,* 504 F.2d 518, 537 (1974).

damages.[79]  **Accordingly, you are required to apportion, based on evidence provided by Dr. Bianco, precisely the damages, if any, which are attributable to each trade secret you find the Globus misappropriated.**[80]

## GLOBUS POSITION RE: DAMAGES FOR BREACH OF CONTRACT:

**In a breach of contract action, the measure of damages is not the benefits received by the breaching party, but the loss or damage actually sustained by the non-breaching party.[81]  The general rule is that the victim of a breach of contract should be restored to the position it would have been in had the contract been performed.[82]  Determining that position involves finding what additions to the injured party's wealth have been prevented by the breach  and what subtractions from its wealth have been caused by it.[83]  Diminution in value of a business as a whole is not a proper measure of damages.[84]**

**A proper measure of damages in a breach of contract case is the loss of contractual net[85] profit.[86]  Net profit is that which remains in the conduct of a business after deducting from its total receipts all of the expenses incurred in carrying on the business.[87]  If the breaching party's conduct reduces the overall volume of the non-breaching party's business, but creates no reasonable opportunity for the non-breaching party to reduce its general overhead expenses, then appropriate measure of damages is amount of lost revenue, without deduction for portion of the fixed overhead expenses.[88]**

---

[79]  *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1161 (Fed. Cir. 1998); *see also Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983).

[80]  Metallurgical Indus. Inc. v. Fourtek, Inc., 790 F.2d 1195, 1208 (5th Cir.1986) (the trier of fact ... must determine the actual value of what has been appropriated).  *Schiller & Schmidt v. Nordisco Corp*., 969 F.2d 410, 416 (7th Cir. Ill. 1992) (expert should have tried to separate the damages that resulted from the lawful entry of a powerful competitor--Nordisco--from the damages that resulted from particular forms of misconduct allegedly committed by that competitor, of which the theft of the mailing list, however morally reprehensible, was the slightest."); *see also KW Plastics v. United States Can Co*., 131 F. Supp. 2d 1289, 1295 (M.D. Ala. 2001) (expert which extrapolates damages for ten years, is reliable and relevant only if the expert has considered whether the particular trade secrets misappropriated caused KW to obtain a 10-year contract for cans, rings, and plugs, rather than a contract in and of itself).

[81]  *Bancservices Group, Inc. v. Strunk & Assocs., L.P*., 2005 Tex. App. Lexis 8749 (Tex. App. Houston 14th Dist. Oct. 20, 2005) (citing *Walden v. Affiliated Computer Servs., Inc*., 97 S.W.3d 303, 328 (Tex. App.--Houston [14th Dist.] 2003, pet. denied).

[82]  *Interceramic, Inc. v. South Orient R.R. Co*., 999 S.W.2d 920, 927 (Tex. App. Texarkana 1999)

[83]  *Mistletoe Express Serv. v. Locke*, 762 S.W.2d 637, 638 (Tex. App.-Texarkana 1988, no writ).

[84]  *Nelson v. Data Terminal Systems, Inc*., 762 S.W.2d 744, 748 (Tex.App.--San Antonio 1988, writ denied).

[85]  *Edmunds v. Sanders*, 2 S.W.3d 697, 705 (Tex. App.-El Paso 1999, pet. denied); *Travel Masters, Inc. v. Star Tours, Inc*., 830 S.W.2d 614, 620 (Tex. App.-Dallas), *rev'd on other grounds*, 827 S.W.2d 830 (Tex. 1991). Net profit is that which remains in the conduct of a business after deducting from its total receipts all of the expenses incurred in carrying on the business. *See Travel Masters*, 830 S.W.2d at 620.

[86]  *Municipal Admin. Servs., Inc. v. City of Beaumont*, 969 S.W.2d 31, 37 (Tex. App.-Texarkana 1998, no pet.).

[87]  *Travel Masters, supra*, 830 S.W.2d at 620.

[88]  *Stuart v. Bayless*, 945 S.W.2d 131, 140-41 (Tex. App.--Houston [1st Dist.] 1996), rev'd on other grounds, 964 S.W.2d 920, 41 Tex. Sup. Ct. J. 546 (Tex. 1998); *Houston Chronicle Publ'g Co. v. McNair Trucklease, Inc.*, 519 S.W.2d 924, 932 (Tex. Civ. App.--Houston [1st Dist.] 1975, writ ref'd n.r.e.).

To recover lost net profits, a party must show either the actual existence of future contracts from which lost net profits can be calculated with reasonable certainty or a history of profitability.[89] The "lost profits" measure of damages is arrived at through an examination of the anticipated receipts and losses caused by the breach of contract, less any cost or other loss which the non-breach party saved or avoided by not having to perform its obligations under the contract.[90] The burden is on the party alleging a breach to provide evidence of any costs avoided to allow the jury to properly calculate "net" damages.[91]

Lost profits must also be shown with reasonable certainty,[92] that is, they "may not be based on evidence that is speculative, uncertain, contingent, or hypothetical."[93]

> Profits which are largely speculative, as from an activity dependent on uncertain or changing market conditions, or on chancy business opportunities, or on promotion of untested products or entry into unknown or unviable markets, or on the success of a new and unproven enterprise, cannot be recovered. Factors like these and others which make a business venture risky in prospect preclude recovery of lost profits in retrospect.[94]

At a minimum, estimates of lost profits must be based upon "objective facts, figures, or data from which the amount of lost profits can be ascertained."[95] Lost profit damages are also referred to as "direct" damages.

A party may also recover for "consequential" damages if those damages while not directly related to the breach of contract are nonetheless foreseeable and directly traceable to the wrongful act and result from it.[96] "[Consequential] damages are those that proximately result from the defendant's wrongful conduct but are of such an unusual nature that they would normally vary with the circumstances of the individual case in which they occur."[97] However, such damages must "be foreseeable, and they must be directly traceable to the wrongful act and result from it."[98] An example of consequential damages resulting from a breach of contract are profits lost on other contracts or

[89] *Edmunds v. Sanders, supra*, 2 S.W.3d at 705.

[90] *Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 187 (Tex. App.--Austin 1998, pet. denied) (citing RESTATEMENT (SECOND) OF CONTRACTS § 347 (1981)).

[91] *Farris v. Smith Erectors, Inc.*, 516 S.W.2d 281, 283-84 (Tex. Civ. App. -- -- Houston [1st Dist.] 1974, no writ) (burden is on non-breaching party to provide evidence from which net profits can be calculated).

[92] *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994).

[93] *Blase Indus. Corp. v. Anorad Corp.*, 442 F.3d 235, 238 (5th Cir. 2006).

[94] *Texas Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994).

[95] *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992).

[96] *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).

[97] *Burke v. Union Pac. Res. Co.*, 138 S.W.3d 46, 66 (Tex. App.--Texarkana 2004, pet. denied, pet. dism'd [2 pets.]) (quoting *Sherrod v. Bailey*, 580 S.W.2d 24, 28 (Tex. Civ. App.--Houston [1st Dist.] 1979, writ ref'd n.r.e.)).

[98] *Metro Nat. Corp. v. Dunham-Bush, Inc.*, 984 F. Supp. 538, 563 (S.D. Tex. 1997) (applying Texas law).

relationships resulting from the breach.[99]  As in the case of direct damages, consequential damages must be proven by the non-breaching party with reasonable certainty.[100]


## GLOBUS POSITION RE: DAMAGES FOR UNFAIR COMPETITION:

If you find that Globus misappropriated any of Dr. Bianco's alleged trade secrets, and that Dr. Bianco satisfied the other elements for its claim of unfair competition, you may award damages arising out of Globus' unfair competition, to the extent those damages were not previously awarded.  The measure of damages in an action for unfair competition is lost profits.[101]  Accordingly, if you have already awarded Dr. Bianco lost profits for its claim of breach of contract or for misappropriation of trade secrets, you may not also award those same damages here.  If you have not awarded Dr. Bianco damages for breach of contract or misappropriation of trade secrets, please consider the parameters set forth in the previous instruction with respect to the measure of lost profits to determine what, if any, lost profits Dr. Bianco has demonstrated are directly attributable to Globus' unfair competition.


## GLOBUS POSITION RE: DAMAGES FOR FRAUD:

If you find that Globus defrauded Dr. Bianco's, you may award damages arising out of Globus' fraud, to the extent those damages were not previously awarded.  The measure of damages in an action for fraud is out of pocket damages or benefit of the bargain damages.[102]  Out of pocket damages is the difference between the value of what the defrauded party parted with and the value it actually received.[103]  Benefit of the bargain damages are the difference between the value as represented and the value received.[104]  Dr. Bianco may seek lost profits as damages, but only if the profits would have been made if the contract had been performed as promised.[105]

If you have already awarded Dr. Bianco lost profits for its claim of breach of contract or for misappropriation of trade secrets, you may not also award those same damages here.  If you have not awarded Dr. Bianco damages for breach of contract or misappropriation of trade secrets, please consider the parameters set forth in the previous instruction with respect to the measure of lost profits to determine what, if any, lost profits Dr. Bianco has demonstrated are directly attributable to Globus' unfair competition.

---

[99] *Cont'l Holdings, Ltd. v. Leahy*, 132 S.W.3d 471, 475 (Tex. App.--Eastland 2003, no pet.).

[100] *Mood v. Kronos Prods.*, 245 S.W.3d 8, 12 (Tex. App. Dallas 2007).

[101] *Miller v. Lone Star Tavern, Inc.*, 593 S.W.2d 341, 345 (Tex. Civ. App.--Waco 1979, no writ).

[102] *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 775 (Tex. 2009).

[103] *Aquaplex*, 297 S.W.3d at 775.

[104] *Aquaplex*, 297 S.W.3d at 775.

[105] *Formosa Plastics*, 960 S.W.2d at 50.

## INSTRUCTION NO. 11 - PREDICATE FOR EXEMPLARY DAMAGES[106][107]

Finally, Dr. Bianco seeks exemplary damages.  "Exemplary damages" means any damages awarded as a penalty or by way of punishment.  Exemplary damages are neither economic nor noneconomic damages.  Exemplary damages include punitive damages. Exemplary damages may only be awarded in certain situations.  Exemplary damages are not available for breach of contract.

To award exemplary damages against Globus, you must find that Dr. Bianco proved by clear and convincing evidence that the harm to Dr. Bianco resulted from:

[**DR. BIANCO: fraud, malice or gross negligence on the part of Globus.**]

[**GLOBUS: malice on the part of Globus.[108]**]

[**DR. BIANCO: Proof of fraud requires proof that the offending party made a material misrepresentation, that the misrepresentation was made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, that the misrepresentation was made with the intention that it should be acted on by the other party, and that the other party relied on the misrepresentation and thereby suffered injury.**

**Proof of malice requires proof that the offending party acted with the purpose of causing substantial injury to the other party.**

**Proof of gross negligence requires proof of an act or omission by the offending party that involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and of which the offending party was aware but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Malice means a specific intent to cause substantial injury or harm.**]

[**GLOBUS: Proof of malice requires proof that Globus had a specific intent to cause substantial injury or harm to Dr. Bianco.[109]**]

---

[106] Modeled from *Versata Software, Inc. v. Internet Brands, Inc*., Final Instructions, Civil Action No. 2:08-cv-313-WCB (E.D. Tex.), attached hereto as Exhibit 2; *Amway Corp. v. BHIP Global, Inc.*, Jury Instructions, Civil Action No. 4:10-cv-549-ALM (E.D. Tex.), attached hereto as Exhibit 3.

[107] [**GLOBUS: Instruction should only be given with respect to the misappropriation of trade secrets claim as plead by Dr. Bianco.  Additionally, it is Globus' position that the amount of exemplary damages is conditioned on a finding of malice by the jury as a result of Globus' Unopposed Motion to Bifurcate which is pending before the Court.**]

[108] [**GLOBUS: Neither fraud nor gross negligence was plead as a means for recovering exemplary damages. The only theory to support an exemplary damages claim is "malice" and not fraud or gross negligence.  See Plaintiff's First Amended Complaint, at ¶ 53 ("The misappropriation of trade secrets and other conduct referenced herein was done with malice.  Globus is therefore liable for exemplary damages as a result of its conduct.").**]

[109] Texas Pattern Jury Charges: Business, Consumer, Insurance, Employment (2012), 115.37B; Tex. Civ. Prac. & Rem. Code § 41.001(7).

"**Clear and convincing evidence means**" the measure of degree or proof that produces a firm belief or conviction of the truth of the allegations sought to be established.[110]]

[**DR. BIANCO**: In determining the amount of exemplary damages, if any, you may consider any evidence relating to the following:

1. The nature of the wrong;

2. The character of the conduct involved;

3. The degree of culpability of the wrongdoer;

4. The situation and sensibilities of the parties concerned;

5. The extent to which such conduct offends a public sense of justice and propriety; and

6. The net worth of Defendants.]

---

[110] Texas Pattern Jury Charges: Business, Consumer, Insurance, Employment (2012), 115.37B.

[*** PARTIES PRESENT CLOSING ARGUMENTS ***]

I would now like to provide you with a few final instructions before you begin your deliberations.  You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

Now, when you retire to the jury room to deliberate on your verdict, you should take this charge with you. As you will note, I have provided a separate copy to each juror. If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or those exhibits to you. Once you retire, you should first select your Foreperson and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions and date and sign the last page. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question. Be sure your verdict form is signed and dated by your Foreperson.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about this case. If you choose to discuss it you may, but you are not required to. Whether or not you choose to discuss this case with anyone, after you have returned your verdict and I have released you as jurors, is up to you, unless I order otherwise.  You may now retire to the jury room to conduct your deliberations.

**PROPOSED VERDICT FORMS**

204224508 v4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SABATINO BIANCO, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 2:12-CV-147-JRG |
| | § | |
| GLOBUS MEDICAL, INC., | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |

## PLAINTIFF SABATINO BIANCO, M.D.'S PROPOSED VERDICT FORM

INSTRUCTIONS: Please answer the following questions to indicate your findings.

## I.      QUESTION REGARDING MISAPPROPRIATION OF TRADE SECRETS

### QUESTION 1

Has Dr. Bianco proven, by a preponderance of the evidence, that Globus misappropriated Dr. Bianco's trade secrets?

Answer "Yes" or "No."

Answer:_____

## II.       QUESTION REGARDING BREACH OF CONTRACT

## <u>QUESTION 2</u>

Did Dr. Bianco prove by a preponderance of the evidence that Globus failed to comply with an agreement under which if Dr. Bianco shared with Globus his ideas and designs for medical devices that Globus would not use those ideas or designs for its own purposes or disclose them to the public without receiving permission from Dr. Bianco?

Answer "Yes" or "No."

Answer:_____

III.     **QUESTION REGARDING CORRECTION OF INVENTORSHIP**

<u>**QUESTION 3**</u>

Did Dr. Bianco prove, by clear and convincing evidence, that through error, Dr. Bianco was not listed as a named inventor on the U.S. Patents listed below?

Answer "Yes" or "No."

The '375 Patent:  Answer:_____

The '120 Patent:  Answer:_____

The '659 Patent:  Answer:_____

## IV.     QUESTION REGARDING UNFAIR COMPETITION

## <u>QUESTION 4</u>

Did Dr. Bianco prove by a preponderance of the evidence that Globus engaged in unfair competition against him?

Answer "Yes" or "No."

Answer:_____

## V.     QUESTION REGARDING FRAUD

## <u>QUESTION 5</u>

Did Dr. Bianco prove by a preponderance of the evidence that Globus committed fraud against him?

Answer "Yes" or "No."

Answer:_____

## VI.    QUESTION REGARDING UNJUST ENRICHMENT

## QUESTION 6

Did Dr. Bianco prove by a preponderance of the evidence that Globus wrongfully secured a benefit from him to which Globus was not entitled?

Answer "Yes" or "No."

Answer:_____

204224508 v4

## VII.   QUESTION REGARDING MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

## QUESTION 7

Did Dr. Bianco prove by a preponderance of the evidence that Globus misappropriated his confidential information?

Answer "Yes" or "No."

Answer: _____

## VIII.   QUESTIONS REGARDING DISGORGEMENT OF PROFITS

## QUESTION 8

Did Dr. Bianco prove by a preponderance of the evidence that Globus acquired a gain or benefit by use or misappropriation of Dr. Bianco's trade secret or confidential information or unjust enrichment?

Answer "Yes" or "No."

Answer: _____

## QUESTION 9

**(Answer this question only if you answered YES to Question 1, 2, 4, 5, 6 or 7)**

What amount of profit do you find Globus made by its wrongful acts against Dr. Bianco?

Answer in dollars and cents, if any —

Profits Globus already gained: _____

Profits that in reasonable probability
Globus will gain in the
future: _____

## IX.     QUESTION REGARDING ACTUAL DAMAGES

**(Answer this question only if you answered YES to Question 1, 2, 4, 5, 6 or 7)**

## QUESTION 10

What sum of money, if any, paid now in cash, would fairly and reasonably compensate Dr. Bianco for his damages, if any, that resulted from Globus's conduct?

Consider the following elements of damages, if any, and none other.

**a.      Benefits gained by Globus as a result of its conduct.**

Answer in dollars and cents, if any —

Benefits Globus already gained:       _____

Benefits that in reasonable probability
Globus will gain in the
future:                                                _____

**b.      A reasonable royalty on Dr. Bianco's trade secrets and / or confidential information, which is the amount a hypothetical buyer would have paid to use or disclose Dr. Bianco's trade secrets and /or confidential information.**

Answer as a percent of Globus's Caliber, Caliber-L and RISE sales if any:

A reasonable royalty for Globus's
past use of Dr. Bianco's trade secrets
and/or confidential information:        _____%

A reasonable royalty for Globus's
future use of Dr. Bianco's trade secrets
and/or confidential information:        _____%

## X.    QUESTION REGARDING EXEMPLARY DAMAGES

**(Answer this question only if you answered YES to Question 1, 4, 5, 6 or 7)**

## QUESTION 11

Do you find by clear and convincing evidence that Globus's misappropriation of trade secrets, unfair competition, fraud, unjust enrichment, or misappropriation of confidential information, resulted from fraud, malice or gross negligence on the part of Globus?

Answer "Yes" or "No."

Answer: _____


## QUESTION 12

**(Answer this question only if you answered YES to Question 9)**

What sum of money, if any, should be assessed against Globus and awarded to Dr. Bianco as exemplary damages?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are—

a.      The nature of the wrong.

b.      The character of the conduct involved.

c.      The degree of culpability of the defendant.

d.      The situation and sensibilities of the parties concerned.

e.      The extent to which such conduct offends a public sense of justice and propriety.

f.      The net worth of the defendant.

Answer in dollars and cents, if any:  $_____

**I CERTIFY THAT THE JURY UNANIMOUSLY CONCURS IN EVERY ELEMENT OF THE ABOVE VERDICT.**

**DATED: _____, FOREPERSON_____**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| SABATINO BIANCO, MD | § | |
| | § | Case No. 2:12-cv-00147-JRG |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| GLOBUS MEDICAL, INC. | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

## GLOBUS MEDICAL, INC.'S PROPOSED SPECIAL VERDICT FORM

## INTERROGATORY NO. 1:

Do you find that Dr. Bianco has proved by a preponderance of the evidence that each feature contained in each of the following subparts 1-6 is a trade secret?  Please answer "YES" for each of subparts 1-6 below to indicate which item(s) were in fact trade secrets, if any.  Otherwise, answer "NO":

| | |
|---|---|
| 1. A tool and then a cage that is expandable and retractable | YES _____   NO _____ |
| 2. Single step deployment consisting of a dial to open the device either on the top or on the side where the mechanism is self-locking | YES _____   NO _____ |
| 3. Total implant length is the same whether open or closed | YES _____   NO _____ |
| 4. An inside mechanism constructed of a metal allow such as titanium and the end plates constructed of PEEK for the property already validated by the market and scientific data at the time | YES _____   NO _____ |
| 5. A cage that is 6 millimeter to 12 millimeter | YES _____   NO _____ |
| 6. A mechanism of expansion of the cage that is a scissor mechanism | YES _____   NO _____ |

**If you have answered "YES" to any of the subparts 1-6 in Interrogatory 1, proceed to Interrogatory 2.  If you have answered "NO" to all of the subparts 1-6 in Interrogatory 1, proceed directly to Interrogatory 5.**

_____

204224508 v4

**INTERROGATORY NO. 2:**

Did Dr. Bianco prove by a preponderance of the evidence that Globus misappropriated any of that information which you have found is Dr. Bianco's trade secret, if any?

For just those items in which you answered "YES" in Interrogatory 1, please answer "YES" or "NO" for that subpart below to indicate which information constitutes a protectable trade secret owned by Dr. Bianco which was misappropriated by Globus:

| | |
|---|---|
| 1.  A tool and then a cage that is expandable and retractable | YES _____ NO _____ |
| 2.  Single step deployment consisting of a dial to open the device either on the top or on the side where the mechanism is self-locking | YES _____ NO _____ |
| 3.  Total implant length is the same whether open or closed | YES _____ NO _____ |
| 4.  An inside mechanism constructed of a metal allow such as titanium and the end plates constructed of PEEK for the property already validated by the market and scientific data at the time | YES _____ NO _____ |
| 5.  A cage that is 6 millimeter to 12 millimeter | YES _____ NO _____ |
| 6.  A mechanism of expansion of the cage that is a scissor mechanism | YES _____ NO _____ |

**If you have answer "YES" to any to any of the subparts 1-6 in Interrogatory 2, proceed to Interrogatories 3 and 4.  If you have answered "NO" to all of the subparts in Interrogatory 2, proceed directly to Interrogatory 5.**

**<u>INTERROGATORY NO. 3</u>:**

What sum of money, if any, if now paid in cash did Dr. Bianco prove would fairly and reasonably compensate Dr. Bianco for his damages, if any, that directly resulted from Globus' misappropriation of Dr. Bianco's trade secrets?


Answer:        _____


**Please proceed to Interrogatory 4.**


_____

**INTERROGATORY NO. 4:**

Do you find by clear and convincing evidence that the harm to Dr. Bianco resulted from malice?

Answer "YES" or "NO."

Answer:        _____

**Please proceed to Interrogatory 5.**

**INTERROGATORY NO. 5:**

Did Dr. Bianco prove, by a preponderance of the evidence, that Dr. Bianco had an agreement with Globus under which if Dr. Bianco shared with Globus any ideas or designs for medical devices that Globus would not use those ideas or designs for its own purposes or disclose them to the public without receiving permission from Dr. Bianco?

Answer "YES" or "NO."

Answer:              _____

**If you have answer "YES" to Interrogatory 5, proceed to Interrogatory 6.   If you have answered "NO" to Interrogatory 5, proceed directly to Interrogatory 8.**

_____

**<u>INTERROGATORY NO. 6:</u>**

Did Dr. Bianco prove, by a preponderance of the evidence, that Globus failed to comply with the agreement under which if Dr. Bianco shared with Globus any ideas or designs for medical devices that Globus would not use those ideas or designs for its own purposes or disclose them to the public without receiving permission from Dr. Bianco?

Answer "YES" or "NO."

Answer:           _____

**If you have answer "YES" to Interrogatory 6, proceed to Interrogatory 7.  If you have answered "NO" to Interrogatory 6, proceed directly to Interrogatory 8.**

<u>                       </u>

## **INTERROGATORY NO. 7:**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dr. Bianco for his damages, if any, that resulted from Globus' failure to comply with the agreement?

Answer: _____.

**Please proceed to Interrogatory 8.**

———————————————

## INTERROGATORY NO. 8:[111]

Did Dr. Bianco prove, by clear and convincing evidence, that Dr. Bianco is the sole inventor of the Claims identified in the Patents below?  Please answer "YES" for each of the subparts for the Claims that you find Dr. Bianco is the sole inventor in the Patents below.  Otherwise, answer "NO."

| | |
|---|---|
| 1.  '375 Patent - Claim 1 | YES _____   NO _____ |
| 2.  '375 Patent - Claim 2 | YES _____   NO _____ |
| 3.  '375 Patent - Claim 3 | YES _____   NO _____ |
| 4.  '375 Patent - Claim 4 | YES _____   NO _____ |
| 5.  '375 Patent - Claim 5 | YES _____   NO _____ |
| 6.  '375 Patent - Claim 6 | YES _____   NO _____ |
| 7.  '375 Patent - Claim 7 | YES _____   NO _____ |
| 8.  '375 Patent - Claim 8 | YES _____   NO _____ |
| 9.  '375 Patent - Claim 9 | YES _____   NO _____ |
| 10. '375 Patent - Claim 10 | YES _____   NO _____ |
| 11. '375 Patent - Claim 11 | YES _____   NO _____ |
| 12. '375 Patent - Claim 12 | YES _____   NO _____ |
| 13. '375 Patent - Claim 13 | YES _____   NO _____ |
| 14. '375 Patent - Claim 14 | YES _____   NO _____ |
| 15. '375 Patent - Claim 15 | YES _____   NO _____ |
| 16. '375 Patent - Claim 16 | YES _____   NO _____ |
| 17. '375 Patent - Claim 17 | YES _____   NO _____ |
| 18. '375 Patent - Claim 18 | YES _____   NO _____ |

[111] [**GLOBUS: Globus contends this interrogatory (and related instruction) should not be submitted to the jury.  Globus contends this issue should be decided by the Court.  However, without waiving this argument, and to the extent the Court submits an instruction and interrogatory to the jury, Globus submits this proposed interrogatory.**]

| | |
|---|---|
| 19. '375 Patent - Claim 19 | YES _____ NO _____ |
| 20. '375 Patent - Claim 20 | YES _____ NO _____ |
| 21. '120 Patent – Claim 1 | YES _____ NO _____ |
| 22. '120 Patent – Claim 10 | YES _____ NO _____ |
| 23. '120 Patent – Claim 17 | YES _____ NO _____ |
| 24. '659 Patent – Claim 1 | YES _____ NO _____ |
| 25. '659 Patent – Claim 4 | YES _____ NO _____ |

**Please proceed to Interrogatory 9.**

204224508 v4

## INTERROGATORY NO. 9:

Did Dr. Bianco prove, by a preponderance of the evidence, that Globus competed with Dr. Bianco unfairly by misappropriating the value, time, skill and labor Dr. Bianco spent in developing the idea and product design that he disclosed to Globus?

Answer "YES" or "NO."


Answer:        _____


**If you have answer "YES" to Interrogatory 9, proceed to Interrogatory 10.  If you have answered "NO" to Interrogatory 9, proceed directly to Interrogatory 11.**

_____

76

**INTERROGATORY NO. 10:**

What sum of money has Dr. Bianco proved would fairly and reasonably compensate Dr. Bianco for his damages, if any, that directly resulted from Globus' unfair competition in misappropriating the value, time, skill and labor Dr. Bianco spent in developing the idea and product design that he disclosed to Globus?

Answer:        _____

**Please proceed to Interrogatory No. 11.**

_____

77

**INTERROGATORY NO. 11:**

Did Dr. Bianco prove, by a preponderance of the evidence, that Globus committed fraud against him?

Answer "YES" or "NO."


Answer:          _____


**If you have answer "YES" to Interrogatory 11, proceed to Interrogatory 12.  If you have answered "NO" to Interrogatory 11, proceed directly to Interrogatory 13.**


_____

**<u>INTERROGATORY NO. 12</u>:**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dr. Bianco for his damages, if any, that resulted from Globus' fraud?

Answer: _____.

**Please proceed to Interrogatory 13.**

**Only answer the following question if you answered "NO" to Interrogatory 5.   If you answered "YES" to Interrogatory 5, please proceed directly to Interrogatory 15.**

<u>**INTERROGATORY NO. 13**</u>**:**

Did Dr. Bianco prove, by a preponderance of the evidence, that Globus wrongfully secured a benefit from Dr. Bianco and that benefit was obtained by fraud, duress, or taking of undue advantage?

Answer "YES" or "NO."


Answer:        _____


**If you have answer "YES" to Interrogatory 13, proceed to Interrogatory 14.   If you have answered "NO" to Interrogatory 13, proceed directly to Interrogatory 15.**

_____

**<u>INTERROGATORY NO. 14</u>:**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dr. Bianco for his damages, if any, that resulted from Globus' unjust enrichment?


Answer: _____.


**Please proceed to Interrogatory No. 15.**

**If you have answered "YES" to any of the subparts 1-6 in Interrogatory 1, proceed to Interrogatory 15.  If you have answered "NO" to all of the subparts 1-6 in Interrogatory 1, proceed to the Certification Page.**

<u>**INTERROGATORY NO. 15**</u>**:**

Did Dr. Bianco prove, by a preponderance of the evidence, that Globus misappropriated Dr. Bianco's confidential information?

Answer "YES" or "NO."

Answer:          _____

**If you have answer "YES" to Interrogatory 15, proceed to Interrogatory 16.  If you have answered "NO" to Interrogatory 15, please proceed to the Certification Page.**

————————————————

**<u>INTERROGATORY NO. 16</u>:**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dr. Bianco for his damages, if any, that resulted from Globus' misappropriation of Dr. Bianco's confidential information?

Answer: _____.

**Please proceed to the Certification Page.**

## CERTIFICATION PAGE

I certify that the jury unanimously concurs in every element of the above verdict.

Dated: _____

Foreperson: _____

_____

204224508 v4

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). This document was served on all counsel who have consented to electronic service on this 21st day of October, 2013. Local Rule CV-53(a)(3)(A).

<em>/s/ Charles Everingham IV</em><br>
Charles Everingham IV <em>(Lead Attorney)</em>

204063707

204224508 v4