**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SABATINO BIANCO, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:12-CV-00147-WCB |
| | § | |
| GLOBUS MEDICAL, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

A jury awarded the plaintiff, Sabatino Bianco, M.D., reasonable royalty damages in the amount of $4,295,760 against defendant Globus Medical, Inc., for misappropriating Dr. Bianco's trade secrets. Dr. Bianco has now moved for a permanent injunction barring Globus from making, using, or selling the three products that Dr. Bianco has accused of incorporating his trade secrets (Globus's Caliber, Caliber-L, and Rise products) and all other Globus products that are not more than colorably different from those three products (Dkt. No. 250). In the alternative, Dr. Bianco asks the Court to render judgment setting a running royalty on the future sales of those products. The Court DENIES the motion for a permanent injunction but GRANTS Dr. Bianco's request that the Court consider instead an ongoing royalty on the Caliber, Caliber-L, and Rise products (and products not more than colorably different from those products). The Court agrees with Dr. Bianco that the parties should be given an opportunity to negotiate an ongoing royalty for future sales. Accordingly, the Court will give the parties 30 days from the

date of this order to negotiate an ongoing royalty rate.  If, at the conclusion of that period, the

parties cannot reach agreement, the Court will determine the appropriate royalty rate.

## I.  Permanent Injunction

A permanent injunction is an extraordinary remedy.  Nken v. Holder, 556 U.S. 418, 428

(2009); R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 500 (1941).  A successful plaintiff

is not entitled to injunctive relief as a matter of course, but must make a showing that the

circumstances require the Court to enter an injunction.  Salazar v. Buono, 559 U.S. 700, 714

(2010); Harrisonville v. W.S. Dickey Clay Mfg. Co., 289 U.S. 334, 337-38 (1933).  "An

injunction should issue only where the intervention of a court of equity 'is essential in order

effectually to protect property rights against injuries otherwise irremediable.'"  Weinberger v.

Romero-Barcelo, 456 U.S. 305, 312 (1982), quoting Cavanaugh v. Looney, 248 U.S. 453, 456

(1919).

Courts have developed a four-factor test to determine whether the remedy of an

injunction is warranted in a particular case.  The plaintiff bears the burden of showing: (1) that he

has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages,

are inadequate to compensate for that injury; (3) that, considering the balance of hardships

between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public

interest would not be disserved by a permanent injunction.  eBay Inc. v. MercExchange, L.L.C.,

547 U.S. 388, 390 (2006); i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 861 (Fed. Cir. 2010),

aff'd, 131 S. Ct. 2238 (2011).  In this case, Dr. Bianco has combined his arguments on the first

two factors, which are closely related.  The Court will analyze those two factors together as well.

See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc., 694 F.3d 1312, 1337 (Fed. Cir.

2012) ("[T]he issues of irreparable harm and adequacy of remedies at law are inextricably intertwined."); Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1327 (Fed. Cir. 2008) (treating "the first two factors, irreparable harm and lack of an adequate remedy at law, in connection with each other"); MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556, 569 n.11 (E.D. Va. 2007) ("The irreparable harm inquiry and remedy at law inquiry are essentially two sides of the same coin . . . .").[1]

### A. Irreparable Injury With No Adequate Remedy At Law

Dr. Bianco argues that he has suffered irreparable injury and will continue to suffer such injury if his request for a permanent injunction is denied. He further contends that there is no adequate remedy at law available to him, because a monetary award will not be adequate to compensate him for the ongoing injury he will suffer in the absence of an injunction. The Court concludes that Dr. Bianco has failed to show that, in the absence of an injunction, he has suffered, and is likely to continue suffering, irreparable injury for which there is no adequate remedy at law.

---

[1] Both parties appear to accept that federal law, as expressed in the Supreme Court's eBay decision and its progeny, dictates the procedure to be employed in determining whether an injunction should issue in this case. It is therefore unnecessary for the Court to decide whether the standard for determining whether to grant an injunctive remedy for the state tort of trade secret misappropriation is a question that is governed by state law, rather than federal law, under the principles of Erie R.R. Co. v. Tomkins, 304 U.S. 64 (1938). See 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2943 (2013); see generally DSC Commc'ns Corp. v. Next Level Commc'ns, 107 F.3d 322, 328 (5th Cir. 1997) (applying federal standards for injunctive relief to a state law claim of misappropriation of trade secrets in a case in federal court based on diversity of citizenship). In any event, it appears that the standards for granting permanent injunctions under Texas law are not materially different from those under federal law. See Computek Computer & Office Supplies, Inc. v. Walton, 156 S.W.3d 217, 220 (Tex. App. 2005); F.S. New Prods., Inc. v. Strong Indus., Inc., 129 S.W.3d 606, 631 (Tex. App. 2004); Triantaphyllis v. Gamble, 93 S.W.3d 398, 401-02 (Tex. App. 2002).

The issues of irreparable harm and the adequacy of monetary relief in the absence of an injunction came up earlier in this litigation. In response to Dr. Bianco's motion for a preliminary injunction, Judge Gilstrap ruled that Dr. Bianco "has not demonstrated why monetary damages would not be an adequate remedy in this case." (Dkt. No. 45, at 5). Judge Gilstrap added that Dr. Bianco "is not affiliated with an operating entity and it is clear that Bianco and Globus are not competitors in the marketplace. Any harm suffered to Bianco and caused by Globus' continued exploitation of the '375 patent during the pendency of this case can be remedied by an award of monetary damages" (Dkt. No. 45, at 5). See also id. at 6 ("The irreparable harm prong does not weigh in Bianco's favor because monetary damages are an adequate remedy due to the nature of the relationship between Bianco and Globus."). Although Judge Gilstrap explained that he was not deciding whether a permanent injunction would be appropriate if Dr. Bianco prevailed at trial, his analysis of the question whether there is an adequate remedy at law is instructive, and it supports this Court's conclusion that monetary relief is sufficient to compensate Dr. Bianco for any future injuries caused by Globus's misappropriation.

Most of the authorities on which the parties rely are patent cases. This is not a patent case, and although some of the principles applied in patent injunction cases are applicable in the trade secret context, some are not. One important difference between the two is that the patent right is explicitly defined as a right of the patent owner to exclude others from practicing the invention protected by the patent. 35 U.S.C. § 154(a)(1) ("Every patent shall contain . . . a grant to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the invention . . . ."); Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1149 (Fed. Cir. 2011) (courts should not "entirely ignore the fundamental nature of patents as

property rights granting the owner the right to exclude"); <u>Acumed LLC v. Stryker Corp.</u>, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (in view of the right to exclude, "infringement may cause a patentee irreparable harm not remediable by a reasonable royalty"). Although the Supreme Court in <u>eBay</u> made it clear that the statutory right to exclude does not justify a general rule favoring injunctions in patent cases, 547 U.S. at 392, the right to exclude is frequently invoked as being a significant factor supporting the grant of injunctive relief in particular cases. The Texas common law of trade secret protection provides for injunctions to issue in appropriate cases, but the core right in the case of trade secrets is not the right to exclude others from practicing the trade secret. For example, the owner of a trade secret, unlike a patentee, has no right to bar a party from practicing the technology that is the subject of the trade secret, as long as the party has not obtained access to that technology by misappropriating the trade secret. Thus, the core right that attaches to a trade secret is the right against misappropriation, not the right to exclude a user of the technology.[2]

In patent and well as nonpatent cases, a district court's decision to grant or deny an injunction is discretionary and depends on the facts of each case. <u>See</u> <u>Windsurfing Int'l, Inc. v. AMF, Inc.</u>, 782 F.2d 995, 1002 (Fed. Cir. 1986); <u>Bailey v. Patterson</u>, 323 F.2d 201, 209 (5th Cir. 1963); <u>Hynix Semiconductor Inc. v. Rambus Inc.</u>, 609 F. Supp. 2d 951, 966 (N.D. Cal. 2009) ("a court must structure injunctive relief based on each case's granular facts"). Accordingly, the specific facts of this case are highly significant to the Court's decision on the injunction issue.

---

[2] Texas has recently enacted statutory protections for trade secrets. <u>See</u> Tex. Civil Prac. & Rem. Code § 134A. The new statute provides for the issuance of injunctions. <u>See</u> <u>id.</u> § 134A.003 ("Actual or threatened misappropriation may be enjoined.). The statute, however, does not apply to cases in which the misappropriation of a trade secret occurred before the effective date of the Act, September 1, 2013. In any event, the statutory provisions largely codify prior Texas law.

The Court begins its inquiry into those case-specific factors with the jury's verdict. The jury found that Globus misappropriated Dr. Bianco's trade secrets. That issue is settled for purposes of this proceeding. The jury was instructed that it should award Dr. Bianco disgorgement of profits if it regarded that remedy as fair and equitable, but that otherwise the jury should use the reasonable royalty method of calculating damages. The jury was further told that it should determine "what Dr. Bianco would have gained from his trade secrets if Globus had not misappropriated them." Court's Final Jury Instructions (Dkt. No. 226, at 6). Significantly the jury rejected Dr. Bianco's request for disgorgement of profits. Instead, it determined that a proper remedy for past misappropriation of his trade secrets is a reasonable royalty. The jury selected five percent of the past net sales of the Caliber, Caliber-L, and Rise products as the appropriate royalty. The jury's determination that disgorgement would not be fair and equitable, and that a five percent royalty was an appropriate measure of "what Dr. Bianco would have gained from his trade secrets" in the absence of Globus's misappropriation serves as the starting point for the Court's determination of whether to exercise its equitable authority in this case.

The verdict indicates that in the jury's view the award of a reasonable royalty is sufficient to compensate Dr. Bianco for the injury he has suffered in the past. See i4i Ltd. P'ship, 598 F.3d at 861-62. It also provides a sound basis from which to conclude that a continuing royalty would have the same effect on any continuing injury into the future.

Of particular significance in this regard is the evidence of the arrangement that Dr. Bianco sought to enter into with Globus in 2007. The evidence showed that Dr. Bianco offered Globus the right to use his trade secrets with the expectation that if Globus used his trade secrets

it would compensate him appropriately. Dr. Bianco's position at trial was that he sought and expected to obtain monetary compensation from Globus in exchange for the use of his ideas. That expectation was not conditioned on any temporal limitation on Globus's use of the trade secrets. Thus, the jury's verdict as to the proper compensation for past injury, and the evidence on which it was based, strongly support Globus's argument that monetary relief in the form of an ongoing royalty will provide full compensation for any future injury attributable to Globus's misappropriation. See High Tech Med. Instrumentation v. New Image Indus., Inc., 49 F.3d 1551, 1557 (Fed. Cir. 1995) (willingness of patentee to enter into a licensing agreement is evidence that monetary relief is adequate to compensate for future infringement); MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556.582-83 (E.D. Va. 2007) (denying injunction because patentee's willingness to license its patent indicates patentee was not exercising its right to exclude to help it practice the patent or further develop the patented technology).

Dr. Bianco contends that Globus's misappropriation of his trade secrets led to the creation and success of the Caliber line of products, and that "Globus's misappropriation of Dr. Bianco's ideas, and subsequent patenting, deprives Dr. Bianco from working with other companies to bring products incorporating his ideas to market." (Dkt. No. 250, at 3). According to Dr. Bianco, Globus's continuing activities with respect to the Caliber line of products will result in irreparable harm to him "because Globus can use the patents it has obtained to prevent Dr. Bianco from taking his idea to others and because Globus has already introduced Caliber into the market and established it as a market leader" (Dkt. No. 250, at 3).

To the extent that Dr. Bianco contends that he is being deprived of the opportunity to offer other companies the ideas encompassed within his 2007 disclosure, the argument is unpersuasive. As noted above, if Globus had agreed to use Dr. Bianco's ideas in connection with its work on the Caliber line of products, Dr. Bianco and Globus would likely have agreed to some form of monetary compensation for Dr. Bianco; the jury's verdict effectively sets the appropriate amount of that compensation for the period up to the time of trial. Presumably, Globus would then have proceeded just as it actually did, by designing and engineering the Caliber line of products and obtaining patent protection for its inventions. This Court has already ruled that Dr. Bianco is not entitled on the facts of this case to be named a co-inventor of the three patents related to the Caliber line of products. Therefore, Globus would have obtained those patents in the names of its own employees, even if it had not misappropriated Dr. Bianco's trade secrets. Once the Caliber products were on the market, other parties either would have been free to copy those devices, to the extent they were not covered by the patents and in the public domain, or would have been barred from copying them by the patent protection that Globus obtained for them.[3] Either way, third parties would have had no incentive to enter into

---

[3]  Dr. Bianco argues that "there are many other medical device companies that are interested in developing expandable inter-vertebral implants," and that but for Globus's actions Dr. Bianco could "take his idea to one or more of those companies, and they will be able to develop alternative expandable devices" (Dkt. No. 250, at 7). Here again, however, the difference between patents and trade secrets is important. To the extent that the Caliber products embody the essence of Dr. Bianco's 2007 disclosure, other companies are free to copy those products that are in the public domain without needing Dr. Bianco's permission. That release of ideas into the public domain would have occurred had Globus and Dr. Bianco entered into a licensing agreement, and therefore is compensable with money damages. The only barriers to other companies' participation in the market would be Globus's patents. Dr. Bianco has not sought to enjoin Globus from enforcing those patents, a remedy to which he would not likely be entitled in any event. That barrier would therefore remain in place even if Globus were enjoined from selling its Caliber line of products.

licensing agreements with Dr. Bianco from which he could profit. In short, if Globus had obtained a license for Dr. Bianco's ideas, as Dr. Bianco hoped it would, he would not be in any better position than he is now with respect to his ability to shop his 2007 trade secrets to other medical device manufacturers.

To the extent that Dr. Bianco is arguing that Globus's conduct deprives him of the ability to work with other companies with respect to ideas other than his 2007 trade secrets, the argument is unconvincing. Nothing about Globus's conduct prevents Dr. Bianco from "working with other companies to bring products incorporating his ideas to market." (Dkt. No. 250, at 3). In fact, the evidence shows that, even during the pendency of this lawsuit, Dr. Bianco has worked with Biomet, Inc., another medical device manufacturer, and that he has offered ideas for spinal surgical devices to that company. The evidence, moreover, does not suggest that in his dealings with Biomet Dr. Bianco has sought anything other than monetary compensation for his ideas. Accordingly, the evidence at trial supports the conclusion that a monetary award in the form of a reasonable royalty would be an appropriate substitute for what Dr. Bianco sought from Globus, and what he believes Globus denied him by misappropriating his trade secrets.

An important consideration bearing on whether an injunction should issue in this case is the fact that Dr. Bianco and Globus are not competitors in the medical device market. Instead, the relationship between Dr. Bianco, Globus, and other medical device manufacturers is typical of inventors in other fields who do not themselves commercialize their inventions, but obtain compensation for those inventions by selling or licensing them to others. Like most such inventors, Dr. Bianco has never been in a position to produce medical devices himself, and the

only way available to him to benefit from his trade secrets was to sell or license them to an entity such as Globus, which would design, manufacture, and market an operative device.

Dr. Bianco argues that he competes with Globus in developing ideas for such devices, but even assuming that is true, that form of competition does not affect the analysis of irreparable harm. Because Dr. Bianco does not produce and sell products, he will not lose profits, he will not lose market share to a competitor, and he is not subject to the loss of brand recognition or good will in the market as a result of the misappropriation of his trade secrets. Injuries of that sort are the type that typically need to be shown to demonstrate the type of irreparable injury that gives rise to the right to injunctive relief in patent infringement cases. See i4i Ltd. P'ship, 598 F.3d at 862; z4 Techs., Inc. v. Microsoft Corp., 434 F. Supp. 2d 437, 440 (E.D. Tex. 2006).

It is true that the Supreme Court in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393 (2006), rejected any bright-line rule that a noncompeting plaintiff could never obtain injunctive relief in a patent case. However, nothing in the Court's opinion indicate that the patent owner's status as a competitor or a nonpracticing entity should not be considered when a court decides whether to issue an injunction. In fact, in his concurring opinion Justice Kennedy suggested that the analysis of the four-factor test for permanent injunctions would be different for parties whose business is based on licensing their patents rather than practicing them. Id. at 396 (Kennedy, J., concurring).

Since the decision in eBay, numerous courts have been called on to decide whether to issue injunctions in cases involving patentees who compete with the alleged infringers and patentees who do not compete with the infringers. Those courts have held that the plaintiff's status as a competitor or noncompetitor of the defendant weighs heavily in the court's

determination whether to grant injunctive relief. In fact, with only a few exceptions, courts have denied injunctive relief in cases in which the patentee does not practice the patent and compete with the alleged infringer.

The reasoning of this line of cases is straightforward. Where the inventor's expectation is that the compensation for his invention will come in the form of some kind of royalty from the manufacturer to whom he licenses the invention, it is sensible to conclude that monetary relief provides full compensation for the inventor and is a proper substitute for the royalty payments the inventor expected to receive.

The leading case in this line is the Federal Circuit's decision in <u>ActiveVideo Networks, Inc. v. Verizon Communications, Inc.</u>, 694 F.3d 1312 (Fed. Cir. 2012). In that case, the district court granted an injunction to the patentee, ActiveVideo, against the accused infringer, Verizon, which incorporated the infringing features in its FIOS-TV product. The Federal Circuit reversed the injunction, holding that a monetary award would be sufficient to compensate ActiveVideo for its injury. The appeals court began the critical portion of its analysis by pointing out that ActiveVideo and Verizon were not competitors: ActiveVideo sold hardware and software to providers of video services, while Verizon sold video servicers to end users. Although ActiveVideo's customer, Cablevision, competed with Verizon and was at risk of losing end-use customers to Verizon because of Verizon's infringement, the court found that the harm to ActiveVideo consisted of the infringing sales made by Verizon. The number of those sales was easily calculable, and ActiveVideo could be fully compensated for the ongoing infringement by Verizon's payment of a royalty for each end-use customer who used ActiveVideo's invention. 694 F.3d at 1338.

The court in <u>ActiveVideo</u> distinguished the Federal Circuit's decision in <u>Robert Bosch,</u> <u>LLC v. Pylon Manufacturing Corp.</u>, 659 F.3d 1142, 1153-54 (Fed. Cir. 2011), on the ground that in that case the parties were direct competitors, the patentee was at risk of losing market share, and there was uncertainty about whether the infringer could satisfy a monetary judgment. The <u>ActiveVideo</u> court explained that it was not holding "that there can be no irreparable harm absent direct competition," 694 F.3d at 1338, but it made clear that the absence of competition—and the resulting absence of any risk of loss of market share, brand recognition, or other intangible benefits—was an important factor in the court's analysis.

Numerous district court cases have followed the same analysis, ruling that the absence of competition between the patentee and the accused infringer is a significant factor in favor of finding an absence of irreparable harm and the adequacy of monetary damages. <u>See, e.g.</u>, <u>Cordance Corp. v. Amazon.com, Inc.</u>, 730 F. Supp. 2d 333, 339-41 (D. Del. 2010) (injunction denied; infringer did not directly compete with patentee, nor was it responsible for patentee's financial difficulties); <u>Humanscale Corp. v. CompX Int'l Inc.</u>, 2010 WL 1779963, at *3-*4 (E.D. Va. Apr. 29, 2010) (injunction denied because patentee failed to show that it competed directly with accused infringer or how infringer's sales injured patentee); <u>Ricoh Co. v. Quanta Computer,</u> <u>Inc.</u>, 2010 WL 1607908 (W.D. Wis. Apr. 19, 2010) (injunction denied where plaintiff did not practice its patent and was not competing with the defendants for the same customers); <u>Amgen,</u> <u>Inc. v. F. Hoffmann La-Roche Ltd.</u>, 581 F. Supp. 2d 160, 210 (D. Mass. 2008) (observing that <u>eBay</u> "has allowed courts to decline requests for injunctive relief where the plaintiff" is a nonpracticing entity), <u>aff'd in part and vacated in part</u>, 580 F.3d 1340 (Fed. Cir. 2009); <u>Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.</u>, 579 F. Supp. 2d 554, 558 (D.

Del. 2008) ("Courts awarding permanent injunctions typically do so under circumstances where plaintiff practices its invention and is a direct market competitor."). <u>See generally</u> George M. Newcombe et al., <u>Prospective Relief for Patent Infringement in a Post-eBay World</u>, 4 N.Y.U. J.L. & Bus. 549 (2008).

Cases from this district are to the same effect. While acknowledging the Supreme Court's disapproval in <u>eBay</u> of a rigid rule that a nonpracticing entity can never obtain the remedy of an injunction, decisions from this district have stated that the question whether a plaintiff is a direct competitor of the defendant in a patent infringement case "weighs heavily" in the analysis. <u>Synqor, Inc. v. Artesyn Techs., Inc.</u>, 2011 WL 238645, at *3 (E.D. Tex. Jan 24, 2011); <u>Visto Corp. v. Seven Networks, Inc.</u>, 2006 WL 3741891, at *4 (E.D. Tex. Dec. 19, 2006). And where the patentee and the accused infringers are not competitors, the courts in this district have generally refused requests for injunctive relief. <u>See</u> <u>VirnetX Inc. v. Apple, Inc.</u>, 925 F. Supp. 2d 816, 846 (E.D. Tex. 2013) (denying permanent injunction to a noncompetitor); <u>Fractus, S.A. v. Samsung Elecs. Co.</u>, 876 F. Supp. 2d 802, 854 (E.D. Tex. 2012) (in the absence of direct competition between Fractus and Samsung, "Samsung's use of Fractus's technology does not inhibit Fractus from selling or licensing its products in the market, and Fractus's damages can be calculated with reasonable certainty"); <u>LaserDynamics, Inc. v. Quanta Computer, Inc.</u>, 2010 WL 2574059, at *2 (E.D. Tex. June 22, 2010) ("Because LaserDynamics is not competing with QCI, it is more difficult for LaserDynamics to argue that it will be irreparably harmed without an injunction. This factor weighs heavily in the Court's analysis."); <u>Paice LLC v. Toyota Motor Corp.</u>, 2006 WL 2385139, at *5 (E.D. Tex. Aug. 16, 2006) ("[B]ecause Plaintiff does not compete for market share with the accused vehicles, concerns regarding loss of brand name

recognition and market share . . . are not implicated."), aff'd in part, vacated in part, and remanded, 504 F.3d 1293 (Fed. Cir. 2007).

Dr. Bianco relies principally on a single case from this district, Commonwealth Scientific & Industrial Research Organization v. Buffalo Technology Inc., 492 F. Supp. 2d 600 (E.D. Tex. 2007) ("CSIRO"), in support of his contention that he was not required to practice his invention in order to show that an award of damages would not be sufficient to remedy the injury he will suffer from Globus's continuing sales of the Caliber line of products. The plaintiff in that case, CSIRO, is the Australian government's research organization that operates its own laboratories and is active in a number of research fields. Judge Davis noted that CSIRO uses revenue from its licensing operations to fund its research programs, that it competes with other research groups worldwide. He further found that litigation challenging CSIRO's patents, and delays in receiving compensation for infringement, result in delay and injury to its research projects as well as to its reputation. Id. at 604. Those unique circumstances, Judge Davis concluded, justified a finding that in the absence of an injunction CSIRO would suffer irreparable harm that would not be adequately remedied by an award of money. Id. at 605-06.

Recitation of the facts of CSIRO makes clear how different this case is from that one. The evidence at trial showed that although Dr. Bianco makes suggestions to medical device manufacturers from time to time, he is not engaged in the full-time business of research and development of surgical devices, and certainly not one that requires substantial ongoing funding to maintain. Although Dr. Bianco notes that he has participated as a member of surgeon design teams in the past, there was no evidence at trial that Dr. Bianco has ever sold or licensed one of his inventions to a medical device manufacturer. Nor was there any evidence that the absence of

an injunction in this case would cause reputational injury to Dr. Bianco, as was found to be true in CSIRO.[4]

A post-CSIRO decision by Judge Davis is instructive in demonstrating the limits of the ruling in the CSIRO case. In Soverain Software LLC v. Newegg Inc., 836 F. Supp. 2d 462 (E.D. Tex. 2010), the plaintiff patentee sought a permanent injunction, making arguments similar to those made by the plaintiff in CSIRO. Judge Davis distinguished his earlier opinion in CSIRO on various grounds, including that CSIRO's harm was "not merely financial," that the plaintiff in Soverain did not substantially compete with the defendant, and that the infringement in CSIRO "related to the essence of the technology" represented by CSIRO's patent. Id. at 481-82. This case is much closer to Soverain than it is to CSIRO. The harm here is merely financial; Dr. Bianco does not directly compete with Globus; although the jury found that Dr. Bianco's idea was misappropriated and used in connection with the Caliber line of products, the structure of the Caliber products and patents varies significantly from the structures depicted in Dr. Bianco's 2007 drawings; and substantial value was added by Globus to the products that were ultimately commercialized. Dr. Bianco seeks to bring himself within the rationale of the CSIRO case by

---

[4] Dr. Bianco cites two other cases in support of his contention that an injunction can issue even if the patentee does not compete with the accused infringer, BarTex Research, LLC v. FedEx Corp., 611 F. Supp. 2d 647 (E.D. Tex. 2009), and Eon Corp. IP Holdings, LLC v. Skytel Corp., 2009 WL 8590963 (E.D. Tex. Apr. 29, 2009). But injunctions were not entered in those cases. The court in each case simply made the observation, consistent with eBay, that an injunction may be entered even when the parties are not competitors. In a third case on which Dr. Bianco relies, Acticon Technologies v. Heisei Electronics Co., 2008 WL 356872 (S.D.N.Y. Feb. 5, 2008), the court granted an injunction against a defaulting defendant, explaining that because of the default, damages were difficult to ascertain and there was serious doubt whether the plaintiff would be able to collect any monetary award. The point is that even though courts frequently (and appropriately) acknowledge that there is no hard and fast rule against entering injunctions in cases in which the patentee does not compete with the accused infringer, such injunctions are seldom granted.

arguing that Globus's conduct has "prevented him from completing additional research, accelerating existing projects, or beginning new projects based on his 2007 design for an expandable inter-body spacer" (Dkt. No. 250, at 5). The evidence at trial, however, does not support his claim that Globus's misappropriation of his trade secrets interfered with other research or projects on which he was working or which he would have initiated.[5]

Dr. Bianco relies on several trade secret cases that have held that irreparable injury is presumed when a trade secret has been misappropriated. See, e.g., Verizon Commc'ns Inc. v. Pizzirani, 462 F. Supp. 2d 648, 658 (E.D. Pa. 2006); Lumex, Inc. v. Highsmith, 919 F. Supp. 624, 628 (E.D.N.Y. 1996); PepsiCo, Inc. v. Redmond, 1996 WL 3965, at *30 (N.D. Ill. Jan 2, 1996). It is questionable, however, whether those cases have survived eBay and the Supreme Court's subsequent decision in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008). See Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118-19 (2d Cir. 2009) (holding that no presumption of irreparable harm arises in trade secret misappropriation cases where defendant uses trade secret without disseminating it and the injury is in the form of lost income from sales and is therefore compensable in damages); see also Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1149 (Fed. Cir. 2011) (holding that for patent cases, "eBay jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief"); Perfect 10, Inc. v. Google, Inc., 653 F.3d 976, 981 (9th Cir. 2011) (holding that for copyright cases, a presumption of irreparable harm "'is clearly irreconcilable with the reasoning' of the Court's decision in eBay and has therefore been 'effectively overruled'");

---

[5] In two other post-CSIRO cases, Judge Davis denied injunctive relief after finding that the patentee did not compete with the accused infringer. See VirnetX Inc. v. Apple Inc., 925 F. Supp. 2d 816, 844-46 (E.D. Tex. 2013); Fractus, S.A. v. Samsung Elecs. Co., 876 F. Supp. 2d 802, 853-54 (E.D. Tex. 2012). This case is much closer to those cases than it is to CSIRO.

Salinger v. Colting, 607 F.3d 68, 76-78 (2d Cir. 2010) (same); N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1227-28 (11th Cir. 2008) (eBay "calls into question whether courts may presume irreparable harm merely because a plaintiff in an intellectual property case has demonstrated a likelihood of success on the merits"; holding that eBay is applicable to a trademark infringement case arising under the Lanham Act).

Moreover, the trade secret cases cited by Dr. Bianco are distinguishable in that each was an action between direct competitors or involved a party's former employee who went to work for the party's direct competitor. As noted, Dr. Bianco is not a direct competitor of Globus's in the medical device market and therefore is not at risk of suffering ongoing competitive disadvantage as a result of the misappropriation of his trade secret. Accordingly, even if this Court were to conclude that a presumption of irreparable harm applies in the context of a trade secret violation, the Court would find that the presumption was overcome in this case. In short, because the evidence in this case shows that Dr. Bianco has sought monetary compensation for his invention from the beginning and is in a position to recover such compensation in the form of reasonable royalty payments on the Caliber line of products, the Court is satisfied that Dr. Bianco will not suffer irreparable injury if injunctive relief is denied.

To be sure, an injunction could prove to be of benefit to Dr. Bianco in one respect: it could give him leverage that could allow him to enhance his negotiating stance. But that is not a permissible reason for a court to issue an injunction. See eBay, 547 U.S. at 396 (Kennedy, J., concurring) (an injunction is not meant to be employed "as a bargaining tool to charge exorbitant fees" or to allow for "undue leverage in negotiations"); Foster v. Am. Mach. & Foundry Co., 492 F.2d 1317, 1324 (2d Cir. 1974) (an injunction "is not intended as a club to be wielded by a

patentee to enhance his negotiating stance"); <u>Hynix Semiconductor Inc. v. Rambus Inc.</u>, 609 F. Supp. 2d 951, 983 n.29 (N.D. Cal. 2009)  (denying injunction where patentee's "motivation in seeking an injunction is less about preventing irreparable harm and more about extracting punishment or leverage in negotiating with" infringer); <u>MercExchange</u>, 500 F. Supp. 2d at 582 ("Utilization of a ruling in equity as a bargaining chip suggests both that such party never deserved a ruling in equity and that money is all that such party truly seeks, rendering monetary damages an adequate remedy in the first instance."); <u>Ricoh Co. v. Quanta Computer, Inc.</u>, 2010 WL 1607908, at *4 (W.D. Wis. Apr. 19, 2010) (denying injunction where it "would [not] serve any purpose other than to increase [patentee's] leverage in negotiations for a higher licensing fee").  The loss of the opportunity to exercise this kind of leverage (sometimes referred to unflatteringly as "hold-up") is not an injury that can be considered irreparable for purposes of determining whether an injunction should issue.  <u>See</u> Fed. Trade Comm'n, <u>The Evolving IP Marketplace</u> 26 (2011) ("An injunction's ability to cause patent hold-up can support withholding injunctive relief in some situations.").

After careful consideration of the specific facts of this case, the Court concludes that Dr. Bianco has failed to satisfy his burden of showing that he has suffered irreparable injury, and that he has failed to show that, in the absence of a permanent injunction, he will continue to suffer irreparable injury that cannot be fully compensated for by monetary relief.

### B.  Balance of Hardships

The next factor that the Court must consider in assessing the request for injunctive relief is the respective hardships that the grant or denial of an injunction would visit on the respective parties.  The Court's determination that monetary relief is adequate to compensate Dr. Bianco for

any future injury he is likely to suffer largely decides that issue, as it indicates that denial of an injunction would not work any undue hardship on him with respect to his entitlement to meaningful and complete relief on his claim. See ActiveVideo, 694 F.3d at 1341 ("It is certainly true that ActiveVideo would suffer substantial hardship if it was not compensated for Verizon's infringement. But there is no evidence that an injunction is necessary to avoid hardship to ActiveVideo."); XpertUniverse v. Cisco Sys., Inc., 2013 WL 6118447, at *13 (D. Del. Nov. 20, 2013) ("As explained in the context of [the patentee's] claim of irreparable injury, [the patentee] has not shown that it would substantially benefit from an injunction, nor that it would suffer additional harm without one."); Soverain Software LLC v. Newegg Inc., 836 F. Supp. 2d 462, 482 (E.D. Tex. 2010) ("Because Soverain has not shown irreparable harm in the absence of a permanent injunction, any harm Soverain might suffer can be adequately remedied through the recovery of monetary damages . . . ."). Beyond that, Dr. Bianco has not pointed to any other considerations particular to this case that would indicate that denial of an injunction would result in a hardship to him.

On the other hand, an injunction would have substantial adverse effects on Globus. The evidence at trial showed that the Caliber line of products makes up a substantial portion of Globus's business. In his testimony at trial, Dr. Bianco's damages expert called Caliber a "key differentiating product for Globus that's letting them grow." An injunction against the sale of those products would have an immediate and severely disruptive effect on Globus. Moreover, Globus has ongoing contractual relationships with numerous surgeons and hospitals to supply expandable implants; those arrangements would be extinguished by an injunction against the continuing sales of the Caliber products. See CardSoft, Inc. v. VeriFone Holdings, Inc., 2013

WL 5862762, at *1 (E.D. Tex. Oct. 30, 2013) ("The Court finds that the cost and burden associated with switching Defendants' customers to non-infringing systems weighs against granting a permanent injunction."); VirnetX Inc. v. Apple Inc., 925 F. Supp. 2d 816, 846-47 (E.D. Tex. 2013) (Apple "bears a considerable burden to comply with the proposed injunction . . . . [A]n injunction would not only harm Apple, but also its customers and other third parties."); Fractus, S.A. v. Samsung Elecs. Co., 876 F. Supp. 2d 802, 854 (E.D. Tex. 2012) ("Fractus's requested injunction will severely hamper Samsung's cell phone business, but most importantly, it will significantly disrupt related third-party businesses such as Samsung's suppliers and customers."); LaserDynamics, Inc. v. Quanta Computer, Inc., 2010 WL 2574059, at *3 (E.D. Tex. June 22, 2010) ("[A]n injunction would not only interrupt [defendant's] business but also that of related businesses, including suppliers and customers of [the defendant].").

Although hardships to customers and patients are not the focus of the balance of hardships inquiry, see Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1330 (Fed. Cir. 2008), the impact on customers and patients bears on the related factor of the impact that an injunction would have on the public interest, discussed below. For present purposes, even setting aside for the moment the effects that an injunction would have on customers and patients, the Court is persuaded that the balance of hardships weighs substantially in favor of Globus.[6]

---

[6] Quoting from the Federal Circuit's decision in Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986), Dr. Bianco argues that "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." Taken to its logical limits, that proposition would effectively preempt consideration of the "balance of hardships" factor in any case in which infringement (or misappropriation) has been found. Recognizing that point, the Federal Circuit has qualified that broad language from Windsurfing, stating that the quoted

### C.  Public interest

The last factor that the Court must consider in determining whether to issue a permanent injunction is the effect that such an injunction would have on the public interest.  The Court determines that granting an injunction in this case would have an adverse effect on the public interest and that the public-interest factor therefore cuts against issuance of an injunction.

In his order denying a preliminary injunction earlier in this litigation, Judge Gilstrap addressed the public interest factor and found that it cut against granting injunctive relief.  He stated:  "While the Court is mindful of the strong public interest served by protecting trade secrets and intellectual property rights, the Court concludes that this factor does not weigh in Bianco's favor.  The public's interest is better served by not depriving it of this medical advance, especially where money damages can fairly compensate Bianco if he prevails on his underlying claims."  (Dkt. No. 45, at 6).  The Court finds this analysis persuasive.

There is a strong public interest in vindicating the rights of owners of intellectual property.  See i4i Ltd. P'ship, 598 F.3d at 863; Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1547 (Fed Cir. 1995) (en banc).  However, the vindication of those rights can be achieved without the

---

language "does not overcome the equities of a case.  Nor can Windsurfing be applied mechanically."  Standard Havens Prods., Inc. v. Gemcor Indus., Inc., 897 F.2d 511, 515 (Fed. Cir. 1990) ; see Hynix Semiconductor Inc. v. Rambus Inc., 609 F. Supp. 2d 951, 970 (N.D. Cal. 2009) (To ignore the harm to the infringer because "it cannot be heard to complain" runs contrary to eBay's mandate to "consider[] the balance of hardships between the plaintiff and defendant.") (citation omitted).  The language from Windsurfing has come to stand for the more modest and unsurprising proposition that a party "should not be permitted to prevail on a theory that 'successful exploitation of infringing technology shields [that] party from injunctive relief,'" Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 704 (Fed. Cir. 2008), and thus that successful exploitation of an infringing product does not itself justify freeing the infringer from the burden of an injunction.  See i4i Ltd. P'ship, 598 F.3d at 863 ("[N]either commercial success, nor sunk development costs, shield an infringer from injunctive relief.  [The defendant] is not entitled to continue infringing simply because it successfully exploited its infringement.") (citations omitted).

need for an injunction if, as in this case, an award of damages can provide full relief to the property owner.  On the other side of the ledger are the negative effects that an injunction would have on the public,  In this case, the evidence shows that there are significant public health concerns that would be raised by granting an injunction.

Globus has offered evidence that Caliber is the leading product in the expandable-spacer market, and Dr. Bianco's evidence at trial supports that assertion.  Dr. Bianco testified that he expected in the next ten years that "expandable fusion device[s] are going to significantly increase the market share in the spinal implant arena," but that "at the present time only Globus's Caliber is an effective device in this field."  Dr. Bianco's infringement expert similarly testified that other companies had tried to make expandable interbody spacers, but that Globus was the only company that was able to "make it work to then commercialize it and sell a bunch of them."

With its response brief, Globus offered five physician declarations, in which the surgeons each stated that the Caliber line of products have significant advantages over other interbody implants (static and expandable), because they are both expandable and robust.  In addition, according to the surgeons, the Caliber line of devices can be used during minimally invasive procedures, which lessen the trauma to patients and shorten recovery times.  The surgeons each stated that Caliber, Caliber-L, and Rise are the most effective and reliable minimally invasive implants in the marketplace, and they each stated that it would be extremely disruptive to their practices and harmful to their patients if the Caliber line of products were removed from the market.  Dr. Bianco has not contradicted any of that evidence.

Even before eBay, the Federal Circuit recognized that the effect of an injunction on public health is an important factor to be weighed in determining whether to enjoin continuing

patent infringement. See Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1458 (Fed. Cir. 1988) (sale of cancer and hepatitis test kits not enjoined for public health reasons); Datascope Corp. v. Kontron, Inc., 786 F.2d 398, 401 (Fed. Cir. 1986) (injunction denied because evidence showed that some physicians preferred defendant's intra-aortic balloon catheters); Roche Prods., Inc. v. Bolar Pharm. Co,, 733 F.2d 858, 865-66 (Fed. Cir. 1984) (case remanded to consider claims that requested injunctive relief would have a "catastrophic" effect on American public health system); Cordis Corp. v. Boston Sci. Corp., 99 F. App'x 928, 935-36 (Fed. Cir. 2004) (public would be harmed by an injunction because some doctors prefer infringing product over patentee's product, and a "strong public interest supports a broad choice of drug-eluting stents").

Other courts as well have recognized that the public interest factor weighs heavily when an injunction would have a potentially adverse effect on public health. See Conceptus, Inc. v. Hologic, Inc., 2012 WL 44064, at *3 (N.D. Cal. Jan. 9, 2012) ("Enjoining the sale of [defendant's product] would leave only one product for transcervical hysteroscopic sterilization. Public health has benefitted, and will continue to benefit, from having a choice of products for transcervical hysteroscopic sterilization. This is especially important because the products are different. Removing [the product] from the market would have eliminated an important alternative for patients."); Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 2009 WL 920300, at *9 (D. Ariz. Mar. 31, 2009) ("Placing Gore's infringing [vascular surgery] products out of reach of the surgeons who rely on them would only work to deny many sick patients a full range of clinically effective and potentially life saving treatments."); Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 2008 WL 4647384, at *11 (N.D. Cal. Oct. 20, 2008) (denying injunction in light of evidence that defendant's stent was favored by cardiologists); Novo

23

Nordisk A/S v. Pfizer Inc., 2006 WL 3714312, at *6-7 (S.D.N.Y. Dec. 14, 2006) (denying injunction based on "strong public interest" in not removing inhalable insulin from market); ICU Med. Inc. v. Alaris Med. Sys., Inc., 2004 WL 1874992, at *26 (C.D. Cal. July 30, 2004) ("Placing the public health in jeopardy, by removing potentially life-saving medical devices like the SmartSite valve [a valve used in delivering fluids to a patient through intravenous injection] from the marketplace, is a legitimate factor supporting denial of a preliminary injunction.); Neuromedical Sys., Inc. v. Neopath, Inc., 1998 WL 264845, at *14-16 (S.D.N.Y. May 26, 1998) (refusing injunction against tests for early detection of cervical cancer); Scripps Clinic & Research Found. v. Genentech, Inc., 666 F. Supp. 1379, 1401 (N.D. Cal. 1987), aff'd in part, rev'd in part, and vacated in part, 927 F.2d 1565 (Fed. Cir. 1991) (refusing preliminary injunction that would bar sale of a blood clotting protein having potentially important advantages in the treatment of hemophiliacs).

In light of the clear evidence—both from Globus and from Dr. Bianco's trial witnesses— that the Caliber products are superior to any other interbody implants available on the market at present, the Court concludes that the public interest would not be served by removing those products from the market. To be sure, the products at issue in this case are not life-saving, like the products and drugs at issue in some of the cases cited above. Nonetheless, the products are used in a type of surgery that is important to the large number of patients who have to undergo spinal implant procedures, and the evidence establishes that it is important for surgeons to have the Caliber products available to them as an option in performing such surgeries. Accordingly, it is the Court's judgment that the public interest factor weighs significantly in favor of denying injunctive relief in this case.

To sum up the conclusions reached in the three preceding sections of this opinion, each of the factors in the four-factor test for permanent injunctions favors denial of Dr. Bianco's motion for an injunction. Dr. Bianco's motion for a permanent injunction is therefore denied.

## II. Ongoing Royalties

Dr. Bianco has requested that the Court direct the parties to attempt to negotiate an ongoing royalty rate for the future use of Dr. Bianco's trade secrets in connection with the Caliber, Caliber-L, and Rise products. That procedure has been approved for patent cases in which the future royalties have not been adjudicated at trial. See Paice v. Toyota Motor Corp., 504 F.3d 1293, 1313-16 (Fed. Cir. 2007); see also Telecordia Techs., Inc. v. Cisco Sys., Inc., 612 F.3d 1365, 1378-79 (Fed. Cir. 2010). The Court agrees with Dr. Bianco that the Paice procedure is the appropriate course to follow in this case. The Court rejects Globus's arguments that Dr. Bianco is not eligible for ongoing royalties because he failed to prove the right to such royalties at trial. The Court made clear during the trial proceedings that if Dr. Bianco prevailed on his trade secret claim, he would be permitted to seek prospective relief, either in the form of an injunction or in the form of future damages based on the jury's verdict. The Court adheres to that position and directs the parties to engage in good-faith negotiation directed at reaching an agreement as to the rate for ongoing royalties in the event that the jury's verdict as to past royalties is sustained.

The parties will be given 30 days to attempt to come up with an agreed-upon royalty rate. If, at that time, the parties have made progress toward agreement, they may ask the Court for additional time to reach agreement if both parties agree that the additional time would likely be productive. Of course, any agreement that the parties may reach as to the royalty rate will not

bar either party from challenging any other aspect of the proceedings, either in a Rule 50(b) motion after judgment or on appeal.  If the parties are unsuccessful in reaching agreement as to a suitable ongoing royalty rate, Dr. Bianco will be permitted to file a motion requesting that the Court adopt an ongoing royalty rate to be imposed in lieu of an injunction.  <u>See</u> <u>Paice</u>, 504 F.3d at 1315.

IT IS SO ORDERED.

SIGNED this 17th day of March, 2014.


_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE