# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SABATINO BIANCO, MD | § |
| Plaintiff, | § Civil Action No. 2:12-CV-00147-WCB |
| v. | § JURY TRIAL DEMANDED |
| GLOBUS MEDICAL, INC. | § |
| Defendant. | § |

## GLOBUS MEDICAL, INC.'S OPPOSED MOTION TO FIND THE CASE EXCEPTIONAL BASED ON PLAINTIFF'S INVENTORSHIP CLAIMS

I.  **FACTUAL BACKGROUND**

Plaintiff Dr. Sabatino Bianco ("Plaintiff" or " Bianco") filed this case on March 20, 2012, claiming, among other things, that he should be named inventor of U.S. Patent No. 8,062,375 ("the '375 Patent"). One day before the close of discovery, Bianco for the first time asserted claims that he also be named the sole or joint inventor of U.S. Patent Nos. 8,518,120 and 8,491,659 ( "the '120 patent and '659 patents", respectively), as well as nine pending patent applications.[1] The issued patents claim interbody spinal implants which use a ramp mechanism to expand the implants when installed between the spinal vertebrae, as well as methods of installing and expanding the implants. The patent applications still are pending before the Patent Office and, as such, do not yet have issued claims that define an invention.

Aside from his bare testimony, all that Bianco submitted to support his claim of inventorship was a crude sketch he made in 2007 which roughly showed a tool having a scissor jack mechanism to expand its tip. The rough concept presented in Bianco's 2007 drawing did not show how it would presumably operate and in fact Bianco's expert testified that the device shown in Bianco's drawing would not work. Despite the lack of operative detail in his sketch, Bianco adamantly alleged that the device he drew embodied a scissor jack expansion mechanism. However, at the same time, Bianco admitted that he had not invented an interbody implant that used any type of ramp based expansion, much less the ramp based mechanism claimed in the '120, '375 and '659 patents. Nonetheless, Bianco continued to allege he should be named the sole inventor of the ramp-based implants and installation techniques claimed in the patents.[2] Despite his insistence that he was the inventor, in his deposition taken after adding his

---

[1] Dkt. 103.

[2] **Ex. A**, Bundren Decl. and **Ex. A-1**, Bianco 6/24/2013 Dep. Tr., at 79:3-8.

new inventorship claims for the '120 and '659 patents (again 18 months after this case was filed), Bianco admitted that he could not even identify any particular claims of either patent patents for which he claimed inventorship.[3] In fact, Bianco confirmed he never saw the patents until the eve of his second deposition.[4]

Bianco also sought to be named a joint inventor, even though he readily admitted that he had never met nor conversed with any of the named inventors of the '120, '375 or '659 patents, and presented no theory under which he could be considered to have collaborated with the named inventors to accomplish, as a common goal, the development of the devices claimed in the patents. Hence, Bianco had no evidence from which the trier of fact could find that he had any sole or joint inventorship claim to any of the '120, '375 or '659 patents. And, with respect, to his inventorship claim to the pending patent applications, Bianco had no legal basis whatsoever.

Notwithstanding the paucity of evidence and complete lack of legal basis to support Bianco's sole and joint inventorship claims, Globus expended considerable efforts to defend itself. Globus performed a great portion of those efforts under extreme time pressure due to Bianco's last-minute addition of inventorship claims directed to two more patents. The parties ultimately agreed to submit the inventorship issue on briefs filed post-trial. The Court issued its Order on Bianco's claims on March 6, 2014, finding no evidence to support his claims for either sole or joint inventorship.[5] Bianco's ill motives are apparent.

---

[3] **Ex. A**, Bundren Decl., and **Ex. A-2**, Bianco 11/21/2013 Dep. Tr., at 167:17-168:11.

[4] *Id.*

[5] Dkt. 262, at 20-22.

## II. ARGUMENT

### A. Legal Standard Under 35 U.S.C. § 285

Under 35 U.S.C. § 285, a "court in exceptional cases may award reasonable attorneys' fees to the prevailing party." Once it is determined that the party seeking fees is the prevailing party, determining whether to award attorneys' fees is a two-step process. *Forrest Labs, Inc. v. Abbott Labs*, 339 F.3d. 1324, 1327-28 (Fed. Cir. 2003). First, a prevailing party must establish by clear and convincing evidence that the case is "exceptional." *Id*. at 1327. An award of fees against a patentee can be made for a frivolous claim, inequitable conduct before the Patent Office, or misconduct during litigation. *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d. 1547, 1551 (Fed. Cir. 1989). Second, if the case is deemed exceptional, a court must determine whether an award of attorneys' fees is appropriate and, if so, the amount of the award. *Forrest Labs*, 339 F.3d at 1328. "[T]he amount of the attorney fee award [awarded] depends on the extent to which the case is exceptional." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001). A baseless claim for inventorship will support the finding of an exceptional case. *See Gabriel Tech. Corp. v. Qualcomm Inc.*, No. 08-CV-1992-AJB-MDD, 2013 WL 410103, at **3-4 (S.D. Cal. February 1, 2013).

### B. Globus Prevailed on Bianco's Inventorship Claims

To be a prevailing party, one must receive at least some relief on the merits which alters the legal relationship of the parties. *Former Emps. of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360, 1364 (Fed. Cir. 2003). While Bianco asserted a number of claims in this litigation, only one claim was made under Title 35: Bianco's inventorship claim under 35 U.S.C. § 256. Hence, on the only claim governed by Title 35, Globus received entirely favorable relief. That relief found in Globus' favor altered the legal relationship between the parties, namely, that Bianco's claim to inventorship of patents owned by Globus was denied. Globus is therefore the

sole prevailing party for purposes of this Motion, and an award shifting all fees expended on defending Bianco's patent-related claims is appropriate.

### C. Bianco's Inventorship Claim is Exceptional Under Section 285

"Exceptional" within the meaning of Section 285 includes cases involving "inequitable conduct before the [Patent Office], litigation misconduct, vexatious, unjustified and otherwise bad faith litigation; a frivolous suit or wilful infringement." *Forrest Labs.*, 339 F.3d at 1329. Litigation misconduct alone is sufficient to support an award of fees. *Rambus Inc. v. Infineon Techs.*, 318 F.3d 1081, 1106 (Fed. Cir. 2003). Absent litigation misconduct, sanctions may also be imposed upon evidence of (1) the subjective bad faith of the proponent of the claim and (2) that litigation on that claim is objectively baseless. *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d. 1378, 1381 (Fed. Cir. 2005).

Even if the Court were not to find that Bianco's pursuit of his claim for sole and joint inventorship constituted litigation misconduct, the *Brooks* test is otherwise met because Bianco's claims were both objectively baseless and subjectively brought in bad faith.

#### (i) Bianco's Claims were Objectively Baseless

The requirement that the litigation be objectively baseless "does not depend on the state of mind of the [party] at the time the action was commenced, but rather requires an objective assessment of the merits." *Brooks,* 393 F.3d at 1382. "To be objectively baseless, the . . . allegations must be such that no reasonable litigant could reasonably expect success on the merits. *Dominant Semiconductors Sdn. Bhd v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008). The objective prong of the test requires a retrospective assessment of the merits of the entire litigation determined "based on the record ultimately made in infringement proceedings." *Highmark Inc. v. Allcare Health Mgmt. Sys. Inc.*, 687 F.3d 1300, 1310 (Fed. Cir. 2012) (*citing Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 682 F.3d 1003 (Fed. Cir. 2012)). In

other words, the objective prong of the test is "a single backwards looking inquiry into the reasonableness of the claims and a look of the full record." *Highmark*, 687 F.3d at 1310-11.

### 1. Bianco Had No Evidence Corroborating his Claims to Sole or Joint Inventorship of the '120, '375 or '659 patents

Patent inventorship is a question of law. *Weaver v. Houchin*, No. 4:09-CV-187-A, 2010 WL 2710604, at *2 (N.D. Tex. July 8, 2010) (*citing Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1360 (Fed. Cir. 2004)). The issuance of a patent creates a presumption that the inventors named on the patent are the "true and only inventors." *Gemstar*, 383 F.3d at 1381 ("Because a patent is presumed valid under 35 U.S.C. § 282, there follows a presumption that the named inventors on a patent are the true and only inventors."). To rebut this presumption, the party challenging inventorship must establish by clear and convincing evidence that the documented inventorship is incorrect. The Federal Circuit has applied this high burden not only to patent invalidity challenges based on incorrect inventorship but also to hostile claims to correct inventorship under 35 U.S.C. § 256. *See Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004); *Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001) ("In order to rebut [the] presumption, a party challenging patent validity for omission of an inventor must present clear and convincing evidence that the omitted individual actually invented the claimed invention."); *Ethicon, Inc. v. U.S. Surgical Corp.*, 937 F. Supp. 1015, 1034 (D. Conn. 1996), *aff'd*, 135 F.3d 1456, (Fed. Cir. 1998) ("Correction of a patent will not be ordered over the objection of a named inventor except on the basis of clear and convincing evidence."). Viewed objectively, Bianco never had any reasonable prospect of meeting his burden at trial.

An alleged inventor's testimony standing alone is insufficient as a matter of law to rise to the level of clear and convincing proof of inventorship. *Ethicon*, 135 F.3d at 1461. Instead, an

alleged inventor "must supply evidence to corroborate his testimony." *Id.* Whether testimony is sufficiently corroborated is evaluated under a "rule of reason analysis," which evaluates all pertinent evidence to make a determination of the credibility of the alleged inventor's story. *Id.* To support a claim of sole inventorship, the evidence must corroborate that every feature of the invention that is claimed in the patent-at-issue was *both conceived and reduced to practice* by the purported inventor. *Id.* at 1460. If the purported inventor is seeking to be named as a co-inventor, then the evidence must establish that the co-inventors collaborated and worked together to collectively have a definite and permanent idea of the complete invention. *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1308 (Fed. Cir. 2010).

Bianco had no evidence corroborating his claim of inventorship aside from his 2007 drawing. Bianco's *own technical expert*, Dr. McMillin, admitted that Bianco's drawing described an inoperative invention which could therefore not support Bianco's conception or reduction to practice:

> **Q.** My question -- because you told us in your report and in your testimony that this picture shows this feature which Dr. Bianco claims is one of his trade secrets.
>
> And I'm just trying to figure out where in this picture, it shows that this device is actuated by rotation of a screw mechanism.
>
> And I think what you've told me now is that it's not, is it?
>
> **A.** *Well, I'm not really sure how it would work.* Again, everybody's been claiming that it's a Scissor Jack, and those two bars, if you put them in the opposite direction, then as you rotate it, it causes that to go in and out.
>
> So in Dr. Bianco's drawing, he may have the Scissor Jack depicted wrong, but he still has the top and bottom going in and out to make the adjustable motion.
>
> . . .

> Q. So it's a Scissor Jack. He has not drawn anything that's a workable device here. Dr. Bianco has not depicted a workable device; isn't that correct?
>
> A. The mechanism -- *that's not a very good drawing of a mechanism that would work*, correct.[6]

Dr. McMillin's conclusion was confirmed by this Court.[7] Retrospectively, Bianco knew from his own expert that his claims could not meet the test for corroboration, and therefore had no evidence to support his inventorship claims, particularly his claim for sole inventorship. Notwithstanding, Bianco pursued these claims through trial.

### 2. Bianco Presented No Evidence of Collaboration with the Named Inventors

If a putative inventor is seeking to be named as a co-inventor, then the evidence must establish that the co-inventors collaborated and worked together to collectively have a definite and permanent idea of the complete invention. *Vanderbilt Univ. v. ICOS Corp*, 601 F.3d 1297, 1308 (Fed. Cir. 2010). The collaboration required by 35 U.S.C. § 116 to show joint inventorship can happen directly, such as through conversations or correspondence, or indirectly such as by one inventor seeing a relevant report and building upon it. *Kimberly-Clark Corp. v. The Proctor & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992). Such indirect collaboration cannot be proven, however, where teams of prospective inventors are working independently, have no cooperative relationship, and where the nature of their communications and the information shared is not the kind of interaction that reflects parties working together towards a common end. *See id.*; *Rubin v. Gen. Hosp. Corp. (Mass. General)*, 523 Fed. App'x 719 (Fed. Cir. 2013) (not

---

[6] **Ex. A**, Bundren Decl., and **Ex. A-3**, 1/14/14 PM Trial Tr. at 131:9-132:9 (emphasis added).

[7] Dkt. 262, at 20 ("Dr. Bianco's drawings reflected only a general idea for an expandable spacer; they did not embody a definite and permanent idea of the complete and operative invention.") (internal quotes omitted).

designated for publication). One who conceives an idea of a result to be obtained, but not the way to obtain it, is not a joint inventor. *Id.*

Bianco testified that he did not collaborate or work with Chad Glerum, Sean Suh (named inventors on the '120 Patent and '375 Patent) or Mark Weiman (named inventor on the '120 Patent and '659 Patent). Bianco admitted that he never conversed with any of them and had no evidence that any of his alleged ideas were ever disclosed to them.[8] Furthermore, Bianco testified that had never spoken to anyone on the design teams which comprised of eight doctors for Caliber®, five doctors for Caliber®-L, and five doctors for Rise®.[9] Moreover, Bianco testified that he did not have any evidence that Gregg Harris, the Globus employee to whom Bianco disclosed the drawing, had discussed the idea with anyone on the three design teams.[10] Viewed objectively, Bianco had no evidence either when he brought his claim or at any time before trial that would support collaboration with the named inventors of the '120, '375 and '659 patents either directly or indirectly through his disclosures to others at Globus.

        **(ii)**        **Bianco's Inventorship Claims Were Brought in Subjective Bad Faith**

Once it is determined that a claim is objectively baseless, it must be shown that lack of subjective foundation for the claim "was either known or so obvious that it should have been known" by the party asserting the claim. *In Re: Seagate Tech LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). In considering a party's subjective state of mind, the court should take into account the totality of the circumstances. *Machinery Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 473 (Fed. Cir. 1985). Unlike the objective prong, the subjective prong may suggest that even a claim

---

[8] **Ex. A**, Bundren Decl., at **Ex. A-4**, 1/13/2014 PM Trial Tr. at 152:17-153:1.

[9] **Ex. A**, Bundren Decl., at **Ex. A-4**, 1/13/2014 PM Trial Tr. at 153:16-155:16.

[10] **Ex. A**, Bundren Decl., at **Ex. A-4**, 1/13/2014 PM Trial Tr. at 153:2-4.

initially brought in good faith may be continued in bad faith depending on developments during discovery and otherwise. *Highmark* , 637 F.3d at 1311.

The obvious lack of merit in Bianco's inventorship claim demonstrates subjective bad faith. *See Seagate*, 497 F.3d. at 1371. Bianco knew or should have known that his allegation of *sole* inventorship of any of the claims of the '120, '659 or '375 patents was legally impossible since all claims of these patents require an arrangement of ramps for expansion which Bianco admits he did not invent. Bianco further knew or should have known that (1) his lack of corroboration to have invented what is claimed in the '120, '659 or '375 patents; and (2) his lack of collaboration with the named inventors further removed any chance of succeeding on his inventorship claims. It was bad faith for Bianco to pursue these inventorship claims knowing that he had no corroborating evidence of his inventorship of the claimed subject matter, and that even his own testimony did not suggest any collaboration with the named inventors.

### 1. Bianco Knew He Could Not Succeed on His Claims of Sole Inventorship of the '120, '375 or '659 patents

Bianco testified that the sketch he drew and submitted to Globus in 2007 contained a scissor jack mechanism as the feature for expansion.[11] The Caliber®, Caliber®-L, and Rise® products differed radically from that design shown in Bianco's sketch. The principal difference in the Globus implants is the mechanism used to expand and contract the implant. Unlike the scissor jack mechanism, the Caliber®, Caliber®-L, and Rise® products undisputedly use a ramp-type structure to expand and contract the implant. As recognized by this Court, "these two means for expansion are very different."[12] The scissor-jack mechanism used in Bianco's embodiment causes the device to expand and contract by rotating the two "scissor" members

---

[11] **Ex. A**, Bundren Decl., at **Ex. A-4**, 1/13/2014 PM Trial Tr. at 80:19-21; 141:24-142:1.

[12] Dkt. 262, at 12.

from a horizontal position, where the device is fully contracted, to a more vertical position, where the device is fully expanded.[13] In the ramp structure used in the Globus products, an expansion member includes inclined planes or ramped surfaces that engage with complementary inclined planes or ramp surfaces formed in the top and bottom endplates of the device.[14] When the complementary ramped surfaces slide along one another, the endplates are either forced apart (expanded) or move towards each other (contracted).[15]

Bianco testified that the ramp mechanisms used for expansion as found in the Caliber® and Rise® implants were not depicted in any way in his drawings.[16] This conclusion was confirmed by the Court.[17] The evidence at trial was not only that Bianco himself never suggested the ramp expansion mechanism employed in either Caliber®, Caliber®-L, or Rise® products, but that he was in fact oblivious to Globus' "solution" to his inoperative scissor jack design.[18] Notably, the scissor jack device that Bianco sketched was not disclosed or claimed in the '120, '375 or '659 patents. Bianco further admitted that none of the Globus products at issue used a scissor jack mechanism for expansion.[19]

The knowledge and opinions held by Bianco negated from the outset all possible links between his alleged contribution to the conception to even a single claim in the '120, '375 or

---

[13] Dkt. 262, at 11.

[14] Dkt. 262, at 10-11.

[15] *Id*.

[16] **Ex. A**, Bundren Decl., at **Ex. A-4**, 1/13/2014 PM Trial Tr. at 149:23-150:2.

[17] *See* Dkt. 262, at 12 (comparing Bianco's drawing with the ramp mechanism shown in the '659 patent).

[18] **Ex. A**, Bundren Decl., at **Ex. A-3**, 1/14/14 PM Trial Tr. at 136:8-18.

[19] **Ex. A**, Bundren Decl., at **Ex. A-4**, 1/13/2014 PM Trial Tr. at 106:11-13; 144:18-23.

'659 Patents. These circumstances create a sufficient inference of bad faith to establish exceptionality under § 285. *See Kilopass Tech. Inc. v. Sidense Corp.*, 501 F. App'x 980 (Fed. Cir. 2013) (not designated for publication); *In Re: Seagate Tech,* 497 F.3d at 1371.

### 2. Bianco Also Knew He Could Not Succeed on His Claims of Joint Inventorship of the '120, '375 or '659 patents

The act of invention requires conception, which is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention." *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) (quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986)). "A conception is not complete if the subsequent course of experimentation, especially experimental failures, reveals uncertainty that so undermines the specificity of the inventor's idea that it is not yet a definite and permanent reflection of the complete invention as it will be used in practice." *Burroughs*, 40 F.3d at 1229. An idea is definite in an inventor's mind when the inventor has a specific, settled idea, a particular solution to the problem at hand, and not just a general goal or research plan he hopes to pursue. *Id*. at 1228

Because Bianco submitted no corroborating evidence of his purported inventorship, and because his self-serving testimony did not even establish any of the legal requirements for inventorship, no reasonable litigant could have expected to prevail on his claims. Dr. McMillin admitted that the tool Bianco sketched in his 2007 drawing would not work and in fact could not even identify how the scissor jack mechanism was supposed to be actuated to induce expansion.[20] Bianco's *own expert* therefore negated his ability to present clear and convincing evidence to corroborate his alleged conception of any portion of any claim of the '120, '375 or '659 patents using his 2007 drawing. Bianco retained Dr. McMillin at least as early as August

---

[20] **Ex. A**, Bundren Decl., at **Ex. A-3**, 1/14/14 PM Trial Tr. at 55:15-56:11 and 135:23-136:12.

30, 2013, which is the date that Dr. McMillin issued his first of three expert reports.[21] Bianco therefore had access to Dr. McMillin's opinion that his drawing showed an inoperative device before he brought his inventorship claims. The present case is, in that respect, even more egregious than that presented *Highmark*, in which the plaintiff initially acted in good faith asserting his claims, but maintained them even after it became obvious that they were baseless. Here, Bianco knew well before he added his new inventorship claims for the '120 and '659 patents, and certainly before he went to trial, that these claims were not sustainable. Bianco forced Globus to go to trial on inventorship claims that were based on nothing more than "mere allegations to support [his] theory." *See Gabriel Tech. Corp. v. Qualcomm Inc.*, No. 08-CV-1992-AJB-MDD, 2013 WL 410103, at *4 (S.D. Cal. February 1, 2013).

### 3. Bianco Also Knew He Had No Legal Basis to Pursue Claims of Inventorship for the Nine Patent Applications

A claim for correction of inventorship under 35 U.S.C. § 256 does not accrue until a patent issues. *See* 35 U.S.C. § 256 ("Whenever through an error a person is named in an ***issued patent*** as the inventor, or through error an inventor is not named in an ***issued patent*** . . . . ") (emphasis added). "The reason is simple: that is what the language of the provision requires." *Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1335 (Fed. Cir. 2012); *see also HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010). Despite the unequivocal language of the statute, Bianco asserted a claim for correction of inventorship of nine patent applications.

---

[21] Dkt. 92.

### D. Globus' Claim to Attorneys' Fees in Defending Bianco's Inventorship Claims

If a case is deemed exceptional, a court must determine whether an award of attorneys' fees is appropriate and, if so, the amount of the award. *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1460 (Fed. Cir 1998) (en banc) "[T]he amount of the attorney fee award [awarded] depends on the extent to which the case is exceptional." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d. 1340, 1344 (Fed. Cir. 2001). When "one party prevails on some claims in issue while the other party prevails on other claims, this fact should be taken into account when determining the amount of fees under § 285." *Beckman Instruments, Inc., v. Lkb Produkter Ab*, 892 F.2d 1547, 1554 (Fed. Cir. 1989). In *Gabriel*, the district court found Gabriel Technologies' claim for inventorship so wanting in evidentiary underpinnings that it constituted an exceptional case. *Gabriel Tech*, 2013 WL 410103, at *5. The plaintiff was not able to identify any inventors which were allegedly omitted on the subject patent. Finding the case warranted the imposition of fees under Section 285, the court explained that "Plaintiffs knew they lacked the requisite evidence and opted to pursue their claims nonetheless." *Id.*, at *4. Like the facts of *Gabriel*, Bianco also knew he had no facts to support either the requisite standards for corroboration or collaboration. Undaunted Bianco pursued his claims at trial, using them as yet a further tool to exert undue leverage over Globus. Bianco's dogged persistence in the face of no supporting evidence similarly entitles Globus to an award of fees. *See id.*; *Seagate*, 497 F.3d at 1371.

Although it did not prevail in the verdict on one non-patent claim asserted in this litigation (trade secret claim), Globus prevailed on all of the patent-related claims that would entitle it to fees under 35 U.S.C. § 285. Globus therefore seeks an award of all fees that it expended in defending the inventorship claim, and in any other patent-related litigation activities. *See Machinery Corp.*, 774 F.2d at 474 (explaining that the rationale for awarding fees is "to reimburse the [defendant] for defending an action improperly brought."). Because the

inventorship claims, and all patent-related litigation activity related to those claims was improperly brought, Globus should be reimbursed for the efforts it expended in defending those claims. Globus is not seeking an award of attorneys' fees for defending, for example, Bianco's trade secret claim, and is prepared to provide a detailed accounting of fees sought under this Motion.

## III. CONCLUSION

Bianco's continued pursuit and last-minute addition of objectively baseless inventorship claims constituted bad faith, and supports an award of attorneys' fees under 35 U.S.C. § 285. This Court should therefore hold Bianco liable for the attorneys' fees expended by Globus in defending itself from Bianco's baseless inventorship claims.

Respectfully submitted,

Dated:  April 2, 2014

/s/ Thomas W. Sankey
Thomas W. Sankey
State Bar No. 17635670
twsankey@duanemorris.com
R. Brandon Bundren
State Bar No. 24050353
rbbundren@duanemorris.com
Diana M. Sangalli
State Bar No. 24033926
dmsangalli@duanemorris.com
Corey M. Weideman
State Bar No. 24056505
cmweideman@duanemorris.com
**DUANE MORRIS LLP**
1330 Post Oak Blvd., Suite 800
Houston, Texas  77056-3166
Telephone:     (713) 402-3900
Facsimile:       (713) 402-3901

Matthew A Taylor (*pro hac vice*)
mataylor@duanemorris.com
Lawrence H. Pockers (*pro hac vice*)
lhpockers@duanemorris.com
Jeffrey S. Pollack (*pro hac vice*)
jspollack@duanemorris.com
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone:     (215) 979-1000
Facsimile:       (215) 979-1020

**ATTORNEYS FOR
GLOBUS MEDICAL, INC.**

## **CERTIFICATE OF SERVICE**

I certify that on April 2, 2014, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the Court's CM/ECF system which will send notice of filing to all counsel of record who are deemed to have consented to electronic service per Local Rule CV-5(a)(3).

/s/ Thomas W. Sankey
Thomas W. Sankey

**CERTIFICATE OF CONFERENCE**

To the extent a "meet and confer" is required for purposes of this Motion, I certify that I, lead counsel for Globus, and R. Brandon Bundren, counsel for Globus, requested Plaintiff's counsel's availability for a "meet and confer" on three occasions and provided two windows of availability to discuss the relief requested in the Motion.

Through several emails, Plaintiff's lead counsel, Mr. Chad Everingham requested Globus provide Plaintiff with the basis and authority for the Motion. Globus identified the basis (Plaintiff's inventorship claims had no basis in law or fact) and the authority (35 U.S.C. § 285) for the Motion. Mr. Everingham then requested a draft of the Motion and demanded the parties postpone the "meet and confer" until next week forcing Globus to wait to file its Motion on Plaintiff's timeline instead of permitting Globus' counsel to file the instant Motion when it determined it was in the best interests of its client to do so. Globus refused Plaintiff's conditions to the "meet and confer". Accordingly, I certify that, in my opinion, and pursuant to Local Rule 7(h-i), Plaintiff's counsel's request for a draft of the Motion, which is not required under this Court's Local Rules or otherwise, and Plaintiff's counsel's request that Globus delay to file the Motion is evidence of bad faith in the "meet and confer" process. Globus therefore assumes Plaintiff is opposed to the requested relief.

/s/ Thomas W. Sankey
Thomas W. Sankey
Lead Counsel for Globus Medical, Inc.

DM1\4560644.1