# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| SABATINO BIANCO, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:12-CV-00147-WCB |
| | § | |
| GLOBUS MEDICAL, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

On March 6, 2014, this Court rejected the claim of plaintiff Sabatino Bianco, M.D., to be named as an inventor on U.S. Patents Nos. 8,062,375; 8,491,659; and 8,518,120, all of which are owned by defendant Globus Medical, Inc. (Dkt. No. 262). Globus moved for an award of attorney fees relating to the litigation of that issue (Dkt. No. 270). Globus claimed that Dr. Bianco's inventorship claim was frivolous, and that under the then-applicable legal test, the inventorship portion of the proceedings in this case should be deemed exceptional, justifying the award of attorney fees under 35 U.S.C. § 285. On April 17, 2014, the Court entered an order denying that motion (Dkt. No. 280).

Less than two weeks after this Court entered its order denying the motion for attorney fees, the Supreme Court decided the case of Octane Fitness, LLC v. Icon Health & Fitness, Inc., No. 12-1184 (Apr. 29, 2014). In that case, the Supreme Court rejected the Federal Circuit's legal test for determining whether a case is exceptional under 35 U.S.C. § 285. Because this Court had relied on the Federal Circuit's test in its April 14, 2014, order, Globus has now moved for

1

reconsideration under the Supreme Court's new test (Dkt. No. 288). This Court DENIES the motion for reconsideration.

The test that the Federal Circuit applied prior to the Supreme Court's decision in Octane Fitness required the party seeking an award of attorney fees because of weakness in the opposing party's case to show by clear and convincing evidence that the opposing party's claim was objectively baseless and that the opposing party brought the claim in subjective bad faith. Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc. 393 F.3d 1378, 1381-82 (Fed. Cir. 2005). The Supreme Court rejected both the clear and convincing evidence standard and the two-part test for objective baselessness and subjective bad faith. Instead, the Supreme Court held that an exceptional case, within the meaning of section 285, is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, slip op. at 7-8. The Court instructed that district courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id. at 8. Contrasting the new test with the Federal Circuit's test, the Supreme Court explained that "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." Id. at 9.

Even though Octane Fitness was pending before the Supreme Court when Globus filed its section 285 motion, Globus urged this Court to apply the Federal Circuit test for section 285 attorney fee motions, not the more liberal test urged by the petitioner in Octane Fitness and ultimately adopted by the Court. Globus's failure to argue in favor of the more liberal standard,

even though the continued vitality of that case was subject to question by virtue of the pendency of Octane Fitness constitutes a waiver of its right to press that standard. While a party may not be chargeable with anticipating unexpected changes in the law, the change made in Octane Fitness cannot be characterized as unexpected, given that the Supreme Court had granted certiorari in that case to consider whether the Federal Circuit's section 285 test should be rejected.

It is not necessary for the Court to rest its decision solely on waiver, however. As an alternative ground for decision, this Court has reviewed Globus's motion under the new Octane Fitness standard and has determined that, under that standard, the motion should be denied. The Court notes that in its original order, it found that Globus had failed to satisfy either part of the two-part test for "exceptional case" status. That is, the Court found that Dr. Bianco's inventorship claim was not objectively baseless and that it was not brought in subjective bad faith. The Supreme Court noted that either subjective bad faith or an "exceptionally meritless" claim could warrant a fee award. This Court's finding that neither part of the prior test was satisfied thus largely answers the question whether this case is exceptional under the Supreme Court's new test. Beyond that, the Court independently determines, under the totality of the circumstances, that Dr. Bianco's inventorship claim in this case is not "exceptional" in that it does not "stand[] out from others with respect to the substantive strength" of Dr. Bianco's litigating position. Octane Fitness, slip op. 7. The Court will now retrace the steps of its factual analysis in the original section 285 order, applying the new legal test dictated by the Supreme Court in Octane Fitness to the particular circumstances surrounding Dr. Bianco's inventorship claim.

1. The Court will first address the issue of whether Dr. Bianco's inventorship claim was objectively baseless. Initially, the Court notes that Globus moved for summary judgment on the issue of inventorship, but the motion was denied on the ground that the issue presented factual questions for trial. After trial, the Court ruled that Dr. Bianco could not be regarded as a co-inventor of any of the three patents in dispute. That ruling was predicated on factual findings made by the Court based on evidence at trial. The Court noted that Dr. Bianco was required to show, by clear and convincing evidence, that he satisfied the legal test for being adjudged an inventor. The Court concluded that Dr. Bianco's proof fell short of what was required to meet that burden.

In contending that Dr. Bianco's inventorship claim was objectively baseless, Globus relies heavily on this Court's ruling on the inventorship issue. However, the fact that the Court ruled against Dr. Bianco on that issue does not mean that Globus has shown that Dr. Bianco's claim was frivolous or otherwise exceptionally meritless. See iLOR, LLC, 631 F.3d at 1378 ("Though iLOR was ultimately unsuccessful in its patent infringement suit, Google has not met its high burden to show . . . that this suit was brought frivolously or that iLOR's position on claim construction was objectively baseless."); IP Innovation L.L.C. v. Red Hat, Inc., No. 2:07-cv-447 (E.D. Tex. Oct. 13, 2010), ECF No. 273, at 2. (Rader, J.) ("An award of attorneys' fees . . . must be predicated upon something beyond the fact that a party has prevailed."). To the contrary, viewing Dr. Bianco's inventorship claim through the lens of objective baselessness, this Court does not find the position taken by Dr. Bianco on that issue to have been objectively unreasonable; that is, the Court rejects Globus's position that no reasonable person could believe that Dr. Bianco's position on the inventorship issue had a realistic chance of success.

To be sure, the fact that the Court denied Globus's motion for summary judgment on the inventorship issue is not dispositive of the issue of objective baselessness, but it supports Dr. Bianco's argument that his inventorship claim was not frivolous. As Dr. Bianco points out, both the Federal Circuit and the Fifth Circuit have recognized that a ruling denying summary judgment and permitting a claim to go to trial is an indication that the claim is not frivolous. See Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH, 603 F.3d 943, 954 (Fed. Cir. 2010) ("[A] party is entitled to rely on a court's denial of summary judgment . . . as an indication that the party's claims were objectively reasonable and suitable for resolution at trial."); ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 875 (Fed. Cir. 2010) ("[T]he district court's denial of summary judgment of noninfringement reflects the belief that it was reasonable" for the plaintiff to have prosecuted its claim); Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551 (Fed. Cir. 1989) ("[W]e find it difficult to agree that the inequitable conduct defense was 'baseless' when it survived a motion for summary judgment and was rejected only after findings were made on disputed facts."); Nat'l Ass'n of Gov't Employees v. Nat'l Fed'n of Fed. Employees, 844 F.2d 216, 233 (5th Cir. 1988) ("[O]ne might well wonder how a case could be so frivolous as to warrant sanctions if it has sufficient merit to get to trial.").

Beyond that, the jury's finding that Globus misappropriated Dr. Bianco's trade secrets gives some support to Dr. Bianco's inventorship theory. For the reasons set forth in the March 6, 2014, order, the Court found that support to be insufficient to carry Dr. Bianco's burden of proof on the issue of inventorship. It is not enough, however, for Globus to point out that the Court found Dr. Bianco's evidence of inventorship to be insufficient. Globus must show that the claim was exceptional, and the Court does not find sufficient proof in support of Globus's argument in

5

that regard. In short, the inventorship claim in this case is a fairly routine example of a claim that did not prevail; it is not the exceptional case of a claim that is so plainly non-meritorious that no reasonable attorney could realistically expect success on the merits.

Addressing the specific defects in Dr. Bianco's inventorship claim, Globus begins by arguing that Dr. Bianco's testimony relating to inventorship was uncorroborated. In so arguing, Globus relies on a line of cases from the Federal Circuit holding that a party seeking to correct inventorship on a patent must produce more than his testimony alone: he must provide corroborating evidence, preferably in the form of contemporaneous documentation. See Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n, 383 F.3d 1352, 1382 (Fed. Cir. 2004); Trovan, Ltd. v. Sokymat SA, 299 F.3d 1292, 1302 (Fed. Cir. 2002); Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1461 (Fed. Cir. 1998).

Globus argues that Dr. Bianco had no evidence corroborating his claims to sole or joint inventorship. However, there plainly was corroborating evidence that Dr. Bianco provided a set of drawings reflecting his ideas to Globus representatives in the summer of 2007. The drawings have survived, and Globus witnesses admitted receiving and examining them. It is common ground between the parties that the drawings, in the context in which they were submitted, constitute the contribution Dr. Bianco made to the development of the disputed products. So simple corroboration is not an issue; the fact that Dr. Bianco submitted the drawings and the content of those drawings are not in doubt.

Globus spends considerable time arguing that Dr. Bianco cannot be considered a sole inventor of the three patents at issue. For example, Globus argues that in order to be considered the sole inventor on the three patents, Dr. Bianco would have had to show that he both conceived

6

all features of the claimed inventions recited in those patents and reduced the inventions to practice. Because there is no evidence that Dr. Bianco conceived all of the features or reduced any of the inventions to practice, Globus contends that his sole inventorship claim is plainly meritless. But Globus's arguments about sole inventorship are a red herring. Dr. Bianco is not claiming to be the sole inventor of those patents. His claim is that he is entitled to be named as a co-inventor on each of them, and that requires a different sort of showing.[1] See Ethicon, 135 F.3d at 1460; Burroughs Wellcome Co. v. Barr Labs. Inc., 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).

In addressing the co-inventorship issue, Globus argues that a putative co-inventor must "establish that the co-inventors collaborated and worked together to collectively have a definite and permanent idea of the complete invention." Dkt. No. 270, at 7. Globus contends, inter alia, that Dr. Bianco did not conceive of the entire invention of any of the claims of the three patents in dispute. The legal test for joint inventorship, however, does not require that "each co-inventor must have an independent mental picture of the complete [invention] claimed." Vanderbilt Univ. v. ICOS Corp., 601 F.3d 1297, 1307-08 (Fed. Cir. 2010). Thus, an alleged co-inventor does not have to conceive of the entire invention, as long as he contributes to the conception of the claimed invention. Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1359 (Fed. Cir. 2004); Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1473 (Fed. Cir. 1997). In the end, all that is required is that the joint inventors "collectively have a definite and permanent idea of the

---

[1] Globus cites the First Amended Complaint to support its contention that Dr. Bianco is claiming to be the sole inventor of the three named patents. But the complaint merely complains of "[t]he omission of Dr. Bianco as inventor" on the three patents, without specifying whether he should be named sole inventor or joint inventor. Dr. Bianco's submission to the Court on the inventorship issue, however, makes clear that his claim is that he should be named as a co-inventor, not a sole inventor.
7

complete invention," Vanderbilt, 601 F.3d at 1308, and that each joint inventor "contribute in some significant manner to the conception of the invention." Fina Oil, 123 F.3d at 1473; Ethicon, 135 F.3d at 1460 ("each joint inventor must generally contribute to the conception of the invention."). It is not necessary for each co-inventor to "make the same type or amount of contribution" to the invention. 35 U.S.C. § 116(a); Ethicon, 135 F.3d at 1460. Under that standard, it was not unreasonable for Dr. Bianco to assert that his drawings, while they may not have reflected conception of the entire invention recited in any of the claims in the issued patents, nonetheless constituted a contribution to the conception of the ultimate patented inventions.

Globus also contends that Dr. Bianco did not work jointly with any of the Globus engineers on the claimed inventions and therefore cannot be considered a joint inventor. However, the Patent Act itself makes clear that individuals may be joint inventors even though "they did not physically work together or at the same time." 35 U.S.C. § 116. Thus, co-inventorship does not require that the co-inventors actually collaborate in the conventional sense of that term. It is enough if

> each of the inventors work on the same subject matter and make some contribution to the inventive thought and to the final result. Each needs to perform but a part of the task if an invention emerges from all of the steps taken together. It is not necessary that the entire inventive concept should occur to each of the joint inventors, or that the two should physically work on the project together. One may take a step at one time, the other an approach at different times.

Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co., 973 F.2d 911, 916 (Fed. Cir. 1992), quoting Monsanto Co. v. Kamp, 269 F. Supp. 818, 824 (D.D.C. 1967). It is thus sufficient to satisfy the collaboration requirement of joint inventorship if, for example, one inventor "see[s] a

relevant report and build[s] upon it, or hear[s] another's suggestion at a meeting." Kimberly-Clark, 973 F.2d at 917. A person can be a co-inventor even if that person works separately from his fellow co-inventor, but provides important information to his co-inventor or receives such information from him. That, in essence, was Dr. Bianco's theory: that he provided a significant contribution to the ultimate invention, and the Globus engineers developed that idea after seeing his drawings or hearing about them from other Globus employees. Indeed, part of that theory was validated by the jury, which found that Globus used Dr. Bianco's trade secrets in some way, even though the Court concluded that Dr. Bianco's input was not sufficient to render him a co-inventor of the disputed patents, see Dkt. No. 262, at 20.

Globus next points to the testimony of Dr. Bianco's expert, Dr. McMillin, who admitted that Dr. Bianco's drawing of a scissor-jack mechanism would not actually work if the mechanism were manufactured precisely as drawn. However, there was ample evidence, including from Globus witnesses, that Dr. Bianco's sketch, although somewhat crude, represented a conventional scissor-jack mechanism. And there was evidence that it was well known in the art how to manufacture such a device. The use of Dr. McMillin's testimony to suggest that Dr. Bianco's invention was inoperative is thus little more than a debater's point; it does not significantly undercut the evidence that Dr. Bianco's drawing depicted an adjustable device in which a scissor-jack was the mechanism for adjusting the height of the device. While the Court concluded that Dr. Bianco's drawings did not embody a definite and permanent idea of the invention disclosed in the patents, the evidence relating to his drawings and his contemporaneous dealings with Globus representatives provided at least some support for his contention that his contribution was sufficient to entitle him to the status of a co-inventor.

Given that the legal standards for establishing joint inventorship are somewhat amorphous, it is not surprising that the Federal Circuit has observed that the "determination of whether a person is a joint inventor is fact specific, and no bright-line standard will suffice in every case." Vanderbilt, 601 F.3d at 1308, quoting Fina Oil & Chem. Co., 123 F.3d at 1473. Applying the governing standards to Dr. Bianco's claim, the Court concludes that his claim was not so plainly non-meritorious that it could be regarded as baseless. His theory of the case was that he provided a substantial portion of the conception of the invention and that Globus's employees, upon learning of his contribution, completed the conception of the claimed inventions and reduced them to practice. Although the Court ultimately rejected that theory based on its analysis of the evidence at trial and the evidence submitted to the Court after trial, the Court rejects Globus's argument that an alleged absence of evidence of conception or collaboration on Dr. Bianco's part rendered his inventorship claim objectively baseless.

2. The Court next addresses the question whether Dr. Bianco brought the inventorship claim in subjective bad faith. Bad faith can be inferred, Globus argues, because of the objective weakness of Dr. Bianco's claim, and because he knew that while his drawings depicted a scissor-jack mechanism, the Caliber and Rise line of products used a ramp mechanism to adjust the height of the intervertebral spacer. The Court has already answered the first argument by rejecting Globus's argument that Dr. Bianco's inventorship claim was objectively baseless. As to the second argument, the fact that the claimed inventions do not claim a scissor-jack mechanism of the sort depicted in Dr. Bianco's drawings is not necessarily fatal to Dr. Bianco's inventorship theory because, as discussed above, each co-inventor is not required to conceive of the entire completed invention, as long as he contributes to the conception.

Globus separately contends that Dr. Bianco's subjective bad faith is demonstrated by his claim for correction of inventorship as to certain pending patent applications. That claim reflects bad faith, according to Globus, because a claim for inventorship does not accrue until a patent issues. That argument misapprehends the scope of Dr. Bianco's inventorship claim.

It is true that Dr. Bianco's first amended complaint referred to ten pending patent applications that claimed priority to application number 12/579,833 (the '833 application"). He did not, however, seek correction of inventorship as to those applications. His complaint alleged that the failure to include him as an inventor on those applications violated sections 115 and 116 of the Patent Act, 35 U.S.C. §§ 115, 116. But he did not seek to be named as an inventor on the applications. Instead, the relief he sought was correction of inventorship on "any patents that may issue" from those applications. Based on his theory that all the continuation applications stemming from the '833 application contained the core elements of his inventive contribution, Dr. Bianco's request for relief in the form of correction of inventorship on any patents that might emerge from those applications was not unreasonable. Moreover, in his evidentiary submission in support of his inventorship claim (Dkt. No. 247), Dr. Bianco did not request correction of inventorship with respect to any of the pending applications; his request for correction of inventorship was limited to the three issued patents in dispute. Dr. Bianco's references in his complaint to the applications claiming priority to the '833 application therefore do not reflect subjective bad faith on his part.

In sum, Globus has failed to show that Dr. Bianco's inventorship claim was either baseless or pursued in bad faith. Applying the Supreme Court's observation in <u>Octane Fitness</u> that a case "presenting either subjective bad faith or exceptionally meritless claims may

11

sufficiently set itself apart from mine-run claims to warrant a fee award," Octane Fitness, slip op. at 9, this Court concludes that neither of those standards is met here.

Based on the foregoing analysis, this Court concludes that Globus has failed to satisfy its burden of showing that Dr. Bianco's inventorship claim is one that "stands out from others with respect to the substantive strength" of Dr. Bianco's litigating position. Octane Fitness, slip op. at 7. Thus, the Court concludes that Dr. Bianco's inventorship claim was not exceptional within the meaning of section 285, as construed by the Supreme Court in Octane Fitness, and that Globus is not entitled to an award of attorney fees under section 285. The motion for reconsideration is therefore denied.

IT IS SO ORDERED.

SIGNED this 12th day of May, 2014.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE