# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| SABATINO BIANCO, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:12-CV-00147-WCB |
| | § | |
| GLOBUS MEDICAL, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the parties' Joint Motion to Seal Portions of the Trial Transcript (Dkt. No. 285). The motion is GRANTED IN PART and DENIED IN PART.

As a general matter, sealing judicial records, including the transcript of a trial or portions of the trial transcript, is contrary to the principle that judicial proceedings in this country are to be conducted in public. The Supreme Court has recognized the existence of a "general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); see also In re Violation of Rule 28(d), 635 F.3d 1352, 1356 (Fed. Cir. 2011); SEC v. Van Waeyenberghe, 990 F.2d 845, 848 (5th Cir. 1993). And the Fifth Circuit, like other courts, has acknowledged that there is "a strong presumption in favor of a common law right of public access to court proceedings." United States v. Holy Land Found. for Relief & Dev., 624 F.3d 685, 690 (5th Cir. 2010); In re Violation of Rule 28(d), 635 F.3d at 1356. For that reason, the party seeking to seal portions of the transcript bears a heavy burden of showing that a sealing order is necessary to protect important

1

countervailing values, and "[o]nly the most compelling reasons can justify non-disclosure of judicial records." In re Knoxville News-Sentinel Co., 723 F.2d 470, 476 (6th Cir. 1983).

To be sure, the "right to inspect and copy judicial records is not absolute." Nixon, 435 U.S. at 598. The presumption in favor of public access to court records can therefore be overcome in certain instances. For example, courts have denied public access to court records when necessary to ensure that those records "are not 'used to gratify private spite or promote public scandal,'" or to ensure that court records are not used "as sources of business information that might harm a litigant's competitive standing." Id.

The decision whether to allow public access to court records is left to the "sound discretion of the trial court . . . to be exercised in light of the relevant facts and circumstances of the particular case." Nixon, 435 U.S. at 599. The exercise of that discretion is not unguided, however. "In determining whether to restrict the public's access to court documents, the court must 'weigh[] the interests advanced by the parties in light of the public interest and the duty of the courts.'" In re Violation of Rule 28(d), 635 F.3d at 1357 (quoting Nixon, 435 U.S. at 602). And in making a decision as to whether to limit public access to court records, a judge must be cognizant of the fact that "[p]ublic access [to judicial records] serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." Van Waeyenberghe, 990 F.2d at 850 (alteration in original); see also id. ("The real focus of our inquiry is on the rights of the public in maintaining open records and the 'check[] on the integrity of the system.'" (quoting Wilson v. Am. Motors Corp., 759 F.2d 1568, 1571 (11th Cir. 1985))). Accordingly, courts have held that a district judge's "discretion to seal the record of judicial

2

proceedings is to be exercised charily," Van Waeyenberghe, 990 F.2d at 848, and have directed that the "decision must be made in light of the 'strong presumption that all trial proceedings should be subject to scrutiny by the public.'" Holy Land, 624 F.3d at 690.

The party seeking to seal court documents, including transcripts, has the burden of establishing that the presumption of public access to court records is overcome. LEAP Sys., Inc. v. MoneyTrax, Inc., 638 F.3d 216, 221-22 (3d Cir. 2011); Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006); Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004); Bankhead v. Gregg Cnty., 2013 WL 124114, at *2 (E.D. Tex. Jan. 9, 2013) (citing Torres-Montalvo v. Keith, 2011 WL 5023271, at *1 (S.D. Tex. Oct. 17, 2011)). The moving party "can overcome the strong presumption of access by providing 'sufficiently compelling reasons' that override the public policies favoring disclosure." Apple Inc. v. Samsung Elecs. Co., 727 F.3d 1214, 1221 (Fed. Cir. 2013). That is, the moving party "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." Id.; see also In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (district court's entry of a protective order was "unsupported by a 'particular and specific demonstration of fact'" where movant made only conclusory allegations of harm).

In this case, the parties have moved to seal significant portions of the trial transcript. The parties characterize the portions of the transcript that they wish to have sealed as "narrowly tailored excerpts." The Court, however, has carefully reviewed each of the nearly 100 portions of the transcript that the parties wish to have sealed, many of which include multiple pages, and is not persuaded that the excerpts are "narrowly tailored."

The materials identified by the parties fall into several general categories. Dr. Bianco's requests for sealing relate to (1) the details of the drawings that he provided to Globus in June 2007, and (2) information concerning Dr. Bianco's meeting with representatives of Biomet, another medical device manufacturer. Globus's requests for sealing relate to (1) the profits and profit margins on the Caliber and Rise lines of products, and (2) the royalty rates it paid to consulting surgeons who were members of Globus design teams on various projects.

In their joint motion, the parties have provided only a barebones explanation for why they believe sealing is necessary. The unelaborated characterizations of the materials they seek to have sealed read as follows: "Globus royalty rates, profit margins," "Globus royalty rates," "Globus royalty rates and margins," "Globus royalty rates and profit margins," "Dr. Bianco's testimony relating to his Invention Disclosure and his presentation to Biomet," "Mr. Rhoda's testimony relating to Dr. Bianco's Invention Disclosure," "Dr. McMillin's testimony relating to Dr. Bianco's Invention Disclosure," "Mr. Harris's testimony relating to Dr. Bianco's Invention Disclosure," "Mr. Ferreira's Deposition Transcript," "Dr. Cheng's testimony relating to Dr. Bianco's Invention Disclosure," and "Mr. Iott's testimony relating to Dr. Bianco's Invention Disclosure."

The absence of any elaboration could, by itself, be deemed a failure to "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." Apple Inc. v. Samsung Elecs. Co., 727 F.3d at 1221. However, the Court notes that in earlier pleadings, the parties have provided somewhat more detailed arguments as to why the categories of evidence for which they now request sealing should be protected from

disclosure. See Dkt. No. 258 (Dr. Bianco's Response to Show Cause Order); Dkt. No. 259 (Globus Medical Inc.'s Response to the Court's Show Cause Order). Those arguments pertain to pleadings and orders rather than to trial testimony, and the parties have not re-presented those arguments in the currently pending motion. The Court, however, assumes that the parties intended those arguments to be applicable to the motion to seal portions of the trial transcript. The Court therefore will treat those arguments as if they were incorporated by reference in the current motion.

In those earlier pleadings, Dr. Bianco argued that the details of his invention disclosure to Globus should be sealed because the jury's verdict establishes that the disclosure is a trade secret. Trade secrets, Dr. Bianco argued, are among those materials that courts have been willing to protect from public disclosure by sealing court records. Dkt. No. 258, at 1-2. Globus argued that the public disclosure of nonpublic financial information related to its Caliber, Caliber-L, and Rise products—particularly the profits and profit margins on those products—would competitively harm Globus. Dkt. No. 259, at 2. And, according to Globus, release of information about Globus's royalty agreements with design team doctors "would grant Globus's competitors access as to details concerning the royalty percentages agreed to by Globus." Id. at 3.

For the reasons given below, the Court concludes sealing is appropriate for certain portions of the transcript revealing details of Dr. Bianco's invention disclosure that are not disclosed elsewhere in the public record. Likewise, sealing is appropriate for very limited portions of the transcript relating to the nature of Dr. Bianco's presentation to Biomet. However, the Court concludes that sealing is not appropriate for the transcript excerpts relating to the

5

royalty rates for Globus's design team doctors and to the profit margins for Globus's Caliber and Rise line of products.

1. At the outset, the Court notes that the force of the parties' request for sealing is undercut by the fact that they have failed to take appropriate measures to protect the material that they now wish to have sealed.

The trial in this case was held in open court; no request to close the courtroom was made at any time during the trial. Nor did the parties alert the Court at the time of trial that they objected to public disclosure of certain portions of the trial testimony. After the trial, in the course of a colloquy relating to the issue of sealing certain pleadings and orders, the Court pointed out that the trial had taken place in open court and the testimony at trial had all come in without any limitation on its public availability. The parties responded that they had kept track of the identity of those persons entering and leaving the courtroom, and that they were therefore confident that there was no significant risk that unknown third persons had obtained access to the sensitive information that was revealed in open court during the trial. The Court at that time expressed skepticism about the practical or legal effectiveness of such an informal method of protecting sensitive information and raised the question whether the parties had waived any right to have the trial proceedings sealed by not moving to close the courtroom during the presentation of sensitive information or requesting other protective measures.

Following that colloquy, the Court held an evidentiary hearing on future royalties. Once again, the parties did not ask to close the courtroom or to have sensitive materials otherwise protected, even though there was testimony at that hearing about the royalty rates paid to surgeons on Globus's design teams. Even if Globus can be excused for not having taken

measures to close the trial proceedings when sensitive material was being discussed, it is difficult to understand why Globus would not seek some form of protection for the same material when it elicited that information from its own witnesses at the evidentiary hearing, which occurred after the problem of Globus's failure to seek courtroom closure during trial had been raised by the Court in connection with Globus's earlier sealing request.

Because the Court did not flag this issue for the parties prior to trial, the Court will not treat the parties' lax approach to the issue of protecting sensitive testimony from public disclosure as a waiver of their right now to seek sealing of the trial testimony. However, the Court regards the parties' failure to more actively protect the information elicited from witnesses in open court as an indication that the parties do not regard the materials at issue as highly sensitive.

2. A second problem with the parties' sealing request is that the substance of much of the information they seek to protect has already been publicly disclosed, either through filings that have not been sealed or in portions of the trial transcript that the parties have not moved to have sealed. For example, while Globus has requested sealing of various portions of the transcript dealing with the profits Globus has made on the Caliber and Rise line of products, it has not moved to seal a number of references that provide profit-related information. Those include allusions to Globus's royalty base profits of more than $100 million on Caliber and Rise (1/13/14 PM Tr. 10:6-12, 22:16-19; 1/15/14 AM Tr. 79:22-80:4), and net profits of $38.5 million (1/15/14 AM Tr. 46:6-12, 61:21-62-7, 77:17). In light of the public disclosure of those numbers, the Court discerns no protectable interest in the total sales of the Caliber and Rise products or the marginal profit percentages on those products, both of which Globus has sought to have sealed.

7

Moreover, Globus is a publicly traded company, and its sales and earnings are publicly reported. Because testimony at trial that Globus has not sought to have sealed reveals that the Caliber line of products accounted for between 10 and 16 percent of Globus's sales, see 1/15/14 AM Tr. 78:20-24, 170:24-171:21, it would be a simple matter to calculate the approximate sales volume for the Caliber devices during at least 2012-2013. For that reason as well, sealing that information would not be justified.

3. With respect to Dr. Bianco's sealing requests, the Court finds that the general nature of the drawings has been revealed in various public pleadings and orders. Accordingly, even though the jury found that the drawings are protected trade secrets, not all the details of the drawings are entitled to continued protection through a sealing order. Based on the jury's verdict as to the trade-secret status of the drawings, the Court is prepared to direct the sealing of portions of the trial testimony that consist of more detailed accounts of the drawings and reveal features that were not otherwise made public. The protection will not be extended to all the portions of the transcript requested by Dr. Bianco, however, because many of the transcript excerpts do not reveal any more than is already in the public record.

For example, the fact that Dr. Bianco regarded his drawings as depicting an adjustable interbody spacer with a scissor-jack mechanism has been a matter of public record since early in the case. See, e.g., Dkt. No. 13, at 5; Dkt. No. 36, at 2; Dkt. No. 37, at 3; Dkt. No. 45, at 2. In addition, those facts were discussed by the parties in opening statements and closing arguments. See, e.g., 1/13/14 PM Tr. 15:14-17:3, 25:14-27:20, 29:12-30:23; 1/17/14 AM Tr. 138:11-23, 162:6-9, 163:5-10, 167:15-168:16. Nonetheless, Dr. Bianco has not sought to seal those portions of the trial transcript. Similarly, references to the round markers that are seen on some versions

of Dr. Bianco's drawings are found in portions of the trial transcript that the parties have not sought to seal.  The Court therefore concludes that those aspects of the invention disclosure are not entitled to protection by sealing the associated materials that Dr. Bianco requests be sealed.  Certain other features of the invention disclosure, however, were not revealed in public portions of the record, so far as the Court is aware.  The jury's finding that Dr. Bianco's drawings constitute trade secrets is a sufficient basis for the Court to find that a clear showing has been made that the previously undisclosed aspects of the drawings are entitled to protection.  Accordingly, the Court will direct that the following portions of the transcript remain sealed because they disclose details about Dr. Bianco's drawings that are not otherwise in the public record:

    1/13/14 PM Tr.:  78:15-83:18;  99:3-21; 133:14-24.

    1/14/14 AM Tr.: 178:18-185:14

    1/14/14 PM Tr.:   72:3-73:11;  74:24-78:5; 120:15-121:1; 128:7-135:22, 150:3-151:1; 151:5-152:10; 154:6-155:2.

    1/15/14 PM Tr.:  64:4-23; 140:7-141:17.

    1/16/15 AM Tr.: 191:23-192:21.

    1/16/14 PM Tr.:  5:24-6:24; 12:12-16:6.

    1/17/14 AM Tr.:  59:9-16; 59:25-60:18.

4. Many of Globus's requests to seal particular portions of the transcript relate to the royalty rates paid to physicians on Globus's design teams for the Caliber and Rise products, as well as other products.  The Court, however, is not persuaded that Globus has made a sufficiently compelling showing that those royalty rates are entitled to protection from disclosure.  The

evidence at trial showed that Globus's royalty rates for design team physicians are standard in the industry (1/16/14 PM Tr. 144:6-7), and Globus's standard rate is disclosed in at least one portion of the transcript for which Globus does not request sealing (1/16/14 PM Tr. 170:6-10).

Moreover, Andy Iott, Globus's senior vice-president for product development, testified at the evidentiary hearing on future royalties that it was his understanding that the royalty rates paid by Globus were typical of the rates paid to design team physicians by other companies in the field—rates that were not publicly disclosed by those companies but were generally known. 5/13/14 Tr. 106:14-107:6. Thus, the Court concludes that the testimony about the royalty rates to which Globus points would not reveal highly sensitive materials that would not otherwise be publicly known.

In the course of listing the portions of the trial transcript relating to its royalty rates, Globus includes references to a few royalty rates that were higher than the rates typically paid to design team physicians. Globus, however, has made no separate argument, much less introduced any evidence, to suggest that those enhanced royalty rates constitute highly sensitive commercial information that deserves the special protection accorded by a sealing order. The Court therefore will not order those portions of the transcript sealed.

5. Finally, the Court finds no merit in most of Dr. Bianco's requests to seal certain excerpts of the transcript relating to his 2013 presentation to Biomet. Much of the testimony to which Dr. Bianco points did not reveal confidential details of his presentation to Biomet, and thus revealed no trade secret or other protected information. Moreover, the general circumstances relating to Dr. Bianco's presentation to Biomet were revealed in both the opening statement and the closing argument of Globus, which Dr. Bianco has not sought to seal. See

1/13/14 PM Tr. 42:22-43:21; 1/17/14 AM Tr. 165:8-18.  The portions of the testimony about Dr. Bianco's presentation to Biomet that do not deal with the specific subject matter of the presentation will therefore not be sealed.  However, the Court will direct the sealing of the portions of the transcript that allude to the contents of Dr. Bianco's disclosure to Biomet and disclose the nature of the device that he described to Biomet in his proposal.  Accordingly, the Court will deny the request to seal the materials relating to Dr. Bianco's presentation to Biomet with the exception of the following excerpts, which the Court will direct to be sealed:

1/16/14 AM Tr.:  146:15-18; 149:18-23.

1/16/14 PM Tr.:  22:2-29:23.

The Court will stay the effectiveness of this order for 10 days in the event that the parties wish to seek modification, reconsideration, or appellate review of the Court's decision on this matter.

IT IS SO ORDERED.

SIGNED this 14th day of July, 2014.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE