# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| SABATINO BIANCO, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:12-CV-00147-WCB |
| | § | |
| GLOBUS MEDICAL, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

The plaintiff in this case, Sabatino Bianco, M.D., has moved to have the defendant, Globus Medical, Inc., held in civil contempt for failing to comply with a portion of the Court's judgment. This order is entered in connection with an upcoming hearing in the civil contempt proceeding. Before the Court is Dr. Bianco's motion in limine seeking to exclude evidence disputing the existence of Dr. Bianco's trade secret and its misappropriation. Dkt. No. 384. The Court GRANTS the motion in part and DENIES the motion in part.

Dr. Bianco's motion is directed to a report prepared by Dr. John Peloza, an expert for Globus, and the testimony that Dr. Bianco expects Dr. Peloza will offer at the contempt hearing. Dr. Bianco complains that a significant portion of Dr. Peloza's report (and thus his expected testimony) addresses issues that were previously resolved in this litigation and are not properly before the Court in the present proceeding.

**BACKGROUND**

Dr. Bianco, a spinal surgeon, filed suit against Globus in 2012. In his complaint, Dr. Bianco raised a number of claims stemming from his dealings with Globus in connection with Dr. Bianco's idea regarding a device that could be used in spinal surgery. The idea was directed to a continuously and reversibly expandable spacer, or implant, that could be placed between adjacent vertebrae in a patient's spine after diseased disc material had been removed from the inter-vertebral space. The height of the device, according to Dr. Bianco's idea, could be manipulated so that it could be lowered during insertion and then raised to the desired height after placement, thereby maintaining the proper distance between the two adjacent vertebrae. Dr. Bianco's idea included various other features of the inter-vertebral spacer as well.

Following a five-day trial, the jury returned a verdict in Dr. Bianco's favor on his claim of trade secret misappropriation. The jury entered a verdict for $4,295,760 in damages, and the Court entered judgment on that verdict. In addition, the Court entered an order respecting ongoing royalties, since the jury's verdict assessed liability only up to the date of trial. The Court's judgment imposed an ongoing royalty of 5% of the net sales of the three products that were at issue—Globus's Caliber, Caliber-L, and Rise devices. The judgment required Globus to make royalty payments on those products for a period of 15 years from June 30, 2007. In addition, the judgment provided that the 5% ongoing royalty obligation would apply to "products that are not colorably different from those products." Dkt. No. 315, at 2.

The Court subsequently denied Globus's motion for judgment as a matter of law. Dkt. No. 338. On Globus's appeal, the Federal Circuit affirmed the judgment without opinion. 610

F. App'x 1032 (2015). Globus petitioned for a writ of certiorari, and the Supreme Court denied the petition. 136 S. Ct. 2489 (2016).

The parties arranged to make the requisite royalty payments on a quarterly basis beginning as of October 1, 2014. In 2016, however, a dispute arose as to whether Globus was liable for royalty payments on the sales of two of its other products, the Rise-L spacer and the Altera spacer. When counsel for Dr. Bianco protested to Globus regarding the failure of payment for those products, Globus filed suit in the United States District Court for the Eastern District of Pennsylvania, seeking a declaratory judgment that it was not liable for those payments under this Court's judgment. Dr. Bianco then filed a motion with this Court seeking an order to show cause why Globus should not be held in civil contempt for failing to abide by the terms of this Court's judgment. Meanwhile, the Pennsylvania court requested briefing from the parties as to why it should not transfer the declaratory judgment suit to the Eastern District of Texas. Following briefing of the transfer issue, the Pennsylvania court stayed the declaratory judgment action pending resolution of the contempt proceeding before this Court. An evidentiary hearing in the contempt proceeding is now scheduled for September 11, 2017.

The parties have recently informed the Court that they have resolved their dispute regarding the Rise-L device. Thus, only the royalties relating to the Altera device remain in dispute.

## DISCUSSION

In his motion in limine, Dr. Bianco seeks to exclude any evidence, including testimony from Dr. Peloza, that is related to the existence or misappropriation of Dr. Bianco's trade secret. Those issues, Dr. Bianco argues, have already been conclusively decided, and the contempt

3

proceeding is not an appropriate forum in which to seek to relitigate those issues. In response, Globus contends that it is not seeking to relitigate issues settled by the judgment in this case, but that it intends to offer evidence, including testimony from Dr. Peloza, that is relevant to the issue of contempt. In particular, Globus argues that the evidence in question, including "state of the art" evidence, is admissible for three reasons: (1) it will provide context to identify "colorable differences" in technology; (2) it will bear on the question whether Dr. Bianco's trade secret remained protected and protectable at the time of a subsequent use; and (3) it is relevant to equitable issues such as mitigating circumstances, Globus's good faith, and the appropriate remedy if contempt is found. Dkt. No. 395, at 1.

Because the contempt proceeding will be held before the Court and without a jury, the Court will be liberal in allowing the parties to introduce evidence, subject to the Court's later determining whether that evidence is relevant and helpful in resolving the issue before the Court, which is whether the Altera device is or is not more than colorably different from the Caliber, Caliber-L, and Rise devices that were adjudicated during the trial.[1] With that said, and for the

---

[1] Dr. Bianco has noted the Court's use, in the judgment, of the phrase "products that are not colorably different from" the adjudicated products, and has suggested that the Court intended to use the phrase "products that are 'not *more than* colorably different.'" Dkt. No. 357, at 1 n.1. The Court recognizes that different courts have used the term "colorable" in different ways in making the same point—that a prohibition applicable to a particular object extends to objects that are not meaningfully different from that object. A number of courts have used the same verbal formulation used in the judgment in this case—"not colorably different." See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 843 F.3d 1315, 1325 (Fed. Cir. 2016) (quoting a district court order); Nichia Corp. v. Everlight Elecs. Co., No. 2;13-cv-702, 2016 WL 3110142, at *2 (E.D. Tex. Jan. 25, 2016); VirnetX Inc. v. Apple Inc., No. 6:13-cv-211, 2014 WL 12672822, at *5 (E.D. Tex. Mar. 6, 2014); Fractus, S.A. v. Samsung Elecs. Co., No. 6:09-cv-203, 2013 WL 1136964, at *2 (E.D. Tex. Mar. 15, 2013); Mondis Tech. Ltd. v. Chimei Innolux Corp., No. 2:11-cv-378, 2012 WL 1554645, at *2 (E.D. Tex. Apr. 30, 2012); Synqor, Inc. v. Artesyn Techs., Inc., No. 2:07-cv-497, 2011 WL 3624957, at *16 (E.D. Tex. Aug. 17, 2011); Soverain Software LLC v. Newegg Inc., 836 F. Supp. 2d 462, 484 (E.D. Tex. 2010); see also Eli

guidance of the parties, however, the Court will make the following observations regarding the proper uses for which the evidence at the contempt hearing may be offered.

1. Context

Globus first argues that Dr. Peloza's evidence regarding the state of the art will be useful in providing the context for deciding whether the Altera device is merely a colorable imitation of the Caliber, Caliber-L, and Rise products. Dkt. No. 395, at 7-8. The Court will allow evidence that is relevant for that purpose, with the caveat discussed below.

It may be that evidence regarding devices available from Globus and other manufacturers, as well as technology available to the industry but not incorporated into any commercial devices, will be helpful to the Court in determining whether the Altera device is not more than colorably different from the Caliber, Caliber-L, and Rise products. When determining whether two products are similar, it is frequently useful to consider other art in the field to assist

---

Lilly & Co. v. Perrigo Co., 202 F. Supp. 3d 918, 1029 (S.D. Ind. Aug. 22, 2016); Arcelor Mittal USA LLC v. AK Steel Corp., No. 13-685, 2016 WL 1588492, at *4 (D. Del. Apr. 19, 2016); Jerry Harvey Audio Holding, LLC v. 1964 Ears, LLC, No. 6:14-cv-2083, 2016 WL 7177548 (M.D. Fla. Mar. 28, 2016); Arnold v. Scales, No. 3:15-cv-45, 2016 WL 6155173, at *1 (M.D. Ga. Feb. 5, 2016); M-I LLC v. FPUSA, LLC, No. 15-cv-406, 2015 WL 6738823, at *17 n.8 (W.D. Tex. Nov. 4, 2015); Asetek Danmark A/S v. CMI USA, No. 13-cv-457, 2015 WL 5568360, at *20 (N.D. Cal. Sept. 22, 2015); CTE Global, Inc. v. Novozymes A/S, No. 15-C 181, 2015 WL 2330223, at *3 (N.D. Ill. May 14, 2015); Server Tech., Inc. v. Am. Power Conversion Corp., No. 3:06-cv-698, 2015 WL 1308617, at *5 (D. Nev. Mar. 31, 2014). Other courts, including the Federal Circuit in the patent context, have used the terms "colorable imitation," "not more than colorably different," and "no more than a colorable difference" to capture the same concept. See, e.g., Pac. Coast Marine Windshields, Ltd. v. Malibu Boats, LLC, 739 F.3d 694, 700 (Fed. Cir. 2014); TiVo Inc. v. Echostar Corp., 646 F.3d 869, 881-82 (Fed. Cir. 2011) (en banc); Abbott Labs. v. TorPharm, Inc., 503 F.3d 1372, 1381 (Fed. Cir. 2007). Justice Story, an authority always worth paying attention to, used the term in the latter fashion, writing in the patent context: "Mere colorable alterations of a machine are not sufficient to protect the defendant." Odiorne v. Winkley, 18 F. Cas. 581, 582 (1814). In this order, the Court will follow Justice Story's lead regarding the verbal formulation of the principle. The Court notes, however, that the language in the judgment was designed to convey the same concept and have the same effect as the "no more than colorable" or "not merely colorable" formulations.

in the comparison process. See, e.g., Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 676-78 (Fed. Cir. 2008) (en banc) ("Particularly in close cases, it can be difficult to answer the question whether one thing is like another without being given a frame of reference."). Importantly, however, the use of such evidence to provide context does not authorize its use to contravene findings already made by the jury as to the existence of Dr. Bianco's trade secret and Globus's misappropriation of that trade secret.

Globus argues that because there was "no definitive prior ruling explaining what Dr. Bianco's trade secret was, nor how exactly that trade secret was specifically incorporated into Caliber, Caliber-L, and Rise," Dkt. No. 395, at 8, clarification of the meaning of "colorable difference" is needed. It cannot be sufficient, Globus argues, that any Globus implant that is continuously and reversibly expandable is merely a colorable imitation of Caliber, Caliber-L, and Rise, "no matter what the specific differences and advancements in technology are." The state of the art, according to Globus, will show that "the public domain contained numerous designs for such an implant before 2007 and certainly before 2012." Id. at 9. That passage in Globus's brief suggests that Globus intends to argue that continuously and reversibly expandable implants were found in the prior art, and that such evidence will establish that Dr. Bianco's trade secret has either ceased to be a trade secret, that his trade secret can no longer be held to have been misappropriated by Globus, or that the trade secret was never so broad as to encompass any continuously and reversibly expandable implant.

The Court rejects that argument. The jury's verdict established that Globus misappropriated Dr. Bianco's trade secret and used it in developing the Caliber, Caliber-L, and Rise spacers. It was therefore appropriate for the royalty remedy to extend to those products,

6

regardless of whether there were other similar designs available to Globus at the time. As for the extension of the remedy to products that were merely colorable imitations of the three adjudicated products, that provision was necessary to avoid evasion of the decree. It was not a separate ground of liability that, when applied, needed to be predicated on a separate finding that Dr. Bianco's trade secret continued to exist and that Globus misappropriated it. Thus, even if continuously and reversibly expandable spacers were commonplace by 2012 (or even if they were known in 2007), that would not affect Globus's liability for sales of products that were merely colorable versions of Caliber, Caliber-L, and Rise, the products for which Globus was found to have used Dr. Bianco's trade secret. And finally, the question of the scope of Dr. Bianco's trade secret is not pertinent in this contempt proceeding. The question before the Court is not whether the Altera device would have given rise to liability if it had been at issue at the trial, but whether the Altera device is merely a colorable imitation of the three adjudicated products.

2. Subsequent Changes in the State of the Art

Globus next makes the closely related argument that, in a trade secret case, "developments in the state of the art occurring after an alleged disclosure of confidential information directly impact the ongoing viability of a trade secret," and therefore are relevant to contempt. Dkt. No. 395, at 9. As authority for that proposition, Globus cites the district court opinion in In re Wilson, 248 B.R. 745 (M.D.N.C. 2000).

Globus reads the Wilson case to stand for the proposition that a defendant found liable for trade secret misappropriation can avoid contempt by showing "that the adjudicated trade secret had entered the public domain by the time it was used in connection [with] a subsequent

7

product," and "that the defendant had obtained the information used in the subsequent product through lawful means." Dkt. No. 395, at 9. Applying that principle in this case, Globus argues that it is entitled to defend against the charge of contempt by showing that the concept of a continuously and reversibly expandable implant was publicly available and was actually known to Globus from independent sources, months before Altera's development began. A close reading of the Wilson case, however, shows that the case does not support Globus's characterization of it.

The district court in Wilson observed that there had been an initial finding that the defendant had illegally appropriated the plaintiff's trade secrets and an injunction against further use of the trade secrets. Although by the time of the contempt proceeding, the processes in question were "readily available in the public domain, and therefore were no longer trade secrets," 248 B.R. at 749, that finding did not provide a complete defense to the contempt charge, because there was "no finding that [the defendant's] present use of the processes is not simply a continuation of the misappropriation and, therefore, a violation of the bankruptcy court's original injunction," id. at 749-50. The court explained:

> Once a process has been adjudicated a trade secret, the law protects that secret from those who obtain it illegally. This is the essence of misappropriation, which is defined as the "acquisition, disclosure, or use of a trade secret of another . . . unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret."

248 B.R. at 750. The defendant could avoid a contempt finding, the court ruled, only if it could show that the process in question "was (1) no longer a trade secret and (2) [the defendant] had obtained the process lawfully." Id. Quoting with approval from an Indiana case, the court added that "it is no defense to claim that one's product could have been developed independently of

plaintiff's, if in fact it was developed by using plaintiff's proprietary designs." Id. (quoting Amoco Prod. Co. v. Laird, 622 N.E.2d 912, 918 (Ind. 1993)).

The burden described by the Wilson court is a heavy one that requires the defendant to prove that it did not use the plaintiff's original trade secret in the products that are the subject of the contempt proceedings. It is not a defense for the defendant simply to show that the original trade secrets are now in the public domain. The defendant must further show that it developed its accused products without using the plaintiff's original trade secrets.

In any event, the defense described by the court in Wilson does not apply in this case. Instead of an injunction against the use of the adjudicated trade secret, the Court in this case adopted a remedy that was narrower in one respect and broader in another. It was narrower in that there was no general injunction against use of the adjudicated trade secret, but only a royalty for sales of the adjudicated products. It was broader in that it covered not only those products, but also merely colorable imitations of those products. In effect, the Court's judgment began with the proposition that Globus had committed actionable trade secret misappropriation with respect to the adjudicated products. The judgment then conclusively presumed that products only colorably different from those products were the result of the same trade secret misappropriation. Thus, in this setting the option discussed in the Wilson case of proving that the new products were not produced by exploiting the misappropriated trade secret is not available to Globus. What is available to Globus is the defense that the Altera device is not merely a colorable imitation of the adjudicated products.

3. Ongoing Use of a Protected Trade Secret

Based on authority from the patent law context, Globus argues that before finding Globus in contempt of the Court's order, "there must be a second finding that the new product uses a trade secret." Dkt. No. 395, at 11. In making that argument, Globus relies on TiVo Inc. v. Echostar Corp., where the Federal Circuit held that in order to prove contempt in a patent case, the patentee must show not only that the product in question is merely a colorable version of the product previously held to infringe, but also that the new product infringes the patent. 646 F.3d at 883. In the patent law context, an injunction against infringement obviously requires proof that the new product infringes. The ongoing royalty order entered in this case, however, did not premise liability on proof of further misappropriation. As noted above, the purpose of the "colorably different" clause in the order was to ensure that, for a period of 15 years from July 1, 2007, Globus would have a royalty obligation to Dr. Bianco with regard to the three named products and any other products that are no more than trivially different from those products. Thus, proof of an ongoing trade secret and proof of further misappropriation is not relevant in this case.

4. Equitable Considerations

While the Court is skeptical that the evidence of other technologies will be of substantial value in assessing equitable considerations that might apply to any sanction imposed upon a finding of contempt, the Court will nonetheless consider the evidence offered by Globus to the extent that it bears on any such equitable issues.

In sum, Dr. Bianco's motion in limine is granted in part, to the extent that the evidence targeted by Dr. Bianco's motion is admissible only for the limited purposes authorized in this order.

IT IS SO ORDERED.

SIGNED this 6th day of September, 2017.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE